# EXHIBIT 10

# EXHIBIT 10

ORIGINAL

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MOHAVE

FILED TIME _____ M

JUL 2 6 2001

VIRLYNN TINNELL
CLERK SUPERIOR COURT
BY: CA-CI _____ 65
1 _____ DEPUTY

STATE OF ARIZONA,      )
                       )
            Plaintiff, )
                       )
    vs.                )    Cause No. CR-9057
                       )
KIMBERLY LYNN LANE,    )    JUDGMENT AND SENTENCE
                       )
            Defendant. )
_____)

Before the Honorable Steven F. Conn, Judge

Thursday, June 25, 1998
2:20 p.m.
Kingman, Arizona

DIVISION 1
COURT OF APPEALS
STATE OF ARIZONA
FILED

Reporter's Transcript of Proceedings

NOV 1 8 1998

GLEN D. CLARK, CLERK
By _____

Appearances:

    For the State:          Derek Carlisle
                            Deputy County Attorney
                            315 North 4th Street
                            Kingman, Arizona 86401


    For the Defendant:      Larry S. Rosenthal
                            Mohave County Legal Defender

                            Eric J. Engan
                            Deputy Legal Defender
                            313 Pine Street
                            Kingman, Arizona 86401

Reported by:  Sandra R. Brice, Official Reporter

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

THE COURT:  Thank you.  Be seated.

This is Cause Number CR-96-1057, State versus Kimberly Lynn Lane.  Show the presence of the Defendant, Mr. Rosenthal and Mr. Engan representing the Defendant, and Mr. Carlisle representing the State.

This is the time set for judgment and sentencing in this matter.

Ms. Lane, we have your date of birth as 2-18-82; is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  Ms. Lane, have you had a chance to read the presentence report that was prepared in this case?

THE DEFENDANT:  Yes, sir.

THE COURT:  Are there any corrections or mistakes to that report that either you or your Attorneys want to bring to my attention at this time?

THE DEFENDANT:  No.

THE COURT:  And, Counsel, I don't know which of you is going to be arguing this matter --

MR. ROSENTHAL:  I am, your Honor.

THE COURT:  Pardon?

MR. ROSENTHAL:  I am, your Honor.

THE COURT:  All right.  Mr. Rosenthal, is there anything that you want to say on behalf of your client?

MR. ROSENTHAL:  Yes, your Honor.

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

Kim stands before you today having been convicted of three counts of first degree murder, conspiracy and armed robbery.  This is a horrible position for a person of her age to be confronted with.  It is also a horrible crime to be associated with.  The jury believes she is guilty of these crimes so for this hearing we have to talk knowing she has been convicted.

Of course, it is easy to see in this case what aggravating conditions there are.  It is also easy to see the mitigating circumstances in this case.  They stand out on both sides.  There is nothing hidden in this case.

And I want to point out to the Court that the fact we are not having a lengthy hearing today does not mean that we are caving in to believe that somehow Detective Cooper is correct in that cryptic note in the probation report.  We are not believing that for a minute.

As a matter of fact, we are believing just the opposite. That Kim Lane has a lot to give to society and she should be afforded the minimum sentence and we will talk about those reasons.

The aggravators, of course, are that three people were murdered.  Their murders were brutal.  The people that were killed suffered greatly.  One of those individuals was almost Kim's age which is a terrible fact and they did so for pecuniary gain.  These people suffered a lot.  We can't deny

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

any of that.

Nevertheless, the mitigators are maybe fewer but, in our opinion, much more important and they are, of course, her age. Her stated arithmetic age at the time that these crimes were committed was fourteen. If you recall Dr. Karp's testimony, she testified that Kim actually tested out at a much lower age and that perhaps on many of the intellectual level tests she was at ten to twelve years of age.

She has no criminal record.

To me, the most important mitigator which outweighs the aggravating circumstances in this case is her lack of participation. And to the victims I say the people that were murdered in this case would have been murdered whether Kim Lane was present or not. They were going to be murdered and they were murdered.

Kim did a few things which the jury felt rose to the level of conviction and I'd like to take them one at a time.

First was the testimony regarding a conversation that she had with the two other defendants wherein maybe or maybe not she plotted with them for their -- for the murders of these people. There was some testimony to that effect. The jury found that testimony was compelling and convicted her of conspiracy. They have the right to do that. We felt the testimony was weak. So, there was that testimony.

There was testimony regarding what she did regarding

Robert Delahunt in that she went into the trailer.  She laid down and apparently diverted Robert's attention so that the murder process could begin.

Strangely enough -- and, of course, Kim stated in her testimony that she did not believe that any of this was going to happen.  Her -- her testimony really is analogous to what Robert Delahunt did in this circumstance.  There was no denial that Robert Delahunt overheard the plot beginning, Judge.  He overheard the plotters talking about tying everybody up and taking the car.

And then Kim testified that later on that day -- this was the day before the murders I believe -- later that day Robert Delahunt came from outside the trailer into the trailer and took Kim aside and said you know, Kim, those guys are now talking about murdering people.

And I don't recall what -- what Kim said back or what the testimony was regarding that but, again, it is uncontradicted and even Derek Carlisle mentioned that in his opening statement that -- that Robert Delahunt knew and what did Robert Delahunt do about the fact that he discovered this information.  He did the same thing Kim Lane did.  That was nothing.

He didn't go running to his mother and say mom, there's going to be trouble here.  You and Roland better get out of here.  He didn't call the police.  He even, Judge, went and

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

sat there on the bed and before he was murdered he made the remark, according to Kim -- and there is reason for her to lie about this -- while they all were sitting there in the trailer including Poyson and -- and Anderson, he said you know, I am nervous about this.  I am just afraid somebody might stab me in the back.

You have to wonder what is he thinking about when he is saying that and the answer has to be he just didn't believe it was going to happen or he was just too scared to do anything about it.

Unfortunately, that's what Kim was.  She was just either she didn't believe it or she was too scared to do anything about it.

So, another aggravator probably would be why didn't Kim do something about it.  Well, we don't know why Kim didn't do anything about it other than this kind of bizarre story that she was in up to her neck and she didn't want to do anything about it but keep in mind, Robert Delahunt did nothing either and that is an -- an inconsistency about this case that we will all wonder about for a long time.

So, you heard the facts of this case several times from our case and from the other case.  There is no reason to dwell on what you believe the facts were.

And you heard some of the Kim Lane story about where she came from, what her background was and how she was treated at

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

home and -- and that whether she was a manipulative person or a manipulatory person and you can decide all that for yourself.

I have nothing to say except I am asking that -- that you do give Kim the minimum sentence here which I believe is the twenty-five years to life with the chance of parole at twenty-five years and run the sentences concurrently with all other sentences.

I believe my investigator Evan Williams would like to have a few words. He spent hundreds of hours doing investigation in this case. He's seated in the back of the courtroom and he would like to speak on Kim's behalf.

Thank you.

THE COURT: All right. Mr. Williams, if you have anything to say at this time, just state your name and tell me anything that you would like to.

MR. WILLIAMS: Yes, your Honor.

My name is Evan Williams. I have been the investigator on this case for two years. I have been on since the inception of this case. I investigated her hometown in California. I interviewed her teachers and friends. I visited the trailer park in which she grew up and the circumstances under which she grew up.

I talked to neighbors and friends again and it was with my own eyes that I saw the rat infestation and the drug

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

infestation of that trailer park and I could feel the circumstances under which Kim was raised.

I talked to her father -- her natural father who is addicted not only to alcohol but drugs.  His attitudes were quite obvious.  He didn't show up for trial.  He didn't show up now.

I feel that basically he is the responsible party of this.  I feel that he is the responsible party in not creating the responsibility that should have been there for her upbringing.  Her dad let her down.

Horribly after this trial was over, the mother of Charity Anzalone and I had a phone conversation and she said she just cried when she heard the verdict.  And she said she had called the Child Protective Agency in California who did not respond to her phone calls.  I asked her about that.

In 1993 Janice Martin called the California Child Protective Agency, your Honor, to report that Kim's father and wife at that time had tied her to a tree and she was out tied to that tree for hours.

If the Child Protective Agency had responded, your Honor, we wouldn't be here today but the California Child Protective Agency as far as I am concerned let Kim down. She's been trying to get away from that place.  She did -- knowing that she was a follower, she befriended an individual with whom she trusted and the rest of it is history, your

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

9

Honor.

I just hope that Arizona -- that the State of Arizona does not let her all the way down again like the State of California did.

THE COURT:  All right.  Thank you, Mr. Williams.

Ms. Lane, is there anything that you would like to say at this time on your own behalf?

THE DEFENDANT:  Yes, sir.

I know that you heard a lot about this case and a lot of my problems.  There's still a lot about me you haven't heard.

I know what happened to those three people was bad and I am sorry for what happened.  I wish sometimes there was something I could of done.  Something I could of done if I was smarter.  If I wasn't so stupid or if I was just -- I don't know.

I didn't hurt nobody.  I am not a threat to nobody.  I am not a murderer.  If I was to get out, I wouldn't -- I would just live life to the fullest and I just hope that you think about the sentence before you sentence my whole life to prison.  Just don't throw me away for crimes I didn't commit. I didn't hurt nobody.  I never could hurt anybody.  I never will hurt anybody.

All my life I always wanted somebody who would just be proud of me for once.  Who just would hug me and tell me how much that they loved me and that they be proud of whatever I

10

ever done in my life.

I know that I am going to be sentenced to prison. I am going to accept that and that I hope that -- that you give me some part of life to be able to go through.

I have dreams in my life. Some day I want to get married. Some day I want to have kids and be a teacher or work on computers and I am afraid that you are just going to throw my life away and I will be meaningless and just be another person.

All my life I have been thrown away. No one cared how I felt. No one cared how -- how I was raised, how I was. I always wanted my father to love me and to be a part of my life and when I ran away from home and because I trusted someone, because I was afraid -- I thought I was with somebody who was going to care for me. Now I am here for a crime I didn't even do about to be sentenced for the rest of my life.

Please just think about the sentence before you sentence me.

Thank you.

THE COURT: All right. Thank you, Ms. Lane.

Mr. Carlisle, does the State have anything?

MR. CARLISLE: Yes, your Honor. Thank you.

Your Honor, this obviously was a difficult case and I think that that was reflected in the jury's verdict when they

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

11

came back and how emotional they took it but it is the choice Kim Lane made.  That's why she is here today.

The jury found her guilty.  The State believes she is guilty.  That's why we tried her in the first place.

The jury found her guilty of three different murders and conspiracy to commit murder and armed robbery.

Starting with the easy one first, the armed robbery. The State believes that that clearly is a dangerous offense and that the range of sentence on it needs to be seven to twenty-one years.  I don't think there is any way that it could have been committed without it being a dangerous offense.

The only reason I mention that is because when the co-defendant Mr. Anderson was sentenced, for some reason Judge Chavez disagreed with that analogy and sentenced him as a nondangerous Class 2 felony.  The State believes that -- that it is a dangerous offense and that she should receive seven to twenty-one years on that.

Obviously, the most important decision you have to make today is whether or not she receives natural life or life with the eligibility for parole after twenty-five years and if any of the sentences are going to run concurrently or consecutively.

The State believes there are several aggravating factors in this case.  I would agree with actually the ones that

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

Mr. Rosenthal listed.  There were multiple murders committed on the same occasion.  They were essentially cruel, heinous or depraved and they were committed for pecuniary gain.

And if this was a death penalty case, the State would also be arguing that at the time she was convicted, she also had a conviction -- prior conviction for a crime punishable by life imprisonment.  That would be the conspiracy count.  And that she had a prior conviction for a serious offense.  That would be the armed robbery count.

Those would all be statutory death penalty aggravating factors.  Of course, she is not eligible for the death penalty because of her age when the offenses were committed.

In deciding to look at whether she should receive consecutive or concurrent sentences, I think one way is to look at -- look at the conspiracy charge and her involvement with respect to Robert Delahunt on one level and look at her involvement with respect to Leta Kagen and Roland Wear in a different level.

I think her involvement with respect to Robert Delahunt obviously is much greater.  She was there when he was.  She was there kissing him, distracting him out in the trailer.  She was there bringing the rocks Bobby Poyson used to both smash Robert Delahunt's head and drive the knife into his skull so her involvement with respect to that one is much greater.

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

With respect to the other two, the State will concede her involvement is less on those other two although the State believes her involvement starts with the plan of these and she was convicted of the conspiracy count.

Also she was getting the two other individuals -- Frank Anderson and Bobby Poyson -- into the house so that they could clean up.  That helped them avoid detection so that the other murders could be committed.

And going with Mr. Poyson to get the bullets that were used.  The one bullet being used to kill Leta Kagen and the other bullet that was used to shoot Roland Wear that initiated the sequence of events that ended in him being brutally murdered by Bobby Poyson.

So, the State believes that you can probably look at them and say her involvement is different with respect to those two murders then with respect to the first murder but I am sure you will take all that into account and, actually, I am sure that probably you have pretty much decided what you are going to sentence her to no matter what I say.

Mr. Rosenthal made a point in that he said they would have been murdered any way so it didn't matter that she was involved and I think that's one point that the State would take exception to.

I don't know that we can say that anyone would have been murdered any way.  I think that she was in many respects a

catalyst.  That she was instrumental in them being murdered. Bobby Poyson lived there for six months and hadn't murdered anybody.  Roland -- or Frank Anderson had been traveling with the Defendant.  He wouldn't have gone there probably if he hadn't run away with Kim Lane.

She was the first one to say let's kill them and take the truck and I think in many respects she was very really -- very really the catalyst that lead to the murders so the State would ask that you sentence her accordingly.

THE COURT:  Mr. Rosenthal, anything further?

MR. ROSENTHAL:  No, your Honor.

THE COURT:  Ms. Lane, you were charged in the information in this case in Count One with First Degree Murder, a Class 1 felony.  You were found guilty of that offense by the jury.

Based upon the jury's determination of guilt, it is the judgment of the Court that the Defendant is guilty of the offense of First Degree Murder as charged in Count One.  It is a Class 1 felony.  It was committed on or about August 13th, 1996 and it is in violation of A.R.S. Section 13-1105, 13-1101, 13-604, 13-703, 13-701 and 13-801.

You were charged in Count Two with Conspiracy to Commit First Degree Murder, a Class 1 felony.  You were found guilty of that offense by the jury.

Based upon the jury's determination of guilt, it is the

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

judgment of the Court that the Defendant is guilty of the offense of Conspiracy to Commit First Degree Murder as charged in Count Two.  It is a Class 1 felony.  It was committed on or about August 12th, 1996 and it is in violation of A.R.S. Section 13-1003, 13-1105, 13-701 and 13-801.

You were charged in Count Three with First Degree Murder, a Class 1 felony.  You were found guilty of that offense by the jury.

Based upon the jury's determination of guilt, it is the judgment of the Court that the Defendant is guilty of the offense of First Degree Murder as charged in Count Three.  It is a Class 1 felony.  It was committed on or about August 13th, 1996 and it is in violation of A.R.S. Section 13-1105, 13-1101, 13-703, 13-701 and 13-801.

You were charged in Count Four with First Degree Murder, a Class 1 felony.  You were found guilty of that offense by the jury.

Based upon the jury's determination of guilt, it is the judgment of the Court that the Defendant is guilty of the offense of First Degree Murder as charged in Count Four.  It is a Class 1 felony.  It was committed on or about August 13th, 1996 and it is in violation of A.R.S. Section 13-1105, 13-1101, 13-703, 13-701 and 13-801.

You were also charged in Count Five with Armed Robbery,

a dangerous Class 2 felony.  You were found guilty of that offense by the jury.

Based upon the jury's determination of guilt, it is the judgment of the Court that the Defendant is guilty of the offense of Armed Robbery as charged in Count Five.  It is a dangerous Class 2 felony.  It was committed on or about August 13th, 1996 and it is in violation of A.R.S. Section 13-1904, 13-604, 13-701 and 13-801.

The Court has reviewed the file in this matter.  I have considered the presentence report.  I have also considered Dr. Karp's report which was attached to the presentence report.  That was the first time I actually read that report.

I have considered the evidence which has been presented at the trial.  I have considered the evidence which was presented at the various hearings that have been held in this case.  That included the suppression hearing on the motion to suppress statements made by the Defendant.

I am certainly aware of the testimony that was presented at the trial involving the co-defendant Mr. Poyson.  I have not read a presentence report on him.  We, in fact, have not begun the presentencing hearing on his case so I have not been exposed to whatever proposed mitigation may be offered on behalf of Mr. Poyson.

I, of course, was not the Judge who handled Mr. Anderson's case.  I am, of course, aware of what happened

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

17

in that case.  I am aware of the sentence that was imposed. My knowledge of the Anderson case is pretty much limited to what most of the spectators here would know about.  In fact, some of them may have more knowledge than I do because they may have been present at the trial.  I literally know nothing about Mr. Anderson other than what I read in the newspaper which may or may not be an accurate source of information.

I have considered everything else that has been presented at this time.

Mr. Rosenthal, other than the matters which have already been placed on the record during the course of this case, is there any legal cause why sentence should not now be pronounced?

MR. ROSENTHAL:  No, your Honor.

THE COURT:  All right.  Ms. Lane, you and your Attorneys will come forward, please.

(The Defendant and her Attorneys approached the Bench.)

THE COURT:  This is certainly a difficult decision that I have to make.  It is a decision that I have thought about quite a bit.  I had pretty much formulated an approach that I intended to take on the sentencing in this case before coming in here and there is really nothing that happened or nothing that anyone has said which has changed my analysis of what ought to be done in this case.

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

18

And the analysis of the sentencing in this case that is going to be imposed is really one that defies the traditional way that we make decisions as far as the amount of time for which people are going to be incarcerated.

Both Counsel have mentioned aggravating and mitigating circumstances and I am sure that you have done so just because it is a reflective reaction to address this case the way that you would address every other case and yet it occurs to me that the decision that I have to make in this case does not depend on aggravating or mitigating circumstances and I will clarify why that is in just a moment.

The decision that has to be made is essentially just based upon whether I think that it is sufficient for the Defendant to be imprisoned for the next twenty-three years and be able to get out and have some sort of life after that point or whether I think that she should be locked up literally for the rest of her life or whether I think there is some period of time in between those two that would be appropriate and if I can figure out a way to impose a sentence that will get to some other number.

And the reason that I indicated that the aggravating and mitigating circumstances is not that relevant is simply because of the sentencing structures that we are operating under.

On the conspiracy charge, I believe there is only one

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

sentence that I can impose under the statute and that is life imprisonment without the possibility of release until she has served twenty-five calendar years.

On the three first degree murder charges, since the death penalty is not an option, my only two choices are life imprisonment without the possibility of release until having served twenty-five calendar years or what is referred to as natural life which is literally keep her in prison until she is no longer alive.

And those statutes, interestingly, do not give me any compromise position. I cannot order something short of natural life and I cannot order something longer than twenty-five calendar years and that's kind of an interesting twist on the statute.

The cases I think make it abundantly clear that for a judge to sentence a defendant to natural life, the judge has to do nothing more than simply pronounce the sentence and clarify that it is natural life. A judge has absolutely no obligation to defend or justify or rationalize the decision that he made and -- and I certainly don't intend to make any decision in this case without explaining why I am doing it.

The statute on the armed robbery charge defines a sentencing range that is more traditional and does at least involve some analysis of aggravating and mitigating circumstances although I can make a decision before I get

there that would render meaningless any discussion that I may engage in on the robbery charge.

One of the things I also have to discuss or address is the concurrent versus consecutive sentence issue although, again, I don't have to even worry about that if I order her to be incarcerated for the rest of her life.  If I want to impose consecutive sentences, I can do so without any justification or explanation for my doing so because the statutory presumption under 13-708 is that sentences will be imposed consecutively.

And if I want to impose concurrent sentences, the only requirement is that I set forth on the record my reason for doing so and there is no specific standards that I have to address or comply with.  I can give reasons which may seem appropriate to me and may not seem appropriate to anyone else and there is really no restriction upon my ability to impose concurrent sentences should I feel that that would be appropriate.

And it occurs to me this is an extremely difficult decision to make just within the atmosphere that has permeated this case.  This has been a very emotional case for a lot of people that have been involved.  I can't remember a case in which I have ever seen a jury returned where members of the jury were more emotionally involved and upset and displaying obvious concern with the struggle they had gone

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

through than was the Defendant or even her family and I am sure this was an extremely difficult process for the jury to go through.

My responsibility is to enter an order and make a decision in this case which I think does a number of different things to protect society's interest in the sanctity of human life and recognizes also that the Defendant is a person and is not simply a statistic yet also recognizes she is a person who made extremely poor decisions and engaged in behavior which I believe probably resulted in the jury convicting her on extremely serious crimes.

And the bottom line in this case is really do I think that the Defendant ought to spend the rest of her life in prison or do I think that there is some circumstance under which she should be allowed to get out of prison some time in the future and have some sort of life.

And there are societal concerns that I need to consider and it is difficult for me not to also think of the Defendant as a person and to think of the circumstances of this particular case.

One of the most logical and probably persuasive arguments that can be made in support of simply entering orders to lock her up for the rest of her life, whether it be through consecutive sentences or the imposition of natural life, is that there are three different people who were

killed in this case and if I impose concurrent sentences, an argument could be made that I am taking the position that killing three people is no worse than killing one person.

If I impose concurrent sentences, I am also leaving myself open to the argument that I can consider at least two of the people who got killed to essentially have no worth whatsoever because I am not acknowledging in any way the fact that they died in addition to the other one person and those are not necessarily unpersuasive arguments.

And I certainly don't want to do anything that would suggest to this Defendant or any other defendant that once you killed one person, you might as well go ahead and kill as many other people you want because nothing more is going to happen to you.

When I consider the circumstances of this case, we are dealing with a crime -- a very serious crime that was committed by a person while she was fourteen years old.  The one thing I know for a fact is that the Defendant cannot be any younger than thirty-nine when she gets out of prison and that's in a sort of best case scenario as far as the Defendant is concerned.

Under that scenario, the Defendant would be getting out of prison at a time where she would have spent approximately two-thirds of her life in prison.  She would have completely lost or relinquished any opportunity to participate in the

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

raising of her child.  Her child at that time would be almost ten years older than she was at the time she committed the crimes for which she would have been incarcerated.

And one of the things that I certainly have to ask myself is whether there is any reason to believe that this is a person that could be rehabilitated and could have some meaningful predictive life upon getting out of prison at the age of thirty-nine or possibly some later date.

One of the interesting aspects of this case and it is something that I will never know because I wasn't there.  I certainly have a problem and I have had a problem throughout the entire pendency of this case with the concept that Kimberly Lane masterminded these crimes and I say that in recognition of the fact when these crimes took place, she was a fourteen year old girl that had been raised in a somewhat dysfunctional situation; had for whatever reasons decided to leave home for a while and was in the process of being molested by a fifty year old man who for a period of time had assumed a father figure role in her life.

And to say that this person is the one who was dictating and planting the seeds and directing the conduct not only of the person who was molesting her but also another twenty year old individual who at least seems perfectly capable of making decisions on his own really seemed to be a stretch for me.

And I have seen nothing at the trial in this case and I

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

see nothing in any of the reports that have been prepared to suggest to me that this Defendant has such a persuasive, dynamic personality or intelligence that she would be able to overcome the will or the desires of Mr. Poyson and Mr. Anderson and get them to commit a crime that they would not have otherwise been perfectly willing to commit on their own.

And it occurs to me that even recognizing that the best that the Defendant can hope for in this case is to go to prison for a mere twenty-five years, I am not sure that society's interest in respecting the value of human life is necessarily going to be compromised or undermined if I impose a sentence in this case that allows her to get out of prison at some point in the future.

And these are just some of the things that I have taken into consideration.

The first decision that I have to make in considering these is that I am not going to impose a sentence of natural life specifically for the reasons that I have just indicated and I am not going to make the three murder sentences or the conspiracy to commit murder be served consecutively with one another.

It is therefore ordered as to Count One, First Degree Murder, that the Defendant is sentenced to life imprisonment without the possibility of release on any basis until the

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

service of twenty-five calendar years.

It is ordered as to Count Two, Conspiracy to Commit First Degree Murder, that the Defendant is sentenced to life imprisonment without the possibility of release until the service of twenty-five calendar years in prison.

As to Count Three, it is ordered on the First Degree Murder charge that the Defendant is sentenced to life imprisonment without the possibility of release on any basis or parole until the service of twenty-five calendar years.

As to Count Four, it is ordered on the charge of First Degree Murder that the Defendant is sentenced to life imprisonment without the possibility of release on parole until the service of twenty-five calendar years.

It is ordered that the beginning dates of each of those sentences will be today's date and that the Defendant will receive credit on each of those four sentences for six hundred seventy-one days served in custody prior to today's date.

It is also ordered that each of those four sentences will be served concurrently with one another or at the same time as each other.

I am still left with a concern that no one should be allowed to commit three murders for the price of one and I am concerned that anything that I do in this case will have even the appearance of my turning a cold shoulder to two -- any

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

two of the persons who got killed in this family and to give the appearance that I am not respectful of the fact that each of them was an individual that had the right to live their life and to not be subjected to the brutality which this Defendant was an active participant in and I believe that it is appropriate that I do at least something in the sentencing structure to acknowledge the fact this is a case involving the death of three different people.

As to Count Five, the Armed Robbery charge, the Court finds no aggravating circumstances and that's not necessarily because there aren't any but because I am not finding any.

The Court finds as a mitigating circumstance that the Defendant's participation in that robbery was relatively minor although it would not constitute a defense to the charges against her.

It is therefore ordered as to Count Five, Armed Robbery, that the Defendant is sentenced to seven years in prison which is a mitigated sentence for a dangerous Class 2 felony.

It is ordered that the beginning date of that seven-year sentence will be upon the completion of each of the four life sentences which has been ordered and the Defendant will receive no credit for time served against that seven-year sentence because she has received it all on the life sentences.

So, the bottom line, Ms. Lane, is that I have sentenced

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

you to life which, actually, in all likelihood transfers into twenty-five years plus an additional seven years on top of that and it is my understanding that you will have to serve six out of that seven years before you are eligible for release on any basis.

It is also ordered that you are sentenced to a term of community supervision to begin upon your release from prison which will be equal to four and four-sevenths of a year. That's one day for every seven days of the total prison sentence imposed.

Again, that's a sentence based -- that's a calculation based upon an assumption that you are only going to end up serving twenty-five years of the life sentence.

It is also ordered that you will pay restitution in the amount of four thousand dollars.  That will be paid through the Clerk of the Superior Court within one year following your release from the Department of Corrections.

I don't anticipate being around here checking up on that and I really don't anticipate that there is much likelihood that that is going to be get paid but if you don't pay it, there are various methods in place that would enable someone to collect that money.

The Clerk is directed to send to the Department of Corrections, along with the sentencing order, a copy of the presentence report which does include Dr. Karp's report.

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

The Defendant is remanded to the Department of Corrections.

This judgment will be sufficient authority for the sheriff to transport the Defendant to the Department of Corrections and for the Department of Corrections to incarcerate the Defendant for the period of time just ordered.

It will be necessary at this time, Ms. Lane, for you to place your right thumbprint on the sentencing order down at the table, please.

The record will reflect that the Defendant has placed her right thumbprint on the sentencing order in open court.

Ms. Lane, you have the right to file an appeal in this case. I believe that's an appeal that you actually have to file the notice and exercise your right. I don't believe that there is an automatic appeal on this offense.

If you wish to file an appeal, you need to do so within twenty days from today's date or else you would lose that right.

If you could not afford an attorney on appeal, one would be appointed to represent you. If you could not afford copies of transcripts or other records, they would also be provided to you.

If you wish to file an appeal, you need to do so within twenty days from today's date or else you would lose that

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

right.

I am about to hand to your Attorneys a notice of rights of review after conviction.  You'll need to go over this with them.  Sign one of the copies and return it back to the Clerk.

I already gave it to you; didn't I?

MR. ENGAN:  Yes.

THE COURT:  I have already given it to Mr. Engan. You'll need to go over that and sign it and return it back to the Clerk.  One of the copies is for you records.

That document just tells you how to go about filing an appeal.  It is not the notice of appeal.  If you wish to file an appeal, there is a different form that you would need to file back with the court within the next twenty days.

It's ordered remanding the Defendant to the custody of the sheriff to carry out the sentence just ordered.

Anything further at this time, Counsel?

MR. ROSENTHAL:  No, your Honor.

MR. CARLISLE:  No, your Honor.

THE COURT:  All right.  We will stand at recess.

(The proceedings were concluded at 3:07 p.m.)

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

30

## Certificate of Reporter

I, Sandra R. Brice, Official Reporter in the Superior Court of the State of Arizona, in and for the County of Mohave, do hereby certify that I made a shorthand record of the proceedings had at the foregoing entitled cause at the time and place hereinbefore stated;

That said record is full, true and accurate;

That the same was thereafter transcribed under my direction; and

That the foregoing twenty-nine (29) typewritten pages constitute a full, true and accurate transcript of said record, all to the best of my knowledge and ability.

Dated this 13th day of November, 1998.

_____
Sandra R. Brice, Official Reporter

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA