# EXHIBIT 12

# EXHIBIT 12

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MOHAVE

STATE OF ARIZONA,                    )
                                     )
                Plaintiff,           )
                                     )
    vs.                              )    Cause No. CR-96-865
                                     )    JUDGMENT AND SENTENCING
ROBERT ALLEN POYSON,                 )
                                     )
                Defendant.           )
_____)

BEFORE THE HONORABLE STEVEN F. CONN, JUDGE

November 20, 1998
1:37 p.m.
Kingman, Arizona

REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

    For the State:                   Derek C. Carlisle
                                     Deputy County Attorney
                                     315 North 4th Street
                                     Kingman, Arizona 86401

    For the Defendant:               Billy K. Sipe
                                     Attorney at Law
                                     2606 Stockton Hill Road
                                     Kingman, Arizona 86401

Reported by:  Kimberly M. Faehn, Official Reporter

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004529

2

P R O C E E D I N G S

THE COURT:  This is Cause No. CR-96-865, State versus Robert Allen Poyson.  Show the presence of the defendant; Mr. Sipe, representing the defendant; and Mr. Carlisle, representing the State.

Mr. Sipe, I note that Mr. Novak is not here.  Is that with your agreement?

MR. SIPE:  Yes.

THE COURT:  All right.  This is the time set for judgment and sentencing in this matter.

Mr. Poyson, we have your date of birth somewhere in the file.  Here we go, 8/15/76; is that correct?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Poyson, have you had a chance to read the presentence report that was prepared in this case?

THE DEFENDANT:  Yeah.

THE COURT:  Are there any corrections or mistakes in that report that either you or Mr. Sipe want to bring to my attention at this time that have not already been addressed through the presentencing hearing?

MR. SIPE:  No, Your Honor.

THE COURT:  Mr. Sipe -- and before counsel begin, let me just sort of synopsize what I've done here.  I have reviewed the -- I think what was essentially the discovery-type listing of mitigating factors; that's

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004530

3

primarily the nonstatutory mitigating factors that were set forth by the defense. That was shortly after the guilty verdict, I believe. That was a list of 26 factors that was later supplemented with one more, so there are 7 -- excuse me -- 27 nonstatutory mitigating factors that are being urged in this case. I have reviewed that document.

I've reviewed the sentencing memoranda of both the defense and the State. I've gone back and I have reviewed virtually all -- everything that has happened in this case that I have any sort of documentation for.

Mr. Sipe, anything that you want to say on behalf of your client?

MR. SIPE: Two housekeeping matters.

Number one, there was an additional nonstatutory mitigating circumstance, which -- I had written a letter to Mr. Carlisle; I have not made it an actual pleading, but it is in my sentencing memorandum, and that would be the disparity in sentencing of co-defendant Kimberly Lane.

THE COURT: All right. I'll write that down on my list. What's the other housekeeping matter?

MR. SIPE: Also on the sentencing memorandum, blue-bound sentencing memorandum on the nonstatutory mitigators, I have two number 13's, which I can only assume my computer malfunctioned, and in order to keep the other

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004531

4

numbers intact we should probably just make the second 13, 13A.  That way we don't have to change all of the other numbers.

THE COURT:  All right, and may -- may have actually missed that when I was going through.  I've written down on my notes that 13 was the defendant's good behavior while incarcerated.

MR. SIPE:  I'm following the numbers in the blue-bound sentencing memorandum, not the pleadings which I filed shortly after the verdicts, and hopefully Your Honor has received --

THE COURT:  Oh, in fact, yeah, let me get that.  I thought I had brought in everything, so . . .

(Off the record briefly.)

THE COURT:  And again, do you have an index or list?  I know I've looked at that before, but I'm trying to remember.  Okay.  Here we go, yeah.

MR. SIPE:  Page 16.

THE COURT:  All right.  Okay.  So, you want to have the follower one just be labeled 13A?

MR. SIPE:  Yes, Your Honor, just to keep the other numbers in order in the event that they're referred by number either by you or some other court.

THE COURT:  All right.  Any other housekeeping matters?

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004532

5

MR. SIPE:  No, thank you.

THE COURT:  All right.  Proceed.

MR. SIPE:  The jury verdict in this case, regardless of your sentence this afternoon, will assure that Mr. Poyson will spend the rest of his life in prison.  Consequentially, he will also die in prison.

The issue or decision to be made today is who makes a decision when he dies and how he dies.  The State has proposed and alleged certain aggravating factors under the statute for their position that Mr. Poyson should die by the State by lethal injection.

Regarding the victim Robert Delahunt, State has alleged that was an especially heinous, cruel or depraved murder.  That's the F.6 aggravating circumstance.  They've also alleged that as to the victim Roland Wear, but of course, not to the victim Leta Kagen.  Certainly there's no evidence of that, anyway.

As far as the Delahunt murder, the testimony at trial showed that it was a blunt-force trauma; basically, skull fractures which caused his death.  The testimony also showed that one or both of the skull fractures would have rendered him unconscious immediately and would have caused death immediately.  There was a knife wound to his head, and as horrific as this was, very obvious that was not the cause of death.

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004533

6

In fact, trial testimony was that Mr. Delahunt may have very well been unconscious, if not dead, prior to receiving that wound.  There's no question that there was a struggle with Mr. Delahunt prior to him receiving the fatal blow; but again, according to trial testimony, the fatal blow was a type of blow that would render him unconscious immediately, if not dead immediately.  So, the State has failed to prove that aggravator by a preponderance of evidence as to Mr. Delahunt.

As far as the heinous and depraved aspect of it, there are five factors the Court can look at.  None of those factors applies in this case.  Certainly no evidence that Mr. Poyson was relishing the murder of Mr. Delahunt.  In fact, the opposite is true.  There's certainly no gratuitous violence upon Mr. Delahunt.  No mutilation, no evidence that Mr. Delahunt was helpless.

The State has alleged that it was a sensless murder.  I certainly agree with the State that murder to Mr. Delahunt, as opposed as any other person, is senseless.  I think every murder is senseless, but case law is very clear that senselessess alone and helplessness alone is not sufficient to be an F.6 aggravating circumstance.  So, State has failed to prove any of those five factors; again, regarding the heinous, depraved nature of this.

Mr. Wear's cause of death was the same blunt

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004534

force trauma to the head. Again, he received several skull fractures. Again, trial testimony was it would have caused him to be rendered unconscious immediately and caused death immediately. There were multiple fractures to the skull, but the trial testimony was that they cannot be sure what came in what order. It's very clear that it was not a very long struggle with Mr. Wear, that when the brick was dropped on his head, that's what caused him to die very immediately.

So, again, based on the fact that it was a quick death, the cruel prong of this was not met by the State beyond a reasonable doubt, proved beyond a reasonable doubt. Similarly, as far as the heinous or depraved aspect, no evidence anyone relished the murder, gratuitous violence. No mutilation, no indication he was helpless; and again, certainly was senseless as all murders are but that alone is not enough to become an F.6 aggravating circumstance.

The State also indicated in their motion that Mr. Wear was under other stress because his lover Leta Kagen had been murdered and he was aware of this; however, there was no evidence presented at the trial or at any other hearing that he knew that Ms. Kagen was deceased.

State has also alleged the F.8 aggravated circumstance that multiple homicides occurred, and in this case certainly three homicides did occur.

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004535

8

The State has also alleged an F.1 aggravating circumstance that Mr. Poyson has previously been convicted of an offense punishable by death or life, and I think you have Mr. Poyson's criminal history and it clearly shows that he's never been convicted of a prior offense where death or life could be imposed. I know the State is using the other murders as F.1 factors, but that does not apply in this case. It has to be something that occurs in time.

The State is also trying to use armed robbery as an aggravating circumstance, as far as having a serious prior offense conviction; but again, very clear that has to be a conviction that's prior to the homicide, not something that occurred at the same time. Also, the armed robbery did occur at the same time as the murder, so it can't be used as an aggravator, and also it would be the underlying basis for the felony murder in this case as well.

So, because there is not historical priors as far as a serious offense or a conviction punishable by death or life, that aggravating factor has not been proven by the State beyond a reasonable doubt.

The final aggravating circumstance is pecuniary gain. Certainly, it's the State's position that these murders occurred only so the truck could be stolen. However, the State has not met this beyond a reasonable doubt. In fact, there has been testimony presented that, at least to

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004536

9

Roland Wear and Leta Kagen, might have even been a revenge killing as opposed to being -- the motivation being pecuniary gain.

Mr. Delahunt's murder occurred several hours prior to anything being taken from the residence.  So, certainly that can't be said to have been caused because of pecuniary gain either.

And has Your Honor read both of my memorandums?

THE COURT:  Yes.

MR. SIPE:  Okay.  In my memorandum, I did discuss the defense' proposed mitigation in great detail.  I'm not going to go through every one of those factors this afternoon, but I do want to touch upon some of the more important mitigating factors and also respond to some of the State's arguments against those mitigating circumstances.

Certainly age is a statutory mitigating circumstance in this case.  Mr. Poyson was 19 when the homicides occurred.  In State v. Trostle, the defendant in that case was 20.  Court found that as a statutory mitigating circumstance.  State v. Greenway, the defendant was 19.  The Court found that to be a statutory mitigating circumstance.

The Court, of course, also looks at things other than just a defendant's raw age in determining whether age is a mitigating circumstance.  In this case,

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004537

10

the evidence has shown that Bobby is easily influenced by other people, manipulated by other people, and those are some of the factors that case law talks about.  His family, Ruth Garcia, Laura Salas testified that he's a follower, not a leader.

There's a lot of testimony about how he was very slow in his development, could not crawl or take steps until he was 18 months old, could not speak until he was about two and a half years of age.  He was in speech therapy, special education.  Was always behind for his age.  Dr. Drake, in her report, indicates that Mr. Poyson's intellectual functioning is in the low average range.

So, all other factors that exist in this case, Your Honor, dictate that his age of 19, and the other factors, are statutory mitigating circumstances in this case. One of the other mitigators, nonstatutory, is remorse, and that is certainly something that courts do consider a mitigating circumstance.

In the State's response, the State says that they question Mr. Poyson's sincerity in this case.  This is a person who asked for the death penalty because he said that's what he deserved when he was first questioned in connection with this case.  So, I don't see how the State can question his remorsefulness when it's at that level.

In Dr. Kaperonis' report, which the State

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004538

11

cited, Dr. Kaperonis also questioned his sincerity.  The problem with Dr. Kaperonis opinion is that his interview with Mr. Poyson occurred about a year later in a sterile clinical setting as opposed to a situation where, just after his arrest within a week of these homicides having a chance to talk to him, and certainly once a person relates a story several times, is removed from the incident by a year, certainly you become somewhat desensitized to what had happened, and I think that Dr. Kaperonis' opinion, being a year later, really has absolutely no weight or bearing on this issue.

And Mr. Poyson's remorse is well-documented. Sergeant Ralph Stegall testified that when he interviewed Mr. Poyson he was very remorseful.  Former Detective Eric Cooper testified that Mr. Poyson was very remorseful.  In fact, was crying at one point during the interview.

At the aggravation mitigating hearing there was testimony from his family, who has had contact with Bobby, of course, that he was very remorseful.  Blair Abbott, who had a lot of contact with Bobby, testified that Bobby was very remorseful, and the cases where remorse is not found as mitigators are cases where it's obvious it's manufactured, it's self-serving.  Cases where defendants have previously lied, and none of that is here, Your Honor.

When a person confesses and then says I deserve

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004539

12

to be put to death, that is not a self-serving statement, and I think that the overwhelming evidence in this case has shown by a preponderance of evidence that Mr. Poyson is truly and sincerely remorseful for these homicides. It's not self-serving, it's not manufactured, and the State has presented no evidence whatsoever to counter his real remorse in this case.

Another nonstatutory ag -- mitigating circumstance which we've alleged is cooperation with law enforcement and, again, his confession. The evidence showed he was very and extremely cooperative with law enforcement. If you remember the testimony, I believe probably at the motion to suppress his statements, the officers in Illinois had called out for him when he was in the homeless shelter. He came out voluntarily. They placed him under arrest. He did not resist in any way. He was very cooperative the entire time.

He confessed on three different occasions to law enforcement. He assisted them with the whereabouts of some of the physical evidence out at the crime scene. He basically solved the case for law enforcement by telling them exactly what happened and in the greatest detail law enforcement could ever hope for, and his conviction came as a result from the confession.

I think Your Honor would agree that there is

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004540

13

really no physical evidence presented against Mr. Poyson or any other witnesses against him that he committed these homicides. It was certainly just simply his -- his statements. Also what's remarkable in his confession, taped confession to Eric Cooper, which I know Your Honor has heard, is he even corrected Mr. Cooper several times about some minor details and some minor facts.

Again, his extent of cooperation with law enforcement was just unimaginable in this case. Certainly much more cooperative than most people in this situation, and again, separately I think you can find the fact that he did confess on three separate occasions as a mitigating circumstance, and coupled with the fact that was really the only evidence against him.

As far as his work history, the State has alleged we haven't proven it or it means nothing because it's sporadic. The reason it was, quote, sporadic was as the testimony showed he did move a lot from place to place and, of course, when you leave one location to another, you often have to get a different job as well, but the evidence of has shown that he does have a very solid work history. In fact, has always worked, whether he was a juvenile or as an adult. So that has been certainly proven by the preponderance of evidence.

Drug use. Judge, and that was a factor which

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004541

14

we tied into a statutory and a nonstatutory mitigating factor. Again, the evidence in this case was overwhelming as far as Mr. Poyson's drug use. Blair Abbott testified he was a garbage pail-type drug user, in the sense that he would take every type of drug he could get his hands on, and certainly had been taking drugs perhaps the day of and day before the homicides occurred and was having a PCP flashback at least during Delahunt's murder. Again, the evidence in this case is overwhelming as far as the extent of his drug use and his drug addiction.

Personality disorders. Some of the personality disorders that psychologists and other professionals have given opinions on in the past, severe conduct disorder, maybe manic depressive or may have impulsive conduct disorder, and I think what's significant about the personality disorders in this case is that when he was a juvenile he was recommended to be on medication, to be prescribed certain medications to help control his behavior, to help control the personality disorders, yet he never took advantage of the this opportunity, probably because of economic reasons for this.

So, here's a person who's been diagnosed; even Dr. Drake, even Dr. Kaperonis, Dr. Malatesta have all stated he has certain personality disorders but they have never been treated, even though they should have been treated back when

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004542

15

he was a juvenile.

One of the other significant mitigators which we're proposing is Frank Anderson's influence upon Bobby Poyson. There's absolutely no question that these murders would not have occurred had Frank Anderson and his 14-year-old girlfriend Kimberly Lane come down from California to this area. Bobby Poyson had lived out there with these people for several months and lived with them in complete peace and harmony, but after Frank Anderson and Kim Lane show up, they all get murdered.

There's certainly no question that Bobby Poyson was not going to do anything to these people on his own or even had formed that thought but for the influence of Mr. Anderson, and the testimony at the aggravation/mitigation hearing again showed that Bobby Poyson is easily influenced by other people, especially older men. He's a follower, not a leader.

Ralph Stegall testified in this case at the motion to suppress statements that Bobby Poyson was influenced by Frank Anderson. Ralph Stegall truly believed this. Ralph Stegall was convinced -- well, Ralph Stegall was convinced that Frank Anderson convinced Bobby Poyson to commit these murders; and again, Dr. Malatesta, as the State pointed out in their motion, said that there's no evidence Bobby Poyson was pathologically influenced by Frank

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004543

16

Anderson.

Again, that's an interview a year later in a completely different setting, clinical environment, sterile setting, after a significant passage of time.  But, again, when you talk about some fairly significant -- very significant time frame shortly after these murders, shortly after Bobby Poyson is interviewed and telling everything that happened basically purging his soul to the officers in this case, that's when Ralph Stegall has a lot of experience, was convinced that yes, Bobby Poyson was very influenced, manipulated and convinced by Frank Anderson to be involved in these murders.

There's absolutely no question these would not have occurred but for Frank Anderson.  The evidence in this case showed that Mr. Anderson's 14-year-old girlfriend, Kimberly Lane, was the first person who brought up the idea of murder.  It's very clear thereafter that Frank Anderson came up with the plan to shoot everybody, and that's how these people were going to be murdered.

Very clear that Bobby Poyson said no, he can't do that, because there are no bullets, and then Frank Anderson comes up with the idea well, let's get a knife; we'll just simply cut their throats, which of course is exactly what he did to Robert Delahunt.  Even after Frank Anderson cut Robert Delahunt's throat, when Bobby went into

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004544

the little trailer to see what was going on, he did not want to go through with it. Even told Bobby, Robert Delahunt, this is just a joke, nothing's going to happen, but it was Frank Anderson who said no, I've already started it, we have to continue.

And again, Ralph Stagall testified that it was his opinion that Frank Anderson took Bobby to a point just too far, and then even after all this happened it was Bobby Poyson who wanted to turn himself in but Frank Anderson would not let him. So there's no question that Bobby was influenced, under substantial duress by Frank Anderson in being involved in these homicides.

One of the other factors which we have proposed, both as a statutory and nonstatutory, is Bobby's dysfunctional childhood. In the State's motion they said that we have failed somehow to prove this element and this issue, but they -- the evidence has been overwhelming which we presented to you. Certainly more than just a preponderance of evidence that Bobby Poyson came from a dysfunctional childhood.

In fact, we showed substantially that his dysfunctional childhood began before he was even born. The evidence showed that his natural father and his mother used drugs and alcohol very heavily for approximately three years, that his natural father engaged in bizarre self-destructive

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004545

18

behavior, like jumping off stoves head first into the ground, jumping out of moving vehicles, and there's been documents which indicate he's tried to commit suicide before, and Ruth Garcia testified that she's aware that he's been diagnosed with mental illnesses.

So, these are his parents and this is what's going on, even before he's born, and then during the first trimester of her pregnancy, before she knew she was pregnant, Ruth Garcia still used drugs, still used alcohol, and even after she found out she was pregnant she testified that she continued to drink some wine from time to time throughout her pregnancy and also smoked cigarettes throughout the entire pregnancy.

So, Bobby comes from a childhood that was dysfunctional before he even came into this world. And when he was sixteen years of age, a treatment classification profile worksheet was prepared, and it stated Bobby comes from a chronic multi-problem family, including child abuse, alcoholism, neglect, drug addiction and violence.

In 1993, a psychological evaluation was conducted, and it was stated Bobby's antisocial behavior can be traced through his chaotic family life. Bobby comes from a chronic dysfunctional family which includes once again child abuse, neglect, alcoholism, drug addiction, violence and multiple relationships with men. So, there's no question

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004546

19

he comes from a dysfunctional family.

There was testimony that one of his stepfather's, Guillermo, beat him.  I think Ruth said that he was brutal to the family, both physically and mentally, to the point where she finally had him prosecuted and thrown in jail.  There's also testimony that Bobby's grandmother was fairly brutal in the way that she had disciplined the family and she beat everybody on a regular basis.

Again, that's been proven substantially to this Court, so it's obvious Bobby comes from just a very dysfunctional childhood.  Never even knew his father.  Never even met his father.  He left before Bobby was even born, and is, of course, now serving a substantial prison sentence in Colorado, and as testimony showed Ruth had several different relationships, several different men she was married to during Bobby's upbringing.  There was just never that stability that he needed.  Every time he got used to someone, someone else would come into his life.

Another factor is family tragedy, and as I stated in my memorandum, there are two very significant events that happened to young Bobby Poyson which changed his life; unfortunately, for the worse.  Number one, the death of Sabas Garcia.  He was a stepfather of Bobby's and someone that Bobby liked a lot, someone that Bobby loved.  He was the only stepfather that Bobby got along with well, and they were

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004547

20

extremely close.

Unfortunately, at a young, young age Mr. Garcia had cancer and decided to brutally end his life, and we admitted into evidence his suicide note, which is on two polaroid photographs taken of Sabas and the family. And as Ruth said, when she testified, this changed Bobby, and he was simply never the same after this happened.

The second significant event that happened was shortly thereafter, Bobby was sexually assaulted by a godfather-type figure. In fact, he was sodomized by this person, fairly brutally, and the State pointed out that well, he didn't report it, and that's certainly not unusual for children of that age not to report these types of incidents, especially when Bobby was confused by it because there were other kids about his age that continued to associate with this person, and Bobby assumed -- the testimony will show -- that maybe what he did to me was acceptable and was okay because he's continuing to associate with these young people.

So, it's very common, understandable  that this was not something that was immediately reported to the authorities. In fact, the testimony at the hearing showed that this is almost a norm for that type of community; beatings going on all the time, and it was just a pretty tough, tough way of life, and I assume they just didn't

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004548

21

report things like this, and there's again reasons why these go unreported; but again, every single juvenile document you have, every single psychological report you have points to these two incidents as a turning point for Bobby, and despite the fact that before that he certainly had a troubled life, a chaotic life, he did pretty darn well.

We presented to you his school records to show you the type of grades he made. As a young child he made very good grades and any grades that any parent would be proud of. He received many awards. He was involved in some activities. Made his mother Mother's Day cards, and he was just typically a -- seemed like fairly a normal young man at that time, and going to school and making goods grades and not getting into trouble, not abusing drugs, not abusing alcohol, even though he had a pretty chaotic life when these two tragedies occurred. Ms. Ruth testified he was just never the same, and that's what started him into using drugs, into using alcohol and having behavior problems which again were never checked; that is, he was never prescribed medications which was recommended that he take.

So, I just wanted to touch upon some of the mitigators which I've included in my memorandum, but of course every mitigator in my memorandum, I think the evidence has shown, we have proven sufficiently enough. This case is very similar to a recent case, as far as the mitigation goes,

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004549

22

to State v. Trostle, which I'm sure Your Honor has probably thoroughly read prior to today's date. In that case, as I mentioned earlier, the defendant was 20 years of age, he was convicted of first degree murder.

The Court found two aggravating circumstances; pecuniary gain, especially heinous, cruel, depraved nature. Basically, it was shotgun execution-type murder. The lower court sentenced Mr. Trostle to death. The Arizona Supreme Court overturned that and reduced it to a life sentence. And what's interesting is so many of the factors that apply and the Court considered in that case also apply to Bobby Poyson.

For instance, when they are talking about the good one mitigator, the state supreme court said that yes, Mr. Trostle knew what he did was wrong; however, he provides sufficient mitigation evidence to show that even though he could have appreciated the wrongfulness of his conduct, his ability to conduct himself according to the law requirement was impaired at the time of the offense.

Their mitigation expert talked about his traumatic upbringing as a child and resulting medical -- was mental disturbance because of these traumatic experiences, and influenced his criminal action. Came from an abusive childhood. His mom used drugs. His father was separated from him when he was very young.

Of course, in this case Bobby has never even

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004550

23

met his natural father.  Grandmother's beating; would beat him regularly, as in this case.  His grandfather was convicted of sexually molesting him.  Again, Mr. Poyson was sexually molested as a child.  In Trostle's case he acted out sexual -- sexual impropriety with other children.  He was placed, by juvenile authorities, in a residential treatment program and educational program, such as this case.

Psychological evaluation warned of escalating development of problems.  He had a high risk of developing anti-social behavior patterns, as in this case.  When he was a juvenile, the juvenile staff stated in a report that Mr. Trostle would need a great deal of aftercare support.  However, as in this case, received very little follow-up treatment after being released.

He was also diagnosed with some personality disorders, including conduct disorder, severe polysubstance abuse disorder, just like in this case.  The experts for the defense also testified that he demonstrated extreme social dysfunction and inability to function independantly in the general community.  He was probably not ready to be reintegrated into society after his release from the residential program.

And like this case, Mr. Poyson had been incarcerated.  He had been in residential treatment programs, but when he was released he generally did not go to

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004551

24

sufficient aftercare programs.  He continued to be in this chaotic life-style, this unsubstantial home environment where he just didn't have resources to pull through on this.

Again, Mr. Trostle, there's an absence of any stablizing factors in it.  His family life, his own experiences, his victim of abuse, significantly predisposed him to repeat such behaviors as he developed further.

Also, stated by a defense expert in that case as an individual who could not have been expected to conform to the expectations and demands of society, behave in a legal and responsible manner, given the history of his development and the circumstances in which he was in when the crimes occurred.

In that case the Judge again overturned his death sentence because of substantial evidence, as in this case, which was presented concerning his chaotic upbringing, and what's interesting in Trostle is, unlike all the other cases, there was no connection between this chaotic life-style and upbringing and the murders.

In this case, in fact, State pretty much criticized that by stating there's no meaningful link that exists between his abuse as a child and a crime of this magnitude.  So, for the first time it seems that the state supreme court is not requiring that link, that nexus, because how can you prove that.

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004552

25

I mean, how -- kind of hard to prove when a person comes from a chaotic childhood that years later they're involved in something, such as homicide, and kind of hard to ever show that nexus and link. That's why all cases pretty much say it's not found in this case, but this is a case where it's not found and even the dissent critisizes it.

Yet it was substantial enough to overturn its death sentence, and pretty much the last paragraph of the majority opinion just said evidence causes us to question whether death is appropriate. Where there is a doubt whether that sentence should be imposed, we will resolve that doubt in favor of a life sentence and simply overturn the death sentence.

There are some other mitigating factors which the Court found which apply in this case, such as age. Again, Mr. Trostle being 20. The other age factors they also discussed, they said that his age was average, above Mr. Poyson's rating. Other evidence established he was immature, easily influenced, as in this case; a follower, as this case; easily manipulated and pushed to do what others with stronger willpower wanted him to do.

Other mitigator, cooperation with the police, as in this case. Dysfunctional family background; past drug and alcohol abuse, as in this case. The Court also took into consideration the loving family relationship; and again,

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004553

26

that's one of the nonstatutory mitigators that I have proven in this case, as far as the family support that he has.

The state supreme court also considered his ability to function well in structured environment. One of the mitgating circumstances in my memorandum is the fact that he can be rehabilitated in structured environment. There's certainly documentation to prove that which is in the record and discussed in my memorandum lack of prior violent felony conviction and remorse, as in this case.

What's interesting is that the state supreme court also said that there's no scale upon which to measure what is or is not sufficiently substantial because there's a statute; as the statute is worded, if the State proves beyond a reasonable doubt one mitigator, then the presumption is death, and it will be death unless the State -- unless the defendant has substantial mitigation sufficiently to call for leniency and even recently the U.S. State Supreme Court questions how can you measure substantially sufficient. How can that be done?

And in this case, Judge, we have proven several statutory and nonstatutory mitigating circumstances. The case law said that the mitigating circumstances have to be considered individually and accumulatively by the Court in determining whether or not it's sufficiently substantial to call for leniency, but when you look at the Trostle case,

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004554

27

Judge, and you look at the mitigators we have presented in this case, it's almost identical.

There are two aggravating circumstances in that case; yet, supreme court or state supreme court reversed the death conviction based on Trostle, Judge.

And based on all of the mitigating factors that we have proven to you in this case, that's supported by the record, supported by the case law, we ask you to find that that mitigation is substantially sufficient and calls for leniency and therefore impose a life sentence.

THE COURT:  Mr. Poyson, is there anything that you would like to say at this time on your own behalf?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Mr. Carlisle?

MR. CARLISLE:  Your Honor, and you didn't actually mention it, but I'm assuming that you have received the State's notice of aggravating factors which was filed right after the verdicts were rendered in this case?

THE COURT:  Yes.  Yes, I have.

MR. CARLISLE:  And also the State's sentencing memorandum?

THE COURT:  Yes.

MR. CARLISLE:  Actually, I'll probably do it the same order Mr. Sipe did.  With respect to the aggravating factors, you heard all the testimony at the trial.  You heard -- and

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004555

28

I'll agree with Mr. Sipe -- the most compelling evidence in this case is obviously the defendant's confessions, both his taped confession and his confession to Sergeant Stegall, and with respect to the especially cruel, heinous or depraved aspect, and the case law is fairly clear that you can find that aggravating factor if you find that it's either especially cruel or especially heinous or depraved, and the State believes that the murder of Robert Delahunt and the murder of Roland Wear were both especially cruel.

The testimony was that -- or excuse me -- Mr. Poyson's own statements were that Robert Delahunt struggled for approximately 45 minutes, and they can speculate that they rendered him unconscious, but his own statements are that he struggled for 45 minutes.

The medical examiner said the slashed throat was not a fatal injury. The knife being driven through the skull was not a fatal injury. He speculated that those -- that the skull fractures could have rendered him unconscious, but he could have been conscious. He did -- and by the testimony of the person that was there, Robert Poyson, Mr. Delahunt was still alive, he was still struggling. He had defensive wounds on his hands that would be consistent with him struggling.

He indicates that -- Mr. Poyson indicates that Robert Delahunt took the knife away from his attackers and he

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004556

29

had wounds that were consistent with that.  Eric Cooper indicated that while he was testifying he showed the wounds that he received because Robert Delahunt was struggling, was trying vainly to save himself.  And during that struggle, during that 45 minutes it took to kill him, he did suffer incredibly, both physically and mental anguish.  He had already overheard that they were planning on killing everybody there to take the truck.  He knew that, and he was begging for his life.  He was trying deseparately to stay alive.

The State feels that this was an especially cruel murder.  With respect to the heinous or depraved, the State believes that there was gratuitous violence inflicted.  There is the slashed throat.  There is the knife that's driven through the skull.  There is the repeated smashing of the head.  Mr. Poyson, in his confesion, said that he smashed Delahunt's head against the floor, that he smashed it with his fist, that he smashed it with a rock, and there's just numerous head injuries, and based on that, State believes that when you look at all those injuries, there is gratuitous violence in this case.

With respect to Mr. Delahunt, with respect to Mr. Wear, and also the other factors that State argued in it's sentencing memorandum, with respect to Mr. Wear, he was shot, he got up, he struggled with both Mr. Anderson and

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004557

30

Mr. Poyson, he was struggling also for his life. He was hit repeatedly with the rifle. There were splatters of blood in the room. There was the broken stock of the rifle after he had been hit with it. He managed to struggle outside where again he was hit repeatedly with the rifle, with both the butt and the -- apparently the trigger mechanism of the rifle.

According to Robert Poyson's own statements, that he hit him until eventually the trigger mechanism or the handle broke and stuck in to a Mr. Wear's head, and that's when he finally stopped, finally knocked him to ground. While trying to get up, he was hit in the back with a cinder block, and Bobby Poyson goes over, started kicking him in the head, telling him -- yelling at him to stay down, and still, that's not good enough and he takes and he smashed his head like an eggshell with the cinder block. State believes that that was also especially cruel.

With respect to the multiple homicides, defense has conceded there were multiple homicides in this case. I think case law is pretty clear that if you find that there were multiple homicides with respect to one of the victims, then you found that it applies to all of the victims, and the State was arguing basically in the alternative, somewhat akin to State v. Rogovich, that if the first one, the murder of Robert Delahunt was a different episode -- and State doesn't

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004558

believe it is -- then the F.1 factor would apply with respect to the murder of Robert Delahunt.

With respect to the other two, the State believes that this was all one course of conduct and that because it was all one course of conduct, the multiple homicides aggravating factor applies.

With respect to pecuniary gain, Mr. Sipe concedes basically that none of these murders would have happened if it wasn't for Roland Wear and Kim Lane -- or excuse me -- if wasn't for Frank Anderson and Kim Lane showing up and wanting to go to Chicago or go to Kentucky or wherever it is exactly they wanted to go. They said that they were going to go to Chicago. They indicated they wanted to go to Chicago, that they were going to go live this life of luxury as mafia godfather and goddaughter; and basically, Bobby Poyson would be an enforcer-type person and so that was their whole goal was to go to Chicago, and so to get to Chicago they needed to steal the truck.

I think, going back a step, that's what makes these crimes so senseless and so, well, heinous or depraved, based on their senselessness that they were out in the middle of nowhere. Everybody concedes that these murders took place out in the middle of nowhere. They didn't need to kill three people to take the truck. They could have just taken the truck. They could have cut phone line. Neighbors did not

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004559

32

have a phone. They could have just taken the truck. Left in the middle of the night, they would have been to Flagstaff, they probably would have been out of Arizona before anybody even discovered what had happened.

Instead they murdered three people to take the truck, and that's the whole goal is to get the truck so that they can go to Chicago. Clearly this murder was committed with the expectation of pecuniary gain.

With respect to the final two aggravating factors, defense is arguing the same with respect to both those, the F.1 factor with respect to the conspiracy count and the F.2 factor with respect to the armed robbery count, and the case law is fairly clear that as soon as conviction comes in, as soon as the jury said this person is guilty, that's when the conviction applies.

With respect to the F.1 and F.2, I think I cited a case in there -- there's other cases that aren't necessarily cited in this particular portion of the State's brief, but I think in Rogovich they found that it applied. There's numerous cases, and basically I didn't really spend a lot of time arguing that because the case law is very clear that it's when the jury verdict is rendered. That's when a prior conviction occurs for purposes of F.1 and F.2.

With respect to the mitigating factors, and I just wanted to touch on a couple of them, Mr. Sipe was

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004560

especially arguing that this case was very similar to State v Trostle; however, Mr. Trostle's mental problems were much more acute, much more well-developed, in the testimony, than those of Mr. Poyson, and I think one of the key factors is the State talked about -- or excuse me -- that the Court talked about, and Mr. Sipe mentioned was Mr. Trostle's inability to perform in society and to conform his conduct.

Well, Mr. Sipe admitted basically that that does not apply to Mr. Poyson. He lived at this house for several months, did not have plans on killing anybody, was able to conform his conduct. He did have jobs. He had worked very sporadically.

State does not believe that his work history should be a mitigating factor because he doesn't seem to have ever worked for longer than a couple of months, but he was able to perform, to live a normal life. He had a job. He had jobs. He was paying rent. You know, he apparently was, at some point, baby-sitting Robert Delahunt, so he was doing all of these things. He was able to conform his conduct to that which was required.

Mr. Sipe stated repeatedly, none of this would have happened if it wasn't for Frank Anderson and Kim Lane showing up. Well, if none of this would have happened but for the presence of those two, then clearly he was able to conform his conduct to that which is required. You can't

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004561

34

have it both ways.  You can't say that none of this would have happened if it wasn't for these other two, then to say, well, it was bound to happen because he can't conform his conduct.

So, the State believes that they haven't shown that mitigating factor, that they haven't proven that mitigating factor.  With respect to the other mitigating factors, the State believes that -- I've addressed those issues in my sentencing memorandum, that none of those factors taken together are substantially great enough that they should call for leniency in this case.

The State would also would ask that the death penalty be imposed, and further would ask that you make a specific finding that any of the aggravating factors are sufficient to call for the death penalty in this case.  Thank you.

THE COURT:  Mr. Sipe, anything further?

MR. SIPE:  Nothing further, Your Honor.

THE COURT:  Mr. Poyson, you were charged in the Indictment in this case, in Count I, with conspiracy to commit first degree murder, a class 1 felony.  You were found guilty of that offense by the jury.

Based upon the jury's determination of guilt, it is the judgment of the Court that the defendant is guilty of the offense of conspiracy to commit first degree murder, as

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004562

35

charged in Count I.  It's a class 1 felony.  There's no designation as to dangerousness or repetitiveness that would apply on that.  It was committed on or about August 12, 1996, and it's in violation of A.R.S. Section 13-1003, 13-1105, 13-604, 13-701 and 13-801.

You were charged in Count II of the Indictment with murder in the first degree of Robert Delahunt.  You were found guilty of that offense by the jury.  Based upon the jury's determination of guilt, it is the judgment of the Court that the defendant is guilty of the offense of murder in the first degree, as charged in Count II.  It's a class 1 felony.  It was committed on or about August 13th, 1996, and it's in violation of A.R.S. Section 13-1105, 13-073 and 13-801.

You were charged in Count III of the Indictment with murder in the first degree of Leta Kagen.  You were found guilty by the jury of that offense.  Based upon the jury's determination of guilt, it is the judgment of the Court that the defendant is guilty of the offense of murder in the first degree, as charged in Count III.  It's a class 1 felony.  It was committed on or about August 13, 1996, and it's in violation of A.R.S. Section 13-1105, 13-073 and 13-801.

You were charged in Count IV with murder in the first degree of Roland Wear.  You were found guilty of that

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004563

36

offense by the jury. Based upon the jury's determination of guilt, it is the judgment of Court that defendant is guilty of the offense of murder in the first degree, as charged in Count IV. It's a class 1 felony. It was committed on or about August 13, 1996, and it's in violation of A.R.S. Section 13-1105, 13-073 and 13-801.

You were also charged in Count V with armed robbery, a dangerous class 2 felony. You were found guilty of that offense by the jury. Based upon the Jury's determination of guilt, it is the judgment of the Court that the defendant is guilty of the offense of armed robbery, as charged in Count V. It's a dangerous but nonrepetitive class 2 felony. It was committed on or about August 13, 1996, and it's in violation of A.R.S. Section 13-1904, 13-604, 13-701 and 13-801.

The Court has reviewed the entire file in this matter. I've considered everything that has been presented at every hearing that has been held in this case. That includes any of the pretrial motions, and including certainly the voluntariness hearing, the evidence presented at trial, the evidence presented at the presentencing hearing. I have read the notices that were filed by counsel. I have read the memoranda that have been filed by counsel. I have read anything that has been attached to those memoranda. I've also reviewed the mental health reports that were prepared,

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004564

pursuant to the Rule 11 process.

I should advise counsel of something that you, of course, are aware of, and that is that I was the judge on the jury trial of Kimberly Lane's case so I'm certainly familiar with the evidence that was presented at her trial.

Certainly to the extent that I would rely upon or would consider relying upon anything presented at her trial in order to make a decision in this case, I have not done so and I have not gone back and independently reviewed my notes or any transcripts of the testimony in her trial. I am, of course, aware of the sentence that was imposed in her case and I have specifically thought about that because that is one of the factors that I'm being asked to consider.

I have very limited knowledge about the proceedings in Mr. Anderson's case. In fact, most of what I know about his case I've either gleaned through the media or have been told by attorneys that were involved in either of the Lane or the Poyson cases.

I've considered all of the arguments that have been presented. I have read the cases that have been cited by counsel, to the extent that I felt that it was necessary to do so, or to the extent that I was not already familiar with the propositions that were set forth in those cases.

Mr. Sipe, other than anything else that has already been placed on the record, is there any other legal

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

38

cause why sentence should not now be pronounced?

MR. SIPE: No.

THE COURT: All right. Why don't you all just remain at the table since -- since I have to be talking for a while now. I want to start off with what I would consider the easy parts of this decision and simply get the non-murder charges out of the way.

No legal cause appearing, as to Count I, conspiracy to commit first degree murder, the defendant is sentenced to life imprisonment without the possibility of release on any basis until he has served at least 25 calendar years.

As to Count V, the armed robbery charge, the Court sees no purpose in going through and identifying potential aggravating and mitigating circumstances, because I certainly intend to cover every possible base, as far as a sentence that could be imposed on the murder charge, and I am firmly convinced that whatever I do on the armed robbery charge is going to be absolutely meaningless. So, the Court finds no aggravating or mitigating circumstances.

It's ordered, on the armed robbery charge, that the defendant is sentenced to 10.5 years in prison, which is the presumptive sentence for a dangerous class 2 felony. The beginning date of each of those sentences -- in other words, the conspiracy sentence and the armed robbery sentence --

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004566

39

will be today's date. The defendant will receive credit against each of those sentences for 819 days served in custody prior to today's date.

It's ordered that those two sentences will be served concurrently with one another. It's also ordered that the defendant will pay restitution in the amount of $3000. I will not enter any orders as to whether I realistically expect that that will be paid because I don't.

As to the murder counts, addressing first the aggravating factors which under A.R.S. Section 13-703.F have to be proven by the State beyond a reasonable doubt, unless I indicate otherwise -- and I think except for one of them, this discussion is going to cover all three victims equally.

The first statutory aggravating factor is that the defendant has been convicted of another offense in the United States for which under Arizona law a sentence of life imprisonment or death was impossible, and I'll discuss the second one in conjunction with this because they're very closely related.

A.R.S. Section 13-703F.2, is whether the defendant was previously convicted of a serious offense, whether prepatory or completed. I'm actually simply not convinced that the purpose of the legislature in enacting either of these two aggravating factors was to built in to every case where more than one person was murdered the

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004567

opportunity to argue not only the F.8 aggravating factor but also the F.1 and the F.2 aggravating factors.

Keeping in mind that the entire purpose of what we're going through now is to determine whether there is anything about this defendant that separates him from the norm -- and that's not the norm in society, but the norm of other people who commit murders -- and I believe that that policy would be undermined by a finding of the F.1 or the F.2 aggravating factors. I don't believe that they are intended to apply in this sort of circumstance, and I don't think that any one of the cases that have been cited by the State really firmly support that proposition.

The Court finds that the State has failed to prove, beyond a reasonable doubt, the aggravating factors that are set forth in A.R.S. Section 13-703.F.1 or 13-703.F.2.

As far as 13-703.F.3, which is whether in the commission of the offense the defendant knowingly created a grave risk of death to another person or persons, in addition to the victim of the offense, actually an argument could be made that this applies because he not only created a grave risk of death he actually killed other people, but that obviously would be included within one of the other aggravating factors.

I believe this aggravating factor is meant to

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004568

41

cover a person who actually survived and is not murdered along with other people.

The Court finds that the State has failed and, in fact, has not attempted to prove, beyond a reasonable doubt, the application of A.R.S. Section 13-703.F.3. As to the F.4, whether the defendant procured the commission of the offense by payment or promise of payment of anything of pecuniary value, there is no evidence in this case that would support the defendant having offered something of value that he had to anyone else to participate in this murder.

The State (sic) finds that there is no evidence to establish, beyond a reasonable doubt, the existence of the aggravating factors set forth in 13-703.F.4, 13-703.F.5, as to whether the defendant committed the offense as consideration for the receipt or in expectation of the receipt of anything of pecuniary value.

This is a factor that was subject to some dispute for the first several years after the death penalty statute was enacted. There is, at least, I think, two out of five members of the supreme court who very agressively maintained that this factor was meant to apply only to a murder-for-hire situation.

They consistently dissented in opinions, and after a period of time in which they had continued to dissent, I believe that they ceased dissenting and basically

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004569

42

made the observation that if the legislature had seen fit to change the statute to clarify that it was supposed to apply only to murder for hire, they had plenty of opportunity do that.

I think that the case law is very clear at this time that this is not a factor that applies exclusively to a murder for hire.  It also includes a situation where the expectation of getting something of monetary worth is a reason behind the commission of the offense.

Now the danger in the application of this aggravating factor that there are many murders that are committed and once a person realizes that the other person is dead and has no use for their property, a decision is made to take property, and those are cases in which this factor would not apply.  That is clearly not the situation that we have here.

The desire to get something of value and the fact that -- that any common, decent person would think that it was something of very little value compared to the behavior that was engaged in to get it is really not relevant.  The fact is that the desire to get the means of transportation to get them out of Golden Valley and get to Chicago, or wherever it was they that they were going, was the sole reason, the driving force behind the commission of these murders.

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004570

I believe that the State has proven that overwhelmingly by the evidence. The Court determines that the State has proven, beyond a reasonable doubt, the applicability of the aggravating factors set forth in A.R.S. Section 13-703.F.5, that all three murders were committed by the defendant in the expectation of the receipt of something of pecuniary value.

The sixth factor, the one that we could probably all talk about all day, if we were so inclined, 13-703.F.6, is whether the defendant committed the crimes in an especially cruel, heinous or depraved manner. Probably the key word here is especially, and this is the factor that the cases have emphasized over and over again. It's not to be interpreted too broadly.

Part of the reason that this factor is even subject to federal review is because of the very detailed state appellate decisions which have interpreted this factor and have narrowed it down and have fine-tuned what this factor actually means. The statute of course speaks in the disjunctive, so it's not necessary to find all three of them.

The testimony, I think, was very clear that as to Robert Delahunt and Roland Wear, they were eventually killed only after a protracted and horrible struggle had taken place in which two of them were literally fighting for

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004571

44

their lives; a fight which they eventually lost, and it's very clear that each of them maintained consciousness for a considerable period of time. Robert Delahunt, after having his throat slashed. Roland Wear, after actually having been shot, and having a struggle.

It is indisputable that the two of them have to have suffered physical pain, have to have realized, at some point, that the struggle was going to continue until they were dead, and they had to have been literally looking at death in the eye, knowing that that was coming for a considerable period of time.

This is certainly especially cruel, and the Court finds that the evidence establishes, beyond a reasonable doubt, the existence of the aggravating factor set forth in A.R.S. Section 13-703.F.6, that the murders of Robert Delahunt and Roland Wear were committed in an especially cruel manner.

On the other hand, the murder of Leta Kagen -- and this is where any person with any ounce of decency hesitates to use the language that the appellate courts talk about because it sounds like we're adopting some sort of blase attitude toward murder, and we're discussing murder as if this was a good murder or a benign murder or a murder that was not offensive to anyone's sense of human decency, but unfortunately the appellate decisions really force us to

PCR PD Anderson 004572

engage in this type of analysis.

The murder of Leta Kagen was over and done with immediately. She probably literally never knew what was coming, never knew what was happening, probably never even realized that she was awake, and she was dead before she had any recognition of what was going on. It is impossible to say that she suffered under those circumstances, because she simply did not have a clue as to what was going on, and the cases that talk about especially cruel make it clear that that type of murder is not an especially cruel murder, even though may be reprehensible in a lot of ways.

The Court finds that the evidence does not show, beyond a reasonable doubt, that the aggravating factor of 13-703.F.6 applies as to the murder of Leta Kagen because the killing of her was not committed in an especially cruel manner, as defined by the appellate decision. The especially heinous or depraved factor is probably the one that has been subject to the most discussion in recent cases.

Just addressing a couple of those factors, I am not convinced that there was anything gratuitous about the injuries that were inflicted upon any of the three victims. On the contrary, I find that every injury that was inflicted on any one of these three victims was very much goal-oriented.

It had a very specific reason; that was to end

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004573

46

the life of the person who was about to receive the injury, and at least my understanding is that once that that had been accomplished there were no more injuries inflicted upon anyone who was dead, and that, of course, is because they had other things to do, they had to move on and kill the next person.

So, I do not find that there is any evidence that there is any gratuitous violence that was inflicted upon any one of the victims. As far as the crimes being senseless or purposeless, of course in -- in the parlance of any normal person in society killing someone to take a vehicle is senseless and is stupid. But the fact is, these people were killed for a specific purpose. It may be a purpose that no one can understand or agree with, but the fact is, these crimes were committed for a very specific reason and that is to kill people and prevent them from either resisting the taking of their vehicle or reporting it to police or doing anything to prevent the goal or the aim of this criminal endeavor, and I do not find that it was a senseless or purposeless killing in the sense that the cases have discussed that.

As far as the relishing of the murders, there has been no evidence of comments that were made after the murders, songs that were sung, keeping of souvenires, any other behavior that would establish that the defendant did

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004574

47

anything other than just take care of his business, which was to kill three people, and then get in the vehicle, which was the purpose of his business, and go on about his way.

And I do not find that the relishing of the offenses has been shown. The helplessness, I suppose an argument could be made that Leta Kagen was helpless simply because she was shot virtually while she was asleep. I am not inclined to find that, that that exists. I think that it would be anomalous to find the helplessness of Mr. Wear and Mr. Delahunt as aggravating factors in light of the prolonged struggles that they put up.

The Court finds as to 13-703.F.6, that the evidence does not show, beyond a reasonable doubt, that any one of the three murders was especially heinous or depraved. As to A.R.S. Section 13-703.F.7, whether the defendant was in custody at the time; he clearly was not. The evidence does not show the existence of 13-703.F.7.

As to 13-703.F.8, that the defendant has been convicted of one or more other homicides which were committed during commission of the offense, that clearly has been established. I can see absolutely no point in even discussing that any further. That is a factor which applies to every one of the three murders.

So, the Court finds that the evidence has established, beyond a reasonable doubt, the existence of

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004575

48

13-703.F.8, as to all three of the murders.

13-703.F.9, clearly does not apply. Well, maybe not clearly. It may have been close, but I believe that the evidence established that Mr. Delahunt was over fifteen at the time of the offense. None of the victims were over 70.

The evidence does not show, beyond a reasonable doubt, the existence of the aggravating factors set forth in A.R.S. Section 13-703.F.9. F.10 is whether any victim was a peace officer. That is not a factor in this case. The evidence has not shown, beyond a reasonable doubt, the existence of the aggravating factors set forth in A.R.S. Section 13-703.F.10.

Moving to the statutory mitigating factors that are set forth in A.R.S. Section 13-703.G, keeping in mind that the burden is on the defense to prove these mitigating factors, by a preponderance of evidence. A.R.S. Section 13-704.G.1 is whether the defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution.

There has certainly been evidence that the defendant had gone through a turbulent life, perhaps had mental-health issues that would distinguish him from the typical person on the street.

Listening to his description of how these

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004576

murders were committed, based upon a description of somewhat a methodical carrying out of a plan, the Court sees absolutely nothing on the record, in this case, to suggest the applicability of this mitigating circumstance.

The Court finds that the defense failed to prove, by a preponderance of evidence, the existence of the mitigating factors set forth in A.R.S. Section 13-703.G.1.

G.2 is whether the defendant was under unusual and substantial duress. I certainly think of duress as someone pointing a gun at someone or someone threatening a person with bodily harm. If they do not carry out some sort of course of conduct, it seems to me that the only duress that the defendant was under is that he didn't like living where he was living in Golden Valley.

There may be lots of people who don't like where they're living, either in Golden Valley or elsewhere in Mohave County, and I just don't see anything about the defendant's situation to suggest that he was under substantial duress, especially since he'd been there for some time before the commission of these murders.

The Court finds that the defense has failed to establish, by a preponderance of the evidence, the existence of the mitigating factors set forth in A.R.S. Section 13-703.G.2.

G.3 would be that the defendant was legally

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004577

50

accountable as an accomplice but that his participation was relatively minor. The evidence in this case was overwhelming that the defendant is the one who killed the three victims. His guilty verdict in this case was clearly not based upon any sort of technical accomplice-liability theory. He played an active role. He was the leading participant in the murder of these three people.

The Court finds that the defense has failed to establish, by a preponderance of evidence, the existence of the mitigating factors set forth in A.R.S. Section 13-703.G.3.

G.4 is whether the defendant could not reasonably have foreseen that his conduct would cause or create a grave risk of causing death to another person. I think it would be absurd to even argue this under the circumstances. The entire purpose of everything that the defendant engaged in was, in fact, to kill someone, and he did not stop his course of conduct until the killing was over. The defense has failed to establish by a preponderance of evidence that the -- has failed to show by a preponderance of evidence the existence of the mitigating factors set forth in A.R.S. Section 13-703.G.4.

G.5 is a little more problematic, and that is the age of the defendant. The defendant was 19 at the time. I am certain that both sides can cite cases in support of their

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

51

respective positions for people around this same age in which this was found a mitigating factor or people around the same age for which was this was not found a mitigating factor.

I think the one thing that cases make it clear is that age is not just a number that we look at. We don't plug the number into some computer. If it's below a certain amount, it's mitigation; if it's above a certain amount, it's not mitigation.

The issue is not how young or how old a person is but what connection there may be with their age and the behavior that they engaged in. The defendant was relatively young, chronologically speaking.

As far as the criminal justice system goes, he was not so young. He had been part of that system for some period of time. He was no longer living at home. He had effectively been emancipated for a period of time. He was working on at least a sporadic basis, and there are certainly no questions in this case as to what the defendant's age was, but I do not find his age to have been a mitigating circumstance under the circumstances of this case.

The Court specifically finds that the defense has failed to establish, by a preponderance of evidence, the existence of the mitigating circumstances set forth in A.R.S. Section 13-703.G.5.

Addressing the nonstatutory mitigating factors

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004579

52

that have been set forth, what I have attempted to do on these is to sort of engage in a two-part analysis, which may, in fact, be essentially the same thing I've done with the statutory ones, and that is to analyze whether the defense has shown this fact by a preponderance of evidence, and then if they have, to determine whether I would assign that any weight as a mitigating factor, and of course, for any that I -- any that pass both of those two tests, I have to weigh them all along with the other factors in the final determination in this case, and I'll try to go through -- and I wrote down in my notes the same numbering scheme that was used by Mr. Sipe, and I'll try to refer to that just for ease of reference in the record.

The first statutory mitigating factor that was alleged was personality disorders of the defendant. Again, the defendant had some mental health and psychological issues. I think, depending on what you define a mental or a personality disorder to be, the State -- or excuse me -- the defense has established that there were certain men -- personality disorders that the defendant, in fact, may have been suffering from.

The Court, however, does not find that they rise to the level of being a mitigating factor because I am unable to draw any connection whatsoever with such personality disorders and the commission of these offenses.

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

So, the Court finds that the defense has failed to establish, by a preponderance of evidence, that the personality disorders of the defendant were a nonstatutory mitigating factor.

The second nonstatutory mitigating factor alleged is remorse. I am convinced that the defense has established, by a preponderance of evidence, that the defendant was and is, in fact, remorseful about the commission of these offenses.

When I consider the fact that he had time to reflect upon what he was doing, since killing three people did take some period of time, and considering the fact that his remorse could have kicked in at some point and maybe prevented one or two of these murders from taking place -- keeping in mind the fact that even though he may have discussed turning himself in; he, in fact, did not turn himself in -- even though I find that remorse has been established in this case, I find that it is not, in fact, a nonstatutory mitigating factor.

The Court finds that the defense has failed to show, by a preponderance of evidence, that the defendant's remorse is a nonstatutory mitigating factor.

The cooperation with law enforcement. It's clear that once he was apprehended the defendant did cooperate, gave a full confession.

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004581

54

I certainly wondered hypothetically to myself what sort of case the State would have had against this defendant but for his confession. They probably would have been forced to try to make some sort of deal with other co-defendants, which probably would have resulted in inappropriate dispositions of their cases.

I believe that the defendant's cooperation with law enforcement has been shown and is, in fact, a mitigating factor in this case.

The Court finds that the defense has established, by a preponderance of evidence, the existence of the nonstatutory mitigating factor that the defendant cooperated with law enforcement.

Several of these others kind of blend together, and it's sort of hard to discuss them separately.

The number 4 nonstatutory mitigating factor is the dysfunctional family and childhood.

Number 5 is the physical and sexual abuse in the defendant's childhood.

And number 6 is the mental abuse in the childhood of the defendant.

I was certainly struck, at the presentencing hearing, by the fact that Mr. Poyson had a childhood that I certainly would not have wanted to have been part of and would not have wanted my children to be part of or anyone

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004582

55

that I know.

I can think of people that I know who have been abused as children, who have had parents die when they were young, who have been exposed to separation and anxiety that would certainly be comparable to that that was suffered by Mr. Poyson, and I can think of people who have gone through things remarkably similar to Mr. Poyson and have become productive upstanding members of the community, and I am finding that defense has shown that defendant suffered a dysfunctional childhood, that he was subjected to physical and sexual abuse, and that he was subjected to certain levels of mental abuse.

The Court finds absolutely nothing in this case to suggest that his latter conduct was a result of his childhood.

The Court finds that the defense has failed to establish, by a preponderance of evidence, the nonstatutory mitigating factors of his dysfunctional family and child background, the physical and sexual abuse in his childhood or the mental abuse in his childhood.

Number 7 is the character of the defendant, and I guess I'm forced to flip to the paperwork to remind myself what this could possibly be based on. I guess this is based upon certain things that the defendant did as a child, which probably every child has managed to rise to the level of at

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004583

least one of these at some point.

I would concede that the defense has shown that there are certain manifestations that the defendant was a good child.  Enough time passed between that and the commission of these horrible crimes that the Court finds that even though the defendant may have been a good child, that that is not a mitigating factor.  The defense has failed to establish, by a preponderance of evidence, the existence of the nonstatutory mitigating factor that the defendant had a good character as a child.

The defense has also argued, as a nonstatutory mitigating factor, the defendant's diminished mental capacity and his low I.Q., and this -- this may, to some extent, be incorporated within one of the statutory factors, but there is nothing to prevent me from discussing a fine variation of that as a possible nonstatutory mitigating factor.

The Court would concede that there is certain evidence in this case that would support the proposition that the defendant's mental capacity may be diminished, at least compared to the norm in the population, and that his I.Q. may be low, at least compared to the norm in the population.

However, when you weigh that against the defendant's description of the murders, certain prepatory steps that were taken -- admittedly, not overly-sophisticated, but attempts were made to do certain

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004584

things, to disable warning systems to enable these murders to be committed and to get away with the loot that was the purpose of the murders; specifically, the vehicle.

The Court finds that even though there is evidence that the defendant may have a diminished mental capacity and a lower-than-average I.Q., that the defense has failed to establish, by a preponderance of evidence, the nonstatutory mitigating factor of the defendant's diminished capacity and low I.Q.

The defense asserts that potential for rehabilitation of the defendant is a mitigating factor, a nonstatutory mitigating factor. If there is anything that has been presented to even suggest that, I must have missed it. There has been evidence that defendant has been subject to incarceration supervision in the juvenile system, which apparently had very little lasting impact upon him.

I can certainly note, as I will note later, that the defendant has not been any sort of problem, at least as I can tell, during the pendency of this case. That doesn't necessarily equate with rehabilitation.

The Court finds that the defense has failed to establish, by a preponderance of evidence, the nonstatutory mitigating factor that there is potential to rehabilitate the defendant.

The next nonstatutory mitigating factor argued

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004585

58

is the giving of the felony murder instruction in this case. It's clear to me that the evidence overwhelmingly supported the finding of the jury that the defendant, with premeditation, killed the three victims. This would certainly pass the Enmund v Florida test. It would pass the Arizona v Tison test.

The Court is not convinced that the guilty verdict in this case was even slightly based upon or was exclusively based upon a felony murder instruction. It's clear that defendant acted with premeditation. The over -- the evidence of his having done so was overwhelming. I do grant that a felony murder instruction was given in this case.

But the Court finds that the defense has failed to establish, by a preponderance of evidence, that the giving of that instruction would be a nonstatutory mitigating factor.

Next one is that other cases involving multiple homicides have resulted in something less than the death penalty. I am familiar with the cases that have been cited. There very well may be some other cases in which multiple deaths have arisen.

Interestingly, I can think of one other case involving very similar circumstances to this in which multiple deaths were involved and the death penalty was

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004586

59

given, and that was in Frank Anderson's case.  If I'm going to look at other reported case that have nothing to do with this case, I feel that I'm just as justified in looking at what happened to other people involved in this case.

From what little I know about the evidence that was presented to implicate Frank Anderson in this case, I would have to suspect that the evidence establishing Mr. Poyson's culpability was far in excess of that concerning Mr. Anderson, at least as far as the actual physical involvement in the murders in question.

The Court concedes that there are other cases in which multiple homicides have resulted in a life sentence, but the Court finds that the defense has failed to establish, by a preponderance of evidence, the existence of the nonstatutory mitigating factors set forth concerning other cases where death was not imposed.

The next factor would be the defendant's demeanor during the trial.  I will go on record as saying that this defendant has been as well-behaved during these proceedings as any defendant that I have ever had to deal with.  And I don't say that as if that's something to be proud of, but I've certainly dealt with people that have been a problem.

It is certainly refreshing to deal with people who are not problems, who are not being boisterous,

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004587

60

obnoxious, overly-aggressive in court.  Of course, this may very well be a desire to present one's self in the best light to a judge and a jury.

I am convinced that the defendant legitimately is acting in court the way that he ought to act and is not doing so out of some devious or nefarious plan, but the fact is he's simply doing what should be expected from any person and that is to comply with the minimal norms of civilty, and to be in court in a quiet and respectful manner.

The Court finds that the defense has established that defendant's demeanor during the trial was exemplary but that the defense has not established, by a preponderance of evidence, that this, in and of itself, would constitute a nonstatutory mitigating factor.

The next argument is that the defendant lacks a record of serious crime.  Crimes, if we're talking about adult crimes, that is certainly true.  Some of the evidence that is present in the record establishes that some of the defendant's prior misbehavior involves sexual offenses, setting peoples hair on fire, other less-serious crimes.

There is very little to indicate, in the record, that the defendant is some person who had absolutely no record of serious crimes and then suddenly he merged on the scene out of nowhere to commit these murders.  One can almost see this coming when one looks at the progression of criminal

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004588

behavior that the defendant had engaged in.

The Court finds that the defense has not established, by a preponderance of evidence, that defendant lacks a record of serious crimes; and therefore, I don't even have to consider whether it would have been a mitigating factor.

The next one is that the defendant was a follower of the co-defendant Anderson. Again, I can only go on what was presented during the trial. In this case, certainly there is evidence that Kimberly Lane was the first person to mention that Frank Anderson may have started the ball rolling, as far as Mr. Delahunt.

After these people made some somewhat faint initial overtures, Mr. Poyson stepped in, needed no one to tell him what to do, took over and essentially murdered three people, pretty much on his own. And there's no indication that he was forced to do this, that was coerced to do this, was somehow intimidated into doing this by Mr. Anderson.

The Court finds that the defense has failed to establish, by a preponderance of evidence, that the defendant was a follower of Frank Anderson, and this would not be a nonstatutory mitigating factor.

Next one that's argued is the safety of the community. I guess the argument here is that there is no need to protect the community because I have the authority to

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004589

62

lock up the defendant forever and he will never be a danger to the community.

I guess the Tison case is the one that immediately jumps to mind. Someone who was incarcerated, group of people that were incarcerated, got out and killed maybe a dozen people. I don't feel that much of an obligation to protect other people that maybe incarcerated in the Department of Corrections, but there's certainly numerous examples of people who have murdered other people while incarcerated.

I am not convinced that the defense has shown, by a preponderance of evidence, that the safety of the community will be furthered by the decision that I make concerning the sentence to be imposed in this case, and that is not a nonstatutory mitigating factor.

The next argument is that execution of the defendant would have no deterrent value. I am inclined to agree, from everything that I have read, that the execution of this defendant would probably not be likely to deter other persons from committing crimes in the future.

Even though we all operate under the assumption that what we do in the court system has meaning, it's difficult for me to imagine a person, sometime in the future, who is going to begin to commit a murder, is going to think to himself wait a minute, remember what happened to Bobby

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004590

63

Poyson; I don't think I will commit this murder after all. And I would like to think that what we do has that effect. I doubt that it does.

The one that I would note is that the execution of the defendant would certainly deter him from committing any further murders, and I don't say that facetiously because there are people who have been sentenced to prison even for the rest of their lives who have murdered other people.

Court finds that the defense has proven, by a preponderance of evidence, that the execution of the defendant is not likely to deter people other than himself from committing crimes. The Court, however, does not feel that that rises to the level of being a mitigating factor. Defense has not shown, by a preponderance of evidence, that the mitigating circumstances exist that the execution of the defendant would fail to deter people other than himself.

As far as the childhood neglect is concerned, that would be the same as the finding that I made earlier concerning certain levels of his childhood. The defense has shown, by a preponderance of evidence, that the defendant was subjected to neglect in his childhood, but have failed to show, by a preponderance of evidence, that that would be a mitigating factor.

The fact that the defendant confessed, to me, is same thing as his cooperation with the police. It's included

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004591

64

within that.  Because it's been raised twice I will acknowledge that the State -- that the defense has shown, by a preponderance of evidence, that the defendant confessed and that that is a mitigating factor that I am only considering at one time.

The fact that the defendant has expressed a death wish, I'm not really sure what that would be based on, other than perhaps an isolated comment that the defendant may have made in an interview.  It's a temptation to compare the avowell that he has a death wish, on the one hand, to the 35 or 40 mitigating factors that are being offered on his behalf to just not imposing the death penalty.

Although, I don't rule out possibility that someone represented by counsel could want to be subjected to execution and that does not prevent counsel from doing the job that they are ethically required to do.  I simply am not convinced that the defendant has any legitimate desire to be put to death because of the crimes that he has committed.

The Court finds that the defense has failed to show, by a preponderance of evidence, that the defendant has any sort of death wish or that that would be a nonstatutory mitigating factor.

The next issue is the defendant's work history. I am left with the impression, based upon the entire record

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004592

65

in this case, that there has been little to indicate any significant work history on the part of the defendant, nothing to indicate that he went to a job on a regular basis, was involved in any sort of employment situation that was meant to eventually better him, and this is not to denigate menial low-paying jobs, but I believe that the record portrays a person who worked only sporadically, who did not have any sort of work plan that he was engaged in. Even if he did work, there's certainly no indication that that prevented him from committing these crimes.

The Court finds that the defense has failed to establish, by a preponderance of evidence, that there is anything to suggest that the defendant had a good work history. Even if I had found that they had established that, I would not treat that as a nonstatutory mitigating factor.

It's argued that certain school achievements were made by the defendant. This may, to some extent, be inconsistent with some of the other claims; although, I understand that the argument is being made there was a turning point in the defendant's life, and up until that point he was doing well, and it's when these tragedies struck that his life then turned around. And I've gone through numerous certificates of awards, things that have been submitted to me, concerning the defendant's childhood.

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004593

I think I probably already covered this, in a sense. I would be willing to find that the State -- that the defense has established, by a preponderance of evidence, that the defendant achieved certain things while he was in school. These are so far removed from the crimes that were committed as an adult that the Court's not willing to treat them as mitigating factors.

So, the Court finds that the defense has failed to establish, by a preponderance of evidence, the nonstatutory mitigating factor that the defendant had certain achievements in school.

Family tragedy. It is certainly easy, I'm sure for someone who has not had a parent die young, or a substitute parent die young or someone who has not been sexually abused as a child, to make light of this, and I have absolutely no intention of doing that. I have been reading presentence reports for 20 years now and I'm absolutely convinced that people who are sexually abused as children are far more likely to offend as adults.

There may have been minimal testimony that was presented which supported a finding of this, but the Court is convinced that the defense has established, by a preponderance of evidence, that the defendant lost a parent figure and was subjected to sexual abuse at a relatively young age. The Court is not convinced that there is any

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004594

connection between that abuse, that loss, and his subsequent criminal behavior.

So, the Court does find that the defenses established, by a preponderance of evidence, that the defendant was subject to family tragedy and family loss, but they have not established by a preponderance of evidence that that would be a nonstatutory mitigating factor in this case.

And we are getting near the end. The next argument that was made is the defendant's current family support. It's hard for me to say this without seeming mean-hearted or -- or cruel, but I was astonished at some point during this case to find out that the defendant actually had relatives that were living in this immediate area.

The one impression that I had throughout this case, up until we got to the sentencing phase, was that poor Mr. Poyson had been cut loose, was stuck out in Golden Valley, didn't have family anywhere nearby and was completely on his own, and was -- was virtually isolated there with no sort of family contact, and when I found out that he had family that was a half hour away, I was amazed.

I guess I was amazed because I had never heard of it before. Just seemed completely in contradiction to the image that I had of this person who virtually had no family

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004595

68

contact. And that's not to rule out the possibility that there was simply no reason to present it or have me know it before then, but I have the impression that the family support in this case has not been very significant.

It may have been more significant when the issue became whether the defendant was going to be executed or not; and again, I don't mean any disrespect to anyone, but I find that defense has failed to establish, by a preponderance of evidence, even the existence of significant family support of the defendant.

The argument is made that the defendant was subjected to alcohol abuse and drug abuse. Other than very vague allegations that he has used alcohol in the past or has used drugs in the past, other than a fairly vague assertion that he was subject to some sort of effect of drugs and/or alcohol at the time, that these offenses were committed, I really find very little to support the allegation that the defendant has a significant alcohol and/or drug abuse, and again, going back to the methodical steps that were taken to murder three people to get a vehicle to get out of Golden Valley, it's very difficult for me to conclude that the defendant's ability to engage in goal-oriented behavior was, in any way, impaired at the time of the commission of these offenses.

The Court finds that the defense has failed to

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

69

establish, by a preponderance of evidence, the nonstatutory mitigating factors of the defendant's alcohol abuse and/or drug abuse.

I believe the next to the last argument that is made is the disparity between the sentence of this defendant and the co-defendant Lane.  I have the benefit of the doubt of having presided over both of those cases.  The co-defendant Lane, of course, could not have been sentenced to death because of her age; although, I can imagine circumstances in which that, in and of itself, wouldn't be a sufficient explanation for a disparity.

I think the disparity in the sentences is far more based upon her limited, almost nonexistent involvement in the actual murders themselves, and it's her culpability, her liability, as established at her trial I think was almost based exclusively on prepatory comments that she made, perhaps some very limited involvement on the periphery of the Delahunt murder, and I think how the Court analyzed her involvement is certainly reflected in the sentence that she received.  I think she received a total of 32 years in prison, which I'm not suggesting is a minimal or a nominal sentence, but compared to -- compared to what I could have sentenced her to, under the circumstances, I think the sentence imposed clearly reflected my analysis of what penalty ought to be imposed in her case.

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004597

70

The Court finds that the -- that the defense has established, by a preponderance of evidence, that there is a disparity; in other words, a difference in the sentence of the co-defendant Lane and what the defendant could get in this case if he were to receive the death penalty, but Court determines that that is not an unfair disparity, it's a disparity that's completely supported by the facts.

So, the Court finds that the defense has failed to establish, by a preponderance of evidence, the nonstatutory mitigating factor that there was an unfair disparity compared with the sentence of the co-defendant Lane.

Even though it's not, I think, mentioned in the sentencing memorandum, I just do want to acknowledge another factor that was set forth, and I don't think that the defense is abandening this because they have filed a previous pleading listing, as a nonstatutory mitigating factor, the financial impact of the imposition of the death penalty, and to cover all basis, I have certainly considered that.

I would agree wholeheartedly that contrary to what probably every person in the country, that isn't intimately involved in the court system, thinks it's far more expensive to execute people than it is to incarcerate them for the rest of their lives, and that's because the cost of appeals and legal representations are far in excess of the

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004598

cost of simply incarcerating people.

The Court does not feel that that is a factor that should be considered in making decisions. One could argue that people shouldn't be in jail for committing minor offenses because it costs more to put people in jail than to just turn them back on the streets and hope that they don't commit another crime.

Any attempt at law enforcement or any attempt to impose upon a significant portion of the population a necessity to conform their behavior to the dictates of society is always going to involve some sort of expense, and I am not willing to treat what is a very recognizable expense in imposing the death penalty as a nonstatutory mitigating factor.

The Court finds that the defense has failed to establish, by a preponderance of evidence, the nonstatutory mitigating factor involving the imposition of the -- or the cost of the imposition of the death penalty.

That leaves us with the aggravating factors that all three crimes were committed in the expectation of pecuniary gain, that the killings of Delahunt and Wear were committed in an especially cruel manner, and that each offense, each murder was simply one of three murders that were being committed at the time. I am weighing them against the nonstatutory mitigating factors -- factor

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004599

72

that the defendant cooperated with law enforcement and confessed.

Mr. Poyson, you and your attorney will come forward, please.

MR. SIPE:  We prefer to stay at the table, Your Honor.

THE COURT:  That's fine with me.

Court finds that the one mitigating circumstance that I have identified is insufficient to outweigh the overwhelming aggravating factors that have been identified. There is nothing about that one mitigating factor that convinces me that I should do anything other than impose the death penalty in this case.

It's ordered, Mr. Poyson, as to Counts II, III and IV, for the first degree murder of Robert Delahunt, Leta Kagen and Roland Wear, that you are sentenced to be executed. You are sentenced to death.

Recognizing that no case is ever immune from appellate review, I do want to make a record at this time, that it is my intention that if, for some reason, any one of these three sentences would be reversed because of an appellate decision that the death penalty was improperly imposed, it would be my intention to sentence the defendant to natural life on all three of these offenses.

So, if any appellate court makes a decision, in the future, that the imposition of any one of these

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004600

73

death penalties was improper, they need not remand it for sentencing because if I were not imposing the death penalty, I would be imposing a natural life sentence for each one of these three offenses.

That is a sentence which is relatively new, hasn't been interpreted by a lot of court decisions. I will go one step further, say that if any one of these sentences, the death sentences, is reversed on appeal, if my imposition of a natural life sentence should be reversed on appeal, it would be my intention that any of the sentences that were imposed in this case that were going to be treated as life sentences with the defendant being eligible for release only after having served 25 calendar years, would all be served consecutively, or one after the other; although, concurrent with the sentences that were sentenced -- that were imposed for the armed robbery and the conspiracy, with the same credit on the first of the three consecutive sentences that were given for the conspiracy and the robbery.

It's ordered directing the clerk to file a notice of appeal in this matter with the supreme court immediately following the completion of this hearing. The defendant is -- well, Mr. Poyson, I'll need your right thumbprint, at this time, on the sentencing order, and you can just stay there. We'll do it right there.

Record will reflect the defendant has placed

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004601

74

his right thumbprint on the sentencing order in open court.

It's ordered remanding the defendant to the custody of the sheriff to transport him to the Department of Corrections to carry out the sentences just ordered.

Is there anything further at this time, counsel?

MR. SIPE:  No.

THE COURT:  All right.  We'll stand at recess.

(The proceedings recessed at 4:40 p.m.)

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004602

75

Certificate of Reporter

I, Kimberly M. Faehn, Official Reporter in the Superior Court of the State of Arizona, in and for the County of Mohave, do hereby certify that I made a shorthand record of the proceedings had at the foregoing entitled cause at the time and place hereinbefore stated;

That said record is full, true and accurate;

That the same was thereafter transcribed under my direction; and

That the foregoing seventy-four (74) typewritten pages constitute a full, true and accurate transcript of said record, all to the best of my knowledge and ability.

Dated this 27th day of January, 1999.

_____
Kimberly M. Faehn, Official Reporter

SUPERIOR COURT, DIVISION III, KINGMAN, ARIZONA

PCR PD Anderson 004603