Rene L. Valladares
Federal Public Defender
Nevada Bar No. 11479
David Anthony
Assistant Federal Public Defender
Nevada Bar No. 007978
David_Anthony@fd.org
Benjamin A. Gerson
Assistant Federal Public Defender
New York State Bar No. 5505144
Benjamin_Gerson@fd.org
Lisa C. Brunner
Assistant Federal Public Defender
Pennsylvania Bar No. 318543
Lisa_Brunner@fd.org
411 E. Bonneville Ave., Ste. 250
Las Vegas, NV 89101
(702) 388-6577
(702) 388-5819 (fax)

Attorneys for Petitioner

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Winfield Anderson, | Case No. CV-23-08023-PCT-GMS |
| Petitioner, | **Motion for Stay and Abeyance** |
| v. | DEATH PENALTY CASE |
| Ryan Thornell[1], Director, Arizona Department of Corrections, Rehabilitation, & Reentry, *et al.*, | |
| Respondents. | |

---

[1] Ryan Thornell is automatically substituted for David Shinn as the Director of the Arizona Department of Corrections. Fed. R. Civ. P. 25(d).

1

# TABLE OF CONTENTS

I.    Introduction .................................................................................................... 1

II.   Argument ........................................................................................................ 1

    A.    Anderson can demonstrate good cause based on first state postconviction counsel's ineffective assistance and changes in the law. ..................................... 2

        1.    Ineffective assistance of first state postconviction counsel establishes good cause under *Rhines*. ........................................................................................ 3

        2.    *Shinn v. Ramirez*, 596 U.S. 366 (2022), establishes good cause for a stay. ..... 3

    B.    Anderson's constitutional claims have merit. ....................................... 6

        1.    Anderson's claims that he was denied his right to a unanimous verdict and correct instructions regarding parole ineligibility are meritorious (Claims 1(A, C)). ......................................................................................................... 6

        2.    Anderson's claims based on resentencing and postconviction counsel's failures to investigate and present mitigation evidence are meritorious (Claim 2(D)). ......................................................................................................... 8

        3.    Anderson's claims regarding prosecutorial misconduct and ineffective assistance of trial counsel with respect to Detective Cooper are meritorious (Claims 3 & 2(E)). ..................................................................................... 11

            a)    Claim 3: Prosecutorial misconduct ................................................ 11

            b)    Claim 2(E): Ineffective assistance of trial counsel ......................... 14

    C.    Anderson has not engaged in dilatory litigation tactics. ...................... 15

    D.    This Court should authorize federal habeas counsel to seek appointment in the state court exhaustion proceeding. ........................................................ 16

III.  Conclusion.................................................................................................... 16

# Table of Authorities

## Federal Cases

*Andres v. United States*,
   333 U.S. 740 (1948) ................................................................. 7

*Arizona v. Fulminante*,
   499 U.S. 279 (1991) ................................................................. 13

*Banks v. Dretke*,
   540 U.S. 668 (2004) ............................................................. 11, 12

*Blake v. Baker*,
   745 F.3d 977 (9th Cir. 2014) ....................................................... 3

*Bolin v. Baker*,
   994 F.3d 1154 (9th Cir. 2021) ...................................................... 6

*Bracy v. Gramley*,
   520 U.S. 899 (1997) ................................................................. 13

*Brady v. Maryland*,
   373 U.S. 83 (1963) .................................................................. 11

*Cassett v. Stewart*,
   406 F.3d 614 (9th Cir. 2005) ..................................................... 7, 8

*Cropper v. Thornell*,
   Case No. CV-19-05618-PHX-GMS ................................................. 7, 16

*Dickens v. Ryan*,
   740 F.3d 1302 (9th Cir. 2014) (en banc) ........................................ 3, 4

*Dixon v. Baker*,
   847 F.3d 714 (9th Cir. 2017) ................................................ 1, 15, 16

*Giglio v. United States*,
   405 U.S. 150 (1972) ................................................................. 11

*Gonzalez v. Wong*,
   667 F.3d 965 (9th Cir. 2011) ............................................. 11, 14, 15

*Harbison v. Bell*,
   556 U.S. 180 (2009) ................................................................. 16

*Jackson v. Roe,*
    425 F.3d 654 (9th Cir. 2005) ......................................................... 2

*Martinez v. Ryan,*
    566 U.S. 1 (2012) ...................................................................... 3, 8

*Milke v. Ryan,*
    711 F.3d 998 (9th Cir. 2013) ....................................................... 13

*Murtishaw v. Woodford,*
    255 F.3d 926 (9th Cir. 2001) ......................................................... 7

*NLRB v. Zeno Table Co.,*
    610 F.2d 567 (9th Cir. 1978) ......................................................... 2

*Pace v. DiGugilielmo,*
    544 U.S. 408 (2005) ..................................................................... 2

*Pandeli v. Shinn,*
    Case No. 2:17-cv-01657-JJT ...................................................... 2, 3

*Porter v. McCollum,*
    558 U.S. 30 (2009) ....................................................................... 8

*Rhines v. Weber,*
    544 U.S. 269 (2005) .................................................................. 1, 6

*Russell v. Rolfs,*
    893 F.2d 1033 (9th Cir. 1990) ....................................................... 5

*Shinn v. Ramirez,*
    596 U.S. 366 (2022) ........................................................... 2, 3, 4, 5

*Simmons v. South Carolina,*
    512 U.S. 154 (1994) ..................................................................... 8

*Strickler v. Greene,*
    527 U.S. 263 (1999) ................................................................... 12

*United States v. Manske,*
    186 F.3d 770 (7th Cir. 1999) ....................................................... 15

*United States v. Page,*
    808 F.2d 723 (10th Cir. 1987) ..................................................... 15

*United States v. Shaffer*,
    789 F.2d 682 (9th Cir. 1986) ............................................................. 13

*Van Winkle v. Thornell*,
    Case No. 2:18-cv-03290-MTL ............................................................. 7

*Wiggins v. Smith*,
    539 U.S. 510 (2003) ...................................................................... 8

*Williams v. Taylor*,
    592 U.S. 362 (2000) ................................................................ 8, 10

### Federal Statutes

18 U.S.C. §§ 3006A ....................................................................... 16

18 U.S.C. §§ 3599 ........................................................................ 16

28 U.S.C. § 2254 ....................................................................... 4, 5

### State Cases

*State v. Butrick*,
    558 P.2d 908 (Ariz. 1976) ............................................................... 7

*State v. Rosario*,
    987 P.2d 226 (Ariz. Ct. App. 1999) ..................................................... 6

*State v. Saenz*,
    4 P.3d 1030 (Ariz. 2000) .............................................................. 14

*State v. Swoopes*,
    166 P.3d 945 (Ariz. Ct. App. 2007) ..................................................... 7

### State Rules

Ariz. R. Crim. P 6.8 .................................................................... 16

Ariz. R. Crim. P. 32 ..................................................................... 8

Ariz. R. Crim. P. 32.1 ............................................................... 8, 14

Ariz. R. Crim. P. 32.2 ................................................................ 7, 8

Ariz. R. Evid. 608 ..................................................................... 15

v

1    **I.    Introduction**

2        On October 10, 2023, Frank Anderson filed a timely petition for writ of habeas

3    corpus pursuant to this Court's schedule order. ECF No. 21. In the petition, Anderson

4    identifies claims and facts that have not yet been presented to the state courts for review.

5    *Id*. at 13.

6        Anderson now moves this Court for an order staying and holding in abeyance

7    these federal proceedings (including a stay of the briefing schedule) pending the

8    presentation of his new claims and facts to the state courts.

9    **II.    Argument**

10        In *Rhines v. Weber*, 544 U.S. 269 (2005), the Court held a habeas petitioner is

11    entitled to a stay of federal habeas proceedings to return to state court when (1) there is

12    good cause for the failure to present a claim in state court; (2) the claim is potentially

13    meritorious; and (3) there is no evidence of dilatory litigation tactics. *Id*. at 277–78. A

14    stay advances considerations of comity and federalism by giving the state courts the first

15    opportunity to consider a claim. *Id*. at 273–74. This Court has recently granted an

16    unopposed motion for a stay, citing the *Rhines* factors.[2]

17        Anderson is entitled to a stay to present each of the federal constitutional claims

18    that he has identified in his petition as not having been previously presented to the state

19    courts. ECF No. 21 at 13. However, this Court need only find a stay is warranted as to

20    one claim under *Rhines* in order to grant relief. *E.g.*, *Dixon v. Baker*, 847 F.3d 714, 722–

21    23 (9th Cir. 2017). Therefore, Anderson specifically discusses Claims 1(A & C) (jury

22    unanimity and ineffective assistance of counsel); 2(D) (ineffective assistance for failure

23    to investigate and present mitigation evidence); 2(E) (ineffective assistance for failing to

24    litigate against admission of Anderson's confessions); and 3 (prosecutorial misconduct,

25    failure to disclose exculpatory and impeachment evidence), in the present motion.

26    Anderson explains below how he meets each of the *Rhines* factors.

27

28        [2] *E.g.*, *Cropper v. Thornell*, Case No. CV-19-05618-PHX-GMS, Order Granting
Stay (filed May 24, 2023), ECF No. 93.

Finally, Anderson requests that this Court authorize undersigned counsel to seek appointment in the state court exhaustion proceedings.

### A. Anderson can demonstrate good cause based on first state postconviction counsel's ineffective assistance and changes in the law.

Anderson argued in his petition he can overcome any state procedural default to the consideration of his claims based on the ineffective assistance of first state postconviction counsel. ECF No. 21 at 13. This argument applies to each of the claims for which Anderson seeks a stay so it is discussed in this section.[3] Anderson will also discuss the Supreme Court's recent decision in *Shinn v. Ramirez*, 596 U.S. 366 (2022), which establishes good cause by overruling prior Circuit authority regarding the availability of factual development for defaulted ineffective assistance of trial counsel (IATC) claims in federal court. *See Pandeli v. Shinn*, Case No. 2:17-cv-01657-JJT, Order Granting Stay at 6 (filed November 10, 2022), ECF No. 117 at 6. As explained below, these circumstances establish good cause under *Rhines* for a stay.

Before addressing these arguments it is important to note that good cause under *Rhines* is less demanding than the cause standard required to overcome a state procedural default. *Jackson v. Roe*, 425 F.3d 654, 661 (9th Cir. 2005). In *Jackson*, the Ninth Circuit held good cause under *Rhines* does not require a showing of extraordinary circumstances. *Id*. (citing *NLRB v. Zeno Table Co.*, 610 F.2d 567, 569 (9th Cir. 1978)). The Supreme Court similarly observed a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *Pace v. DiGugilielmo*, 544 U.S. 408, 416 (2005). These authorities show a petitioner can demonstrate good cause for failing to exhaust when he has a reasonable excuse for failing to raise a claim in state court.

---

[3] Anderson has included additional arguments of good cause in Section B below as it pertains to specific claims.

2

### 1.  Ineffective assistance of first state postconviction counsel establishes good cause under *Rhines*.

Good cause under *Rhines* exists if first state postconviction counsel was ineffective in failing to raise potentially meritorious IATC claims. *Blake v. Baker*, 745 F.3d 977, 982–84 (9th Cir. 2014). In *Blake*, the Ninth Circuit held good cause exists when the petitioner has "a reasonable excuse, supported by evidence to justify a petitioner's failure to exhaust." *Id*. at 982. The court found good cause in that case based on the petitioner's proffer of mental health evaluations and witness declarations that were attached to the petition. *Id*. at 983. First state postconviction counsel's failure to investigate and present that reasonably available mitigation evidence therefore warranted a stay for the petitioner to exhaust his claims. *Id*. Similarly, Anderson's first state postconviction counsel also failed to raise meritorious and readily available claims.

Anderson specifically discusses first state postconviction counsel's deficient performance in failing to investigate and raise the constitutional claims in this motion below in Section B where he discusses the merits of his claims.

### 2.  *Shinn v. Ramirez*, 596 U.S. 366 (2022), establishes good cause for a stay.

The Supreme Court's recent decision in *Ramirez* establishes good cause for a stay as it upended the reasonable expectations of habeas petitioners and the course of dealing between the parties in the Ninth Circuit. *See Pandeli v. Shinn*, Case No. 2:17-cv-01657-JJT, Order Denying Motion for Reconsideration at 3 (filed January 6, 2023), ECF No. 123, at 3. At the time *Ramirez* was decided Anderson's case was already on appeal before the Arizona Supreme Court, and he was represented by the same postconviction counsel that he argues was ineffective. Therefore, he was not able to make the arguments he makes here.

This Court must allow Anderson an opportunity to present evidence in the state court based on this change in the law. Before *Ramirez*, the Ninth Circuit permitted habeas petitioners to develop the facts of defaulted IATC claims in order to demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012). *See Dickens v. Ryan*, 740 F.3d

3

1302, 1321 (9th Cir. 2014) (en banc). *Ramirez* overruled settled Ninth Circuit authority. The *Ramirez* Court held a habeas petitioner cannot meet the requirements of 28 U.S.C. § 2254(e)(2), when he has not first presented the evidence supporting his defaulted IATC claims to the state courts. To meet that requirement, *Ramirez* referenced a habeas petitioners' ability to seek a stay and abeyance to exhaust IATC claims in state court. *Ramirez*, 596 U.S. at 379. By obtaining a stay, Anderson can meet the requirements of *Ramirez* while also being afforded the benefits of *Martinez*: specifically, he can receive consideration of the claims and evidence proffered in support of his IATC claims by returning to state court while also being able to further develop the facts, if necessary, of his ineffective assistance of first state postconviction counsel arguments in federal court.

The radical change occasioned by *Ramirez* was due in material part to the arguments made by the State of Arizona. Starting in *Dickens*, the State argued habeas petitioners could only avail themselves of the benefits of *Martinez* if they first filed a second state PCR petition and suffered a procedural default as the petitioner did in *Martinez*. *See Dickens v. Ryan*, No. 08-99017, Respondent Appellees' Supplemental Answering Brief at 8-10 (filed May 10, 2012), DktEntry 57 at 12-14. According to the State, "[u]nlike what occurred in *Martinez*, Dickens did not file a second state PCR to assert an IAC claim regarding initial PCR counsel, thereby defaulting on an assertion of IAC-PCR as cause." *Id*. at 9, DktEntry 57 at 13. The State's arguments induced the dissenting judges in *Dickens* to adopt its position. *Dickens*, 740 F.3d at 1326–27 (Callahan, J., dissenting, joined by Kozinski, C.J., and Bybee, J.) (distinguishing *Martinez*, because the petitioner "has not sought to raise his 'new' claim of trial counsel IAC in any second or successive state PCR petition"). According to Judge Callahan, "Because Dickens's claim was not deemed procedurally barred by the Arizona state courts, he does not need, and cannot qualify for, the *Martinez* exception to the general rule that on a habeas petition a federal court will not consider an issue that was not raised in state court." *Id*.

1    After *Dickens*, the State incurred a benefit as it could successfully defeat *Rhines*

2    stay motions by asserting technical exhaustion (by arguing the petition was not "mixed")

3    thereby obtaining finality of federal habeas proceedings sooner, even for defaulted IATC

4    claims. As the State argued in another case, its position offered benefits to a habeas

5    petitioner as he/she can "simply proceed with the habeas litigation and assert cause under

6    *Martinez* rather than return to state court and risk either a procedural bar or a merits

7    adjudication, which would then be entitled to AEDPA deference."[4]

8    Finally, in *Ramirez*, the State induced the Supreme Court to adopt an interpretation

9    of 28 U.S.C. § 2254(e)(2) that upended the settled expectations of the parties as described

10   above. The primary concern of the justices during oral argument was how the State could

11   reconcile the continuing viability of *Martinez* with the rule it sought that any defaulted

12   IATC claim not raised by first state postconviction counsel could still receive factual

13   development in some judicial forum. *See* Ex 42 at 7-29.[5] In response, counsel for the

14   Arizona Attorney General's Office represented that if the petitioner had a "good claim"

15   then he could seek a *Rhines* stay to go back to state court to raise it in a second state PCR

16   petition. *Id*. at 26. The Supreme Court ultimately adopted the State's position, while also

17   acknowledging the availability of *Rhines* stays to reconcile *Martinez* with section

18   2254(e)(2). *Ramirez*, 596 U.S. at 379.

19   In light of the procedural history above, the State must be estopped from arguing

20   technical exhaustion to defeat Anderson's request for a stay. *See, e.g.*, *Russell v. Rolfs*,

21   893 F.2d 1033, 1037–39 (9th Cir. 1990). In *Russell*, the state was estopped from arguing

22   a claim was unexhausted in federal court then later arguing in state court the claim was

23   defaulted as it was raised on direct appeal. *Id*. at 1037. Similarly here, in order to induce

24

25       [4] *See Armstrong v. Ryan*, Case No. 4:15-cv-00358-RM, Response to Petitioner's
     Motion for Stay and Abeyance at 29 n.13 (filed August 26, 2016), ECF No. 32 at 29 n.13.

26       [5] The questions of the justices to the State during oral argument were almost
     exclusively focused on reconciling *Martinez* with section 2254(e)(2). In response to

27   Justice Thomas's questions, counsel for the State represented, "the short answer is
     *Martinez* can be accommodated" with its arguments under section 2254(e)(2). Ex. 42 at

28   6. Anderson has included the transcript of oral argument in *Ramirez* as Exhibit 42 to this
     motion.

the Supreme Court to adopt its position, the State emphasized the availability of *Rhines*

stays to reconcile *Martinez* and to ameliorate the undeniably harsh consequences that

flowed from its position. Having taken this position and obtained a favorable decision

from the Supreme Court the State is estopped under *Russell* from arguing Anderson is

now barred from seeking a stay under *Rhines*.

  *Ramirez* establishes good cause for any failure by Anderson to present his IATC

claims in state court and his petition is mixed for all the reasons that matter under *Rhines*.

Anderson must present the facts supporting his IATC claims in state court to comply with

*Ramirez*, and he can show good cause under *Rhines* to do so due to intervening law and

ineffective assistance of first state postconviction counsel. The State is estopped from

arguing to the contrary due to its prior representations to the Supreme Court, the Ninth

Circuit, and the federal courts in this district.

### B. Anderson's constitutional claims have merit.

  Under *Rhines*, a stay is warranted if the petitioner's claims are not "plainly

meritless." *Rhines*, 544 U.S. at 277. The Ninth Circuit has noted the potential merit

standard is a relatively low bar. *See Bolin v. Baker*, 994 F.3d 1154, 1157 (9th Cir. 2021).

Anderson easily meets this standard as his claims are meritorious.

### 1. Anderson's claims that he was denied his right to a unanimous verdict and correct instructions regarding parole ineligibility are meritorious (Claims 1(A, C)).

  Anderson's claim that his jury was deprived of the ability to render a unanimous

penalty verdict is meritorious. As explained in Claim 1(A, C), Anderson's jury was given

a verdict form at the penalty hearing that did not permit them to unanimously recommend

a sentence of life without parole—the only non-death sentencing option available under

state law. Instead, the verdict form stated "life" meant "life imprisonment with or without

the possibility parole." ROA 327 at 4–6. However, life with parole was not a valid

sentence under state law. *State v. Rosario*, 987 P.2d 226, 231 (Ariz. Ct. App. 1999). The

disjunctive wording of the verdict form meant the jury could not unanimously

recommend a sentence of life without parole. Instead, the jury had to unanimously agree

6

1    Anderson should be sentenced to life with *or* without parole, which is not a unanimous

2    verdict even if every juror agreed to check the life box.

3        When the law requires a unanimous verdict the constitutional jury trial right

4    mandates the jury be unanimous as to all its findings. *Andres v. United States*, 333 U.S.

5    740, 748 (1948). In *Andres*, the defendant's jury was instructed they could qualify a

6    verdict of first-degree murder by unanimously specifying "without capital punishment."

7    *Id*. at 746. The Court found such instructions and verdict forms to violate the jury trial

8    right of the Sixth Amendment which requires unanimous verdicts. *Id*. at 748. According

9    to the Court, "this requirement of unanimity extends to all issues—character or degree of

10   crime, guilt, and punishment—which are left to the jury." *Id*.

11       For the same reason, Anderson's right to a jury trial was violated based on the

12   instructions and verdict forms. The life sentencing option was removed from the jury's

13   consideration when they were instructed they had to unanimously agree to life with or

14   without parole. The fact that one of the two sentences did not exist under state law makes

15   the error even more egregious as it injected extraneous considerations into the

16   proceedings that did not exist, i.e., Anderson's release in the future. *Cf. Murtishaw v.*

17   *Woodford*, 255 F.3d 926, 969–71 (9th Cir. 2001). This error was necessarily prejudicial

18   as to the penalty verdicts.

19       Claim 1(A) would not be precluded if Anderson returned to state court to present it

20   so a stay is appropriate. *Cassett v. Stewart*, 406 F.3d 614, 616, 622–23 (9th Cir. 2005).

21   Under Ariz. R. Crim. P. 32.2(a)(3) & (b), Anderson's claim would not be precluded as

22   the right to a jury trial is a personal right that only he can waive. *Cf. State v. Swoopes*,

23   166 P.3d 945, 954 (Ariz. Ct. App. 2007) (citing *State v. Butrick*, 558 P.2d 908, 911 (Ariz.

24   1976)). Moreover, Anderson could argue his claims are not precluded under Rule 32.1(e)

25   based on a similar rationale as the *Cruz* cases that have received stays from this Court and

26   other federal courts in this judicial district. *Cropper*, Case No. CV-19-05618-PHX-GMS,

27   ECF No. 93; *Van Winkle v. Thornell*, Case No. 2:18-cv-03290-MTL, ECF No. 136 at 6

28

1  (filed May 9, 2023).[6] Respect for principles of comity and federalism militate in favor of

2  giving the state courts the first opportunity to apply Rules 32.2(a)(3) & 32.1 and to

3  consider the merits of Anderson's claim. *Cassett*, 406 F.3d at 622–23 (state not federal

4  courts should apply Ariz. R. Crim. P. 32.2(a)(3) in the first instance).

5        Anderson's related claim of ineffective assistance of trial counsel (Claim 1(C))

6  must also be presented to the state courts for him to receive appropriate consideration

7  under *Martinez v. Ryan*, 566 U.S. 1 (2012). *Martinez* allows Anderson to overcome any

8  procedural default of his claim of ineffective assistance of trial counsel if he can show

9  that first state postconviction counsel were ineffective in failing to raise the issue. Here,

10  postconviction counsel were ineffective because they challenged the invalid jury

11  instructions and verdict forms regarding parole eligibility but did not raise a Sixth

12  Amendment claim against the same verdict forms for failing to require unanimity of the

13  life sentencing verdict. Postconviction counsel's performance was deficient because the

14  jury unanimity issue should have been apparent when counsel challenged the same

15  instructions and verdict forms under *Simmons v. South Carolina*, 512 U.S. 154 (1994).

16  There is a reasonable probability of a more favorable outcome if postconviction counsel

17  had raised this issue. Claim 1(C) therefore has merit and Anderson should be allowed an

18  opportunity to return to state court to raise it.

19        **2.**    **Anderson's claims based on resentencing and postconviction**

20                    **counsel's failures to investigate and present mitigation**
                  **evidence are meritorious (Claim 2(D)).**

21        Neither trial counsel nor first state postconviction counsel investigated and

22  presented evidence of Anderson's life-circumstances and mental health deficits prior to

23  these crimes, even though Anderson was constitutionally entitled to the presentation of

24  all reasonably available mitigation evidence. *Porter v. McCollum*, 558 U.S. 30 (2009);

25  *Wiggins v. Smith*, 539 U.S. 510 (2003); *Williams v. Taylor*, 592 U.S. 362 (2000). The

26  evidence that was presented to the state court in the prior proceedings was incorrect and

27

28        [6] Anderson could also argue the exceptions to preclusion in Ariz. R. Crim. P. 32.1(b) (jurisdiction) and (c) (unlawful sentence) are applicable.

1    misleading in important respects. Anderson is entitled to a stay and return to state court to

2    correct this record.

3         The state court record of Anderson's military service incorrectly depicts Anderson

4    as abandoning his duties, when, in fact, he served our country honorably during the

5    Vietnam War. Resentencing counsel presented inaccurate and incomplete evidence of

6    Anderson's military history to the jury. Their mitigation specialist Holly Wake testified

7    without obtaining and reviewing Anderson's complete military records. 11/25/2002 Tr. at

8    57-58; ECF No. 21 at 77. Despite knowing that they had incomplete information, counsel

9    created a record that incorrectly portrayed Anderson as dishonorably looking for a way

10   out of his military obligations, when in fact, he served our country for several months

11   during a time of constant fighting—right next to the Demilitarized Zone in Vietnam,

12   1968. *See* 11/25/2002 Tr. at 58, ECF No. 21 at 77; *c.f.* ECF No. 21 at 80-81, ECF No. 24-

13   1 at 7-8, 12-14. Anderson returned from Vietnam earlier than others in his unit, but

14   continued his service and ultimately achieved an honorable discharge and earned awards.

15   ECF No. 24-1 at 20.

16        The state postconviction court purported to distinguish Anderson's military

17   service from the habeas petitioner in *Porter,* largely because there was no record of

18   Anderson's actual service: "While Anderson served in the military for a period of time

19   his accomplishments pale in comparison to Porter, who was a legitimate war hero."

20   RA0368 (State Postconviction Opinion September 23, 2020). By failing to compile and

21   present a complete and accurate record of Anderson's military service, resentencing

22   counsel and postconviction counsel gave the jury and postconviction court an inaccurate

23   picture of Anderson's service to our country. A soldier like Anderson who scrambled

24   through a dangerous part of the DMZ to establish communications between the front line

25   and command is a true war hero. As the record created in state court contains glaring

26   omissions and misstatements about Anderson's military service caused by ineffective

27   state counsel, this Court must stay this matter so Anderson can return to the state court to

28   correct the record.

The state court record of Anderson's childhood incorrectly characterizes the family's movements as a vacation, when, in fact, Anderson was a little boy trapped in a car without a home by negligent and abusive parents. The sentencing jury was simply told that Anderson's childhood was "unusual" and that he "moved a lot." 11/25/2002 Tr. at 43-44; ECF No. 21 at 83. The jury was told that this was because Anderson's father "was someone who never wanted to stay in one place." *Id*. This description incorrectly characterized Anderson's family moves almost as a Norman Rockwell painting—a family on an adventure—rather than the dark reality: Anderson's father did not hold stable employment and used the available employment opportunities to sexually abuse his son while his mother did nothing to stop or prevent the abuse. ECF No. 21 at 83-87, 92-95.

Resentencing counsel did not tell the jury the distance that Anderson had actually traveled—traversing the country multiple times before his 18th birthday. In order for the family to cover this much ground, they were on the move near-constantly. This meant that there were little to no other adults that young Anderson could turn to for help. It also meant that young Anderson did not get the chance to participate in school, after-school activities, or have friends, all of which would have been an important part of his childhood development. This constant movement kept Anderson trapped and abused, where he learned submission as a coping mechanism.

The state court record of Anderson's mental state did not include his diagnosis of dependent personality disorder and chronic dissociation, which would have shown Anderson was easily manipulated and overpowered by others, including co-defendant Poyson. Anderson was diagnosed with dependent personality disorder in 1998. 4/29/1998 Tr. at 7; ECF No. 21 at 88. The doctor who diagnosed Anderson noted that Anderson always needed to have someone directing him, one of the hallmarks of the disorder. 4/29/1998 Tr. at 7-11; ECF No. 21 at 88. Although this evidence was presented during Anderson's original judge-based-sentencing in 1998, resentencing counsel failed to present this evidence in the mitigation case for the jury's consideration in 2002. This

1    omission is glaring given resentencing counsel's stated position that their strategy was to

2    duplicate the efforts of prior trial counsel, Ken Everett. 9/17/2019 Tr. at 9-11, 21;

3    RA0058 at 175-76.

4        Similarly, postconviction counsel failed to investigate and present evidence that

5    Anderson spent his childhood in a near-chronic state of dissociation in order to cope with

6    his father's pervasive sexual abuse. *See* ECF 24-2 at 4-6; ECF No. 21 at 92-93.

7    Dissociation became Anderson's primary way of coping with the control others

8    maintained over his life. ECF No. 24-2 at 10; ECF No. 21 at 94. Neither resentencing

9    counsel nor state postconviction counsel investigated or presented evidence that Poyson

10   was among the people who exerted control over Anderson: directing Anderson during the

11   crimes; directing Anderson where to drive and stop after the crimes; directing Anderson

12   to work and turn the money over to him; and only permitting Anderson to make phone

13   calls with permission. ECF No. 24 at 40-64; ECF No. 21 at 92-93.

14       The mitigation record before the jury and postconviction courts contained

15   numerous errors and omissions that must be corrected. Anderson thus requests a stay to

16   present his IATC claims and correct the record in state court.

17           **3.    Anderson's claims regarding prosecutorial misconduct and
             ineffective assistance of trial counsel with respect to**
18           **Detective Cooper are meritorious (Claims 3 & 2(E)).**

19               **a)    Claim 3: Prosecutorial misconduct**

20       In his federal petition Anderson alleges a violation of *Brady v. Maryland*, 373

21   U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) because the State

22   withheld the Kingman Police Department (KPD) report documenting the investigation

23   into the numerous sexual assaults Detective Cooper committed. *See* ECF #21 at 142. The

24   KPD report was discovered by federal habeas counsel's investigation in July 2023. *See*

25   ECF No. 21 Ex. 20. The discovery of the undisclosed *Brady* material constitutes good

26   cause under *Rhines* for a stay. *Cf. Banks v. Dretke*, 540 U.S. 668, 691 (2004). *See, e.g.*,

27   *Gonzalez v. Wong*, 667 F.3d 965, 980 (9th Cir. 2011) (suppression of evidence

28   established good cause for stay and abeyance). In the alternative, postconviction

11

1    counsel's failure to diligently reconstruct the damaged files in their possession and to

2    investigate the undisclosed *Brady* material was ineffective assistance and constitutes

3    good cause. *See* ECF No. 21 at 144 n.31.

4        This claim is meritorious because the evidence the State withheld was favorable

5    impeachment evidence, and the defense's inability to impeach Cooper with it was

6    prejudicial. *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Strickler v. Greene*, 527 U.S. 263,

7    281–282 (1999). As detailed in Anderson's petition, the State repeatedly misled trial

8    counsel and the trial court as to the extent of Cooper's criminal activity, the breadth of

9    the KPD investigation, and the available *Brady* material. The State disclosed only a "4–5

10    page synopsis" of an internal investigation. *Id.* at 143–144. In reality, the KPD

11    investigation was far more expansive than a mere internal investigation. The KPD

12    conducted a full-blown criminal investigation of Cooper which included DNA extraction

13    and testing, polygraph testing, evidence collection, photographs, and witness interviews.

14    *Id.* at 144. The KPD report revealed that Cooper had a long history of sexually assaulting

15    and coercing women he investigated into sex. These illegal tactics often influenced the

16    outcome of Cooper's investigations, for instance, when he offered to "take care of" a

17    suspect's pending investigation in exchange for sex. *Id.* at 107, 144. Cooper's coercive

18    tactics were well documented in the KPD report. Cooper withdrew his firearm from its

19    holster in order to coerce Cathy Griffith into having sex with him and preyed upon

20    multiple women with diminished mental capacity. *Id.* at 146. The State also failed to

21    disclose the non-prosecution benefit Cooper received in order to testify at Anderson's

22    second trial. ECF No. 21 at 150. The KPD referred Cooper's investigation to neighboring

23    Yavapai County. Yavapai County decided not to prosecute because there was supposedly

24    insufficient evidence, despite the wide-ranging KPD investigation. *Id.* at 150.

25        Had trial counsel known of Cooper's illegal and coercive tactics and the non-

26    prosecution benefit he received from Yavapai County, they could have impeached him as

27    to his testimony that Anderson's confessions were made voluntarily. Because Anderson's

28    confessions were central to the State's case, a robust impeachment of Cooper's assertion

that Anderson confessed voluntarily has a reasonable probability of a more favorable outcome. As the Supreme Court has observed, "an involuntary confession may have a more dramatic effect on the course of a trial than do other trial errors." *Arizona v. Fulminante*, 499 U.S. 279, 312 (1991). "If the jury believes that a defendant has admitted the crime, it doubtless will be tempted to rest its decision on that evidence alone, without careful consideration of the other evidence in the case." *Id.* at 313 (Kennedy, J., concurring in the judgment).

In *Milke v. Ryan*, 711 F.3d 998, 1008 (9th Cir. 2013), the Ninth Circuit found that withholding *Brady* material concerning a detective's sexual misconduct and coercive interrogation techniques were sufficient to call the voluntariness of the defendant's *Miranda* waiver into question and grant habeas relief. Anderson can show his claim has merit for the same reason.

This Court cannot conclude in the present procedural posture that Anderson's claim is without merit when he has not yet received formal discovery to support it. *Bracy v. Gramley*, 520 U.S. 899 (1997). As the Court explained in *Bracy*, a petitioner's case for relief may be "quite speculative," *id.* at 906, but he is still entitled to formal discovery to develop the facts. Under this Court's scheduling order, Anderson has not yet been able to seek formal discovery from the Court in support of his claim. ECF No. 14 at 5 (providing any notice requesting evidentiary development filed before the State's answer "will be summarily denied"). Due to the sensitive nature of the information above, Anderson is not able to further support his claim through informal discovery efforts. And it is reasonable to conclude the evidence of non-disclosure above is merely the "tip of the iceberg." *United States v. Shaffer*, 789 F.2d 682, 690–91 (9th Cir. 1986). Therefore, even if Anderson's claim was "speculative" he can still show the claim is meritorious enough for a stay. Consideration of comity and federalism also warrant granting a stay so Anderson can seek evidentiary development for his claim with the state courts in the first instance.

13

1    Finally, the discovery of the KPD report satisfies Ariz. R. Crim. P. 32.1(e) and

2    constitutes a viable claim in state postconviction if Anderson were to return to state court

3    to present it. *State v. Saenz*, 4 P.3d 1030, 1032–1034 (Ariz. 2000) (evidence is newly

4    discovered when it existed before trial, was unknown to the defendant, trial counsel, and

5    the trial court, is material, and probably would have changed the verdict). Considerations

6    of comity and federalism warrant a stay so the state courts can apply Rule 32.1(e) and to

7    consider the merits of Andersons claim.

8    **b)    Claim 2(E): Ineffective assistance of trial counsel**

9    Anderson alleges trial counsel was ineffective for failing to impeach Detective

10   Cooper's testimony that Anderson waived his *Miranda* rights voluntarily. ECF No. 21 at

11   104. Anderson demonstrates good cause for the failure to raise this claim in state court

12   because first state postconviction counsel were ineffective. The same material

13   impeaching Cooper's credibility and demonstrating his use of high pressure, coercive

14   interrogation techniques was available to both trial counsel and postconviction counsel.

15   This included 1) the "synopsis" provided in the State's *Brady* disclosures which

16   recounted how Cooper would approach women while on the job and pressure them for

17   sex, going so far as to sexually assault one woman, Griffith, and that he lied about his

18   behavior; 2) the recordings and transcripts of Anderson's second and third interviews

19   which were devoid of *Miranda* warnings or assurances Anderson understood his rights;

20   3) the same recordings and transcripts in which Anderson was frequently confused and

21   asked to stop multiple times, but Cooper continued; 4) Dr. Thomas Thomas's report

22   explaining that Anderson was particularly vulnerable to coercion; 5) The Arizona Court

23   of Appeals decision reversing and suppressing Lane's statements on very similar facts,

24   including the missing *Miranda* warnings; and 6) the motion and arguments for

25   suppression filed by Ken Everett, first trial counsel. The suppressed KPD report

26   discussed above is also appropriately considered with the totality of the circumstances

27   supporting Anderson's ineffective assistance claim. *Gonzalez*, 667 F.3d at 972 n.2

28   (granting stay based on ineffective assistance claim for failing to investigate and obtain

information suppressed by the state). Postconviction counsel was similarly ineffective for failing to raise this issue during state postconviction proceedings despite the readily available material that bore on the voluntariness of Anderson's confessions.

This claim is meritorious because Cooper's conduct falls within the scope of material which may be used for impeachment under Ariz. R. Evidence 608. Arizona recognizes a broad rule that acts which involve dishonesty can be used to impeach a witnesses' credibility. See generally, 1 Robert P. Mosteller, Ed. et. al., *McCormick On Evid.* § 41 n.7 (8th ed. 2022). Bribery, the illegal use of money to compel action, suppression of evidence, and witness tampering are cognizable grounds for impeachment under Rule 608. *United States v. Page*, 808 F.2d 723, 730 (10th Cir. 1987) (collecting examples of conduct indicative of untruthfulness); *United States v. Manske*, 186 F.3d 770, 776 (7th Cir. 1999) (history of witness intimidation probative of untruthfulness). Similarly, coercion—the use of threats to compel action, in this case sex with a witness or suspect—is a cognizable ground for impeachment under Rule 608. Had trial counsel conducted an investigation and impeached Cooper using readily available material there is a reasonable probability of a more favorable outcome. Anderson can therefore demonstrate that his claim is meritorious and that a stay is warranted.

## C.    Anderson has not engaged in dilatory litigation tactics.

Anderson has not engaged in any dilatory tactics under *Rhines* that would foreclose him from receiving a stay. To the contrary, this federal habeas litigation has been proceeding at an accelerated pace given the short amount of time between the appointment of non-conflicted counsel and the filing of Anderson's petition only six months later. *Cf.* ECF No. 14 at 1 (Court's order acknowledging "time is of the essence" due to delay before appointment of non-conflicted counsel). The instant motion is filed a mere three weeks following the filing of Anderson's petition as permitted by this Court's scheduling order. ECF No. 19 at 2. The procedural history here demonstrates the upmost diligence by Anderson. *Cf. Dixon*, 847 F.3d at 717, 723 (noting state concession

1    regarding absence of dilatoriness when stay motion filed four months after filing of

2    federal petition).

3           **D.    This Court should authorize federal habeas counsel to seek appointment in the state court exhaustion proceeding.**

4           Under 18 U.S.C. §§ 3006A(c) & 3599(e), this Court should authorize federal

5    habeas counsel to seek appointment in state court exhaustion proceedings as they are

6    ancillary to the federal habeas proceeding. In *Harbison v. Bell*, 556 U.S. 180, 190 n.7

7    (2009), the Court, citing section 3599(e), recognized the terms "other appropriate motions

8    and procedures" "hardly suggests a limitation on the scope of [federal habeas counsel's]

9    representation." *Id*. at 188. This Court has accordingly appointed federal habeas counsel

10   to represent a habeas petitioner in state exhaustion proceedings under section 3599(e).

11   *Cropper*, Case No. 2:19-cv-05618-GMS, ECF No. 93 at 2.

12          This Court should appoint Anderson's federal habeas counsel for the same

13   reasons. Undersigned counsel have a relationship with Anderson and are familiar with the

14   claims at issue that will be raised in state court. Undersigned counsel have also been

15   found qualified by the Chief Judge of the Maricopa County Superior Court under Ariz. R.

16   Crim. P 6.8 to accept appointment to represent a capital habeas petitioner in state court

17   exhaustion proceedings.[7] Authorizing undersigned counsel to accept appointment here is

18   the most efficient method of expediting state PCR litigation, particularly given the small

19   size of the Mohave County legal community and the dearth of qualified capital PCR

20   counsel that would be available to accept appointment to the case.

21   **III.    Conclusion**

22          For the foregoing reasons, Anderson requests this Court grant his motion to stay

23   and hold in abeyance this federal habeas proceeding pending exhaustion of state

24   remedies.

25

26

27

28          [7] *See Pandeli v. State*, Case No. 1993-008116, Order [Appointing Nevada Federal Public Defender's Office] as *Pro Hac Vice* counsel (filed April 5, 2023).

1    He further requests this Court authorize undersigned counsel to seek appointment in the

2    state court exhaustion proceeding.

3            DATED this 6th day of November, 2023.

4                                              Respectfully submitted,

5                                              Rene L. Valladares
                                               Federal Public Defender
6

7                                              */s/ David Anthony*
                                               David Anthony
8                                              Assistant Federal Public Defender

9                                              */s/ Benjamin A. Gerson*
                                               Benjamin A. Gerson
10                                             Assistant Federal Public Defender

11                                             */s/ Lisa C. Brunner*
12                                             Lisa C. Brunner
                                               Assistant Federal Public Defender
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            17