# EXHIBIT 42

# EXHIBIT 42

# SUPREME COURT
# OF THE UNITED STATES

---

```
        IN THE SUPREME COURT OF THE UNITED STATES

- - - - - - - - - - - - - - - - - -

DAVID SHINN, DIRECTOR, ARIZONA      )

DEPARTMENT OF CORRECTIONS,          )

REHABILITATION AND REENTRY,         )

          Petitioner,               )

          v.                        ) No. 20-1009

DAVID MARTINEZ RAMIREZ,             )

          Respondent.               )

- - - - - - - - - - - - - - - - - -
```

```
Pages:  1 through 60

Place:  Washington, D.C.

Date:   December 8, 2021
```

---

## HERITAGE REPORTING CORPORATION

*Official Reporters*
1220 L Street, N.W., Suite 206
Washington, D.C.  20005
(202) 628-4888
www.hrccourtreporters.com

1

```
 1      IN THE SUPREME COURT OF THE UNITED STATES

 2   - - - - - - - - - - - - - - - - - -

 3   DAVID SHINN, DIRECTOR, ARIZONA     )

 4   DEPARTMENT OF CORRECTIONS,         )

 5   REHABILITATION AND REENTRY,        )

 6              Petitioner,             )

 7              v.                      )  No. 20-1009

 8   DAVID MARTINEZ RAMIREZ,            )

 9              Respondent.             )

10   - - - - - - - - - - - - - - - - - -

11

12                   Washington, D.C.

13              Wednesday, December 8, 2021

14

15        The above-entitled matter came on for

16   oral argument before the Supreme Court of the

17   United States at 11:59 a.m.

18

19   APPEARANCES:

20   BRUNN W. ROYSDEN, III, Solicitor General,

21        Phoenix, Arizona; on behalf of the Petitioner.

22   ROBERT M. LOEB, ESQUIRE, Washington, D.C.; on behalf

23        of the Respondent.

24

25
```

2

1                    C O N T E N T S

2    ORAL ARGUMENT OF:                        PAGE:

3    BRUNN W. ROYSDEN, III, ESQ.

4        On behalf of the Petitioner          3

5    ORAL ARGUMENT OF:

6    ROBERT M. LOEB, ESQ.

7        On behalf of the Respondent          30

8    REBUTTAL ARGUMENT OF:

9    BRUNN W. ROYSDEN, III, ESQ.

10       On behalf of the Petitioner          58

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                P R O C E E D I N G S
 2                              (11:59 a.m.)
 3          CHIEF JUSTICE ROBERTS:  We'll hear
 4    argument next in Case 20-1009, Shinn versus
 5    Ramirez.
 6          Mr. Roysden.
 7          ORAL ARGUMENT OF BRUNN W. ROYSDEN, III,
 8              ON BEHALF OF THE PETITIONER
 9          MR. ROYSDEN:  Mr. Chief Justice, and
10    may it please the Court:
11          The issue presented in this case is
12    fundamentally a question of statutory
13    interpretation.  When Congress enacted
14    2254(e)(2) as part of AEDPA, it created a high
15    bar for federal evidentiary hearings on habeas
16    claims involving state convictions.
17          It codified the first part of the
18    Keeney test in the opening part of (e)(2) by
19    echoing the words "failure to develop" from
20    Keeney.  And this Court, in Williams and
21    Holland, has already held that attorney
22    negligence counts as failure to develop under
23    (e)(2) based on agency principles.
24          If a failure to develop has occurred,
25    Congress did not merely repeat Keeney and
```

1    Coleman's cause and prejudice test for excusing

2    it but, rather, supplanted it by specifying in

3    subsections (A) and (B) of (e)(2) the cause and

4    prejudice required.

5         Congress thus spoke clearly, and the

6    courts' role is to apply the statutory language.

7    That no fact-finder could have found the

8    prisoner guilty is not enough.  The prisoner

9    must also satisfy (e)(2)(A) by showing either a

10   new rule of constitutional law or that the

11   factual predicate could not have been previously

12   discovered through the exercise of due

13   diligence.

14        This is an intentionally high bar.

15   Respondents rely on Martinez to create an

16   additional exception to (e)(2) beyond (A) and

17   (B).  That proposition fails.  Martinez was

18   addressing cause for the cause and prejudice

19   test for excusing a procedural default.

20   Congress did not codify the procedural default

21   or the excuses for overcoming it in AEDPA.

22        In contrast, Congress did

23   affirmatively codify the circumstances under

24   which cause and prejudice is established to

25   permit an evidentiary hearing following a

5

1    failure to develop under (e)(2).

2           Martinez's judge-made rule cannot

3    rewrite Congress's statutory questions --

4    standard.

5           I invite questions from the Court.

6           JUSTICE THOMAS:  Counsel, the -- it

7    seems rather odd that you would -- we would

8    allow a -- we will excuse a default under

9    Martinez but not allow the prisoner to make his

10   underlying claim or develop his evidence --

11   evidentiary basis for his underlying claim.

12          MR. ROYSDEN:  Well, Your Honor,

13   Martinez did not consider this question.

14   Martinez --

15          JUSTICE THOMAS:  Yeah, I understand

16   that.  But it's not -- it seems pretty worthless

17   to have -- to say, well, you have -- we'll

18   excuse a procedural default.  To what end?

19          MR. ROYSDEN:  In some cases, there may

20   already be evidence in the state court record.

21          JUSTICE THOMAS:  Okay.  Let's take

22   this case.  To what end if you're not allowed to

23   develop the underlying claim?

24          MR. ROYSDEN:  Well, on this case, our

25   position is that there -- the court -- the

1    district court should not have gone into a

2    Martinez hearing in Jones without looking

3    whether there was enough state court -- state

4    record evidence to establish ineffective

5    assistance of trial counsel in the first place.

6    It's a -- it's a fruitless exercise.  But that

7    doesn't mean that Martinez can overcome the

8    statutory language.  The court should simply cut

9    it off at the beginning.  In the Ramirez case,

10   the evidence just wasn't there either way.

11           And so -- so the short answer is

12   Martinez can be accommodated.  The district

13   court just shouldn't go down the path of -- of

14   having a Martinez hearing if there's not going

15   to be state court evidence to establish the

16   ultimate claim.

17           CHIEF JUSTICE ROBERTS:  But it's a

18   basic syllogism.  The idea is, if you do get the

19   right to raise the claim for the first time,

20   because your counsel was incompetent before,

21   surely, you have the right to get the evidence

22   that's necessary to support your claim.  I mean,

23   the whole reason some states say you shouldn't

24   raise your incompetence claim until after the

25   direct proceedings is that it's much more

1    efficient and natural to have an evidentiary

2    hearing at that time, rather when you're halfway

3    up the chain between the trial court and the

4    court of appeals.

5              MR. ROYSDEN:  I -- I think Judge

6    Collins in his dissent pointed out the flaw in

7    that logic, which is there's asymmetric

8    intervention here.  Congress did specify in

9    (e)(2) when you can have a hearing.  So this --

10   the problem is the major premise of that

11   syllogism is faulty.  There's not a --

12             CHIEF JUSTICE ROBERTS:  Well, they

13   specified that before our decision in Martinez,

14   right?

15             MR. ROYSDEN:  Could you -- sorry.

16   Could you --

17             CHIEF JUSTICE ROBERTS:  I'm sorry,

18   they specified that before our decision in

19   Martinez?

20             MR. ROYSDEN:  I -- I'm talking about

21   Judge Collins's dissent from denial en banc in

22   this case.

23             CHIEF JUSTICE ROBERTS:  Yeah.  But I

24   thought the point you were making is that he had

25   an explanation for why the language in (e)(2)

1    trumped the theory that Martinez gave you the

2    hearing and so then implicitly gave you the

3    right to present evidence.

4            MR. ROYSDEN:  I -- I think it's --

5    it's incorrect to say that Martinez implicitly

6    gave you the right to present evidence.  That's

7    just not in Martinez.

8            The -- the Court was presented with a

9    constitutional question, you know, when a state

10   breaks out ineffective assistance --

11           CHIEF JUSTICE ROBERTS:  You're --

12   you're certainly right about that.

13           MR. ROYSDEN:  Right.

14           CHIEF JUSTICE ROBERTS:  It's not in --

15   not in Martinez.  I mean, if it were, we

16   wouldn't be here.  But in what sense -- in other

17   words, if your claim of incompetence has to do

18   with some factual evidence, by saying to the

19   prisoners, look, don't raise it on direct

20   appeal, raise it collaterally, you use -- you

21   lose the ability to press what is your central

22   claim of incompetence.

23           MR. ROYSDEN:  Correct, but I think

24   Congress envisioned that in subsection (i) where

25   Congress expressly said incompetence of

9

1   post-conviction counsel is not a basis for
2   habeas relief.
3           CHIEF JUSTICE ROBERTS:  But when --
4   was that also before Martinez?
5           MR. ROYSDEN:  Yes.  That's in the
6   AEDPA --
7           CHIEF JUSTICE ROBERTS:  Well, then I
8   don't think you can say Congress envisioned the
9   problem.  It only came up when we decided
10  Martinez.
11          MR. ROYSDEN:  Well, but I'm saying,
12  even if Martinez had answered the question
13  presented, which is there a constitutional right
14  to effective post-conviction counsel when that's
15  the first chance to raise ineffectiveness of
16  trial counsel, that would not be a claim that
17  could be brought in federal habeas in district
18  court because Congress has stripped the district
19  courts of jurisdiction, just -- just as district
20  courts don't grant habeas relief on Fourth
21  Amendment grounds.
22          JUSTICE KAVANAUGH:  The --
23          MR. ROYSDEN:  That would be a claim
24  that would --
25          JUSTICE KAVANAUGH:  Keep going.

10

1    Sorry.

2              MR. ROYSDEN:  -- have to be brought in

3    state court because of subsection (i).  That's

4    my point.

5              JUSTICE KAVANAUGH:  I guess picking up

6    on Justice Thomas's and the Chief Justice's

7    question, though, doesn't it really gut Martinez

8    in a huge number of cases and then what --

9    what's the -- what's the point of Martinez?  The

10   Court obviously carefully crafted an opinion to

11   give you the right to raise an ineffective

12   assistance claim, to make sure it's considered

13   at least once, and this would really gut that in

14   a lot of cases.  So I -- I need -- need a good

15   explanation for how to do that or why to do that

16   given what Martinez says.

17             MR. ROYSDEN:  I think, to the extent

18   that Martinez cannot be -- is reconciled with

19   (e)(2), then, at the end of the day, Martinez

20   should be overruled.  I mean, Martinez offered a

21   equitable exception to excusing a procedural

22   default.

23             JUSTICE KAVANAUGH:  Assuming we don't

24   do that, what -- what's your next answer?

25             MR. ROYSDEN:  Then Martinez can be --

1    can be kept to what was expressly a very narrow

2    question, which is when is there cause to excuse

3    a procedural default.

4            JUSTICE KAVANAUGH:  But it was a

5    narrow question on a -- on an important issue.

6    And I don't -- I mean, you have to assume that

7    the Court majority was unaware somehow of how

8    this would play out and -- and was articulating

9    this important right about when you could raise

10   something but didn't realize, oh, actually,

11   you're never really going to be able to pursue

12   it because of this other provision.

13           I mean, that's -- it's hard to

14   envision the Court thinking that that would make

15   any sense.

16           MR. ROYSDEN:  Congress's purpose in

17   AEDPA and in the bar and evidentiary hearings in

18   particular specifically imagined the -- the

19   worst-case scenario, which is a prisoner is

20   actually innocent.  And that's (e)(2)(B).  But

21   that wasn't enough to permit a hearing.

22           It said you still have to meet A.  And

23   A says either it has to be a new rule of

24   constitutional law or that the evidence could

25   not have been developed even with diligence.  So

12

```
 1    I think the -- the fundamental question is, what
 2    was Congress's intent?  And --
 3              JUSTICE KAGAN:  But --
 4              MR. ROYSDEN:  -- here, Congress spoke
 5    clearly, I think, in (e)(2)(B) that innocence
 6    isn't enough here.
 7              JUSTICE KAGAN:  -- why is it -- I -- I
 8    mean, (e)(2) has a fault standard in it.  It
 9    says if the applicant has failed to develop the
10    factual basis of a claim.
11              And I thought, in these various cases,
12    you know, it's the usual rule that the
13    attorney's fault gets attributed to the client,
14    but that's not always the rule.  And what
15    Martinez essentially is saying is it's not the
16    rule when that happens.
17              It's not the rule when the state has
18    directed a person into a post-conviction
19    proceeding that, at that point, we're going to
20    ascribe the -- the failure to the state in the
21    same way that we do when there's a
22    constitutional claim of ineffective assistance.
23    We say it's -- it's not your fault.  We're going
24    to ascribe the error to the state.
25              So why isn't Martinez just essentially
```

13

1    piggybacking on the -- the Coleman rationale

2    that this is not your error, and so (e)(2)

3    doesn't apply?

4         MR. ROYSDEN: So I don't think

5    Martinez can be understood as -- as

6    reinterpreting general agency principles. And

7    in this Court's decision in Davila, which is

8    from 2017, where it said ineffectiveness

9    assistance -- ineffective assistance on direct

10    appeal, you cannot use the Martinez exception.

11         So I don't think you can understand

12    Martinez as a general agency case. Its -- it --

13    it didn't purport to be that. It cannot

14    logically be thought of as that because there's

15    no limiting principle. I don't understand how

16    the Court can say in Davila the -- the -- the

17    post-conviction counsel is your agent for

18    raising an ineffective assistance on direct --

19    of direct appellate counsel but not your agent

20    for raising ineffective assistance of trial

21    counsel. Why -- why are they your agent in one

22    but not the other?

23         That's not what Martinez did.

24    Martinez said we're going to create a narrow

25    equitable exception to the procedural default

```
 1    rule, and when you have a judge-made exception
 2    to a judge-made rule compared to a statute that
 3    has its own exception that is very high, the
 4    statute ultimately has to trump.  And -- and
 5    that's why this is ultimately a case of
 6    statutory interpretation.
 7            JUSTICE SOTOMAYOR:  Counsel, the
 8    problem is that the statute doesn't define what
 9    "at fault" means.  It just says so long as you
10    fail to develop.  So, by definition, what
11    constitutes fault is defined by us, correct?
12            MR. ROYSDEN:  Correct.  And in --
13            JUSTICE SOTOMAYOR:  So stop.  One
14    second, please.  Okay?  So, in Williams, we said
15    the question under AEDPA is whether the
16    respondents were at fault for not developing the
17    facts of their claim.  So that's the AEDPA
18    question, okay?
19            We have said in Maples that, if your
20    attorney abandons you, you are not at fault.
21    And in Martinez, we said, if your attorney errs
22    in exactly the situation here by failing to
23    develop the record on appeal, which was the only
24    opportunity you had to do it, you are not at
25    fault.
```

1          So I don't understand why you argue
2    that the statute, because it doesn't say
3    anything about what "at fault" means, why the
4    statute forces us to conclude that the
5    Respondents are not at fault?
6          MR. ROYSDEN:  Well, because the -- the
7    first part of (e)(2) is -- is echoing Keeney,
8    was there a procedural default in the first
9    place.  Martinez is the second step, is there
10   cause to excuse that.  And then the third step,
11   prejudice.
12          If -- if the correct way to read
13   Martinez was that you're not at fault in the
14   first place, there should not be a prejudice
15   element to excuse the default.  So, obviously,
16   what Martinez is focused on is, is there cause
17   to excuse a default that has occurred?  And
18   Williams and Holland --
19          JUSTICE SOTOMAYOR:  But how is that --
20          MR. ROYSDEN:  -- both said that
21   attorney error is imputed.
22          JUSTICE SOTOMAYOR:  -- how -- how
23   different is that from abandonment?
24          MR. ROYSDEN:  It -- it's different
25   because general -- Maples was talking about

1    general agency principles.  It said, under

2    general first principles of agency law, if your

3    agent abandons you by taking a job where they

4    are a law clerk or they work for an

5    international tribunal that they cannot even

6    represent you, then they have abandoned you

7    under general agency principles.

8              That's not what's happened here.  The

9    trial counsel may have been incompetent and

10    ineffective, but he did not abandon and she did

11    not abandon her client under agency principles.

12    And that's the distinction.  That's the

13    fundamental distinction.

14              I think what's important to remember

15    --

16              JUSTICE SOTOMAYOR:  Thank you,

17    counsel.

18              MR. ROYSDEN:  -- is even in Coleman

19    the attorney, I think he filed his notice of

20    appeal of the post-conviction, like, 33 days

21    late.  So, I mean, how could the prisoner, if

22    you just think of it from a -- how is he at

23    fault for that?  Or in, you know, Keeney, the --

24    the post-conviction counsel failed to bring in

25    evidence that the interpreter, you know, didn't

1    properly interpret what nolo contendere meant.

2              In all those cases, it's hard to think

3    of the -- the prisoner as being at fault in the

4    sense that we say what he did was wrong.

5              But the point is, under agency

6    principles, the counsel is the agent and,

7    therefore, the negligence of the agent is

8    imputed to the prisoner.  And that's what this

9    Court --

10             JUSTICE KAGAN:  Well, except that I

11   think that Martinez pretty explicitly rejected

12   that.  And I'm just going to quote from a bunch

13   of different places.

14             MR. ROYSDEN:  Okay.

15             JUSTICE KAGAN:  But the Court says it

16   was the state's deliberate choice to move trial

17   ineffectiveness claims outside the direct appeal

18   process, and it was that choice that

19   significantly diminished the prisoner's ability

20   to assert trial ineffectiveness claims.

21             And so too the Court says it was the

22   state's procedural framework that made

23   ineffectiveness qualify as cause for a

24   procedural default.  I mean, that -- all that

25   language is clearly sort of saying that the

1    blame here for post-conviction ineffectiveness

2    is ascribed to the state.

3         Now, you know, I mean, this is an

4    ascription and we can argue whether it really is

5    the state's fault or, you know, we can argue in

6    all these contexts about, like, really?

7         But -- but -- but -- but, essentially,

8    this is the theory of Martinez, that the state

9    has set up a system in which it's proper to

10   ascribe the fault to the state, not to the

11   defendant.

12        MR. ROYSDEN:  I think Martinez is not

13   the last word.  In Davila, we're dealing with --

14   imagine that the state -- Arizona said you raise

15   ineffectiveness of trial counsel on direct

16   appeal, and your direct appeal attorney was

17   negligent, they didn't do a good job.

18        You go then to state post-conviction,

19   and that post-conviction attorney doesn't even

20   bother to raise that.  You're now procedurally

21   defaulted.  And there -- and under Davila, I

22   don't think you can go to federal habeas.

23        So I don't think the Martinez

24   discussion about whether the state chose to put

25   it in post-conviction versus direct appeal

19

1    answers the question of, you know, in federal

2    habeas, can you have an evidentiary hearing

3    under (e)(2).  I think that's question is a

4    question Congress answered by using the first

5    part of the Keeney test, and in Holland and

6    Williams, this Court has already said attorney

7    error is attributable to -- to the prisoner.

8         So whether the -- the -- you have to

9    raise ineffective assistance of trial counsel on

10   direct appeal or on post-conviction, if the

11   post-conviction attorney is negligent, that's

12   going to be attributed to the prisoner for

13   purposes of federal habeas.

14        JUSTICE ALITO:  If the court in

15   Martinez had accepted the prisoner's argument

16   that there is a constitutional right, a Sixth

17   Amendment right to the effective assistance of

18   counsel in the first post-conviction proceeding

19   when the state says you can't raise ineffective

20   assistance of counsel until the first

21   post-conviction proceeding, then it would

22   follow, would it not, that the -- the fault of

23   the ineffective attorney would not be attributed

24   to the prisoner?

25        MR. ROYSDEN:  I -- I -- I think what

1    would follow is that you would have a claim,

2    potentially a claim for ineffective assistance

3    of post-conviction counsel.  I think it would be

4    a different question.  But then I think (i)

5    would prevent you from raising that in federal

6    habeas.  You would probably have to raise that

7    through direct appeal of the state

8    post-conviction to this Court or through a

9    subsequent --

10              JUSTICE ALITO:  But the court did not

11    accept that constitutional argument made by the

12    Petitioner --

13              MR. ROYSDEN:  Correct, Your Honor.

14              JUSTICE ALITO:  -- which would

15    potentially have changed the meaning of fault

16    that was adopted by the Court in Williams, where

17    it said that the -- that the -- the fault --

18    that -- that the failure to -- to raise language

19    in 2254(e)(2) imposes a negligence standard.

20    But it -- the Court didn't do that.

21              MR. ROYSDEN:  Correct, Your Honor.

22              JUSTICE ALITO:  And so what do you

23    deduce from that?

24              MR. ROYSDEN:  I think what I deduce is

25    that Martinez was addressing a very narrow

21

1     question, which is after there has been a

2     procedural default, can the ineffectiveness of

3     post-conviction counsel set -- provide cause.

4     In this one narrow circumstance, the answer is

5     yes, and then you have to move on to the second

6     step, which is prejudice.

7          But it's a very -- it's a three-step,

8     you know, is there a procedural default?  Yes.

9     Okay.  Do we have cause and prejudice to excuse

10    it?  Martinez expressly said we are very

11    narrowly saying as an equitable matter the

12    ineffectiveness of post-conviction counsel can

13    provide cause to excuse an existing procedural

14    default.

15         JUSTICE KAGAN:  But -- but just to go

16    back to where the Chief Justice started, over

17    and over in Martinez, when the Court is saying

18    why this is important, the Court talks about the

19    role of the attorney in developing evidence, I

20    mean, you know, three, four, five times.

21    Martinez was not under any, you know,

22    misperception that this was not an evidentiary

23    question essentially.

24         And, you know, as -- as the Chief

25    Justice said, this is why states do it this way,

1    put it here, because everybody knows that in the

2    vast majority of cases it's an evidentiary

3    question, and Martinez talked about it in

4    exactly those terms.  This is what the counsel

5    is supposed to be doing, is to develop evidence.

6         MR. ROYSDEN:  That's correct, Your

7    Honor.  I mean, these are important questions,

8    and they're often going to require the

9    development of evidence.  But -- but Congress

10   has answered the question in (e)(2).  And from

11   Congress's point of view, even innocence is not

12   enough because that only satisfies (B).  You

13   still have to meet (A).

14        This is -- this is a situation unlike,

15   for example, the one-year statute of limitations

16   for a claim of actual innocence, where this

17   Court, I think in McQuiggin, said that's gets

18   around it.  This is not a question that was not

19   on Congress's mind.  I mean, Congress was --

20        JUSTICE KAGAN:  But -- but --

21        MR. ROYSDEN:  -- very specific.

22        JUSTICE KAGAN:  -- Congress has only

23   answered the question if we decide that the

24   fault standard is met, and that's the entire

25   question here, is -- is the fault standard met?

1        It wouldn't be met if this were a
2   constitutional ineffectiveness claim, as Justice
3   Alito pointed out.  So -- so is it met here?
4   And as I said, I -- I do think that Martinez,
5   although it didn't say that there was a
6   constitutional right, that the whole theory of
7   Martinez is about, you know what, this is --
8   this is the state's responsibility to take
9   ownership of this and to make sure it doesn't go
10  south.
11        MR. ROYSDEN:  I think to say the fault
12  standard would be met if this were itself a
13  constitutional claim is not -- is not
14  necessarily correct because that's for the
15  claim.  The Martinez question is kind of a
16  predicate question.  Can you -- can you have an
17  evidentiary hearing on the claim in the first
18  place?
19        So, if it was made a constitutional
20  right, then maybe it would support a claim,
21  except for the fact that subsection (i) says you
22  can't do it.
23        But put aside (i), it might be a
24  claim.  That doesn't mean it's not a procedural
25  default.  And I don't think this Court in

1    Martinez was purporting to set forth general

2    agency principles because, if that were true, in

3    Davila, the -- there's no way to distinguish

4    that position from Davila, where you said, well,

5    the post-conviction counsel was negligent in

6    raising ineffectiveness of direct appeal

7    counsel.

8              How could the post-conviction counsel

9    be an agent for one specific purpose -- or not a

10   -- I should say not an agent for one specific

11   purpose, which is to factually develop and raise

12   the issue of ineffectiveness of trial counsel,

13   but an agent for every other claim that could be

14   raised on habeas?

15             JUSTICE KAVANAUGH:  But you have --

16   you have a forceful argument on the statutory

17   language, and I think this case is close for

18   that reason.  But going back to Martinez -- you

19   went to Davila -- but Martinez did contemplate,

20   it seems, that ineffective assistance of trial

21   counsel, that claim and that claim alone, I

22   think, could be raised in federal habeas, even

23   if otherwise defaulted, because it wouldn't be

24   attributed to the client.

25             And then the question becomes, well,

1    did they really contemplate that it could be

2    raised but not actually pursued, which seems

3    like a very odd way to attribute what the Court

4    -- you know, what the Court did in Martinez.

5             That's what I'm trying to figure out.

6    There's obvious tension here, and that's what

7    I'm trying to figure out.

8             MR. ROYSDEN:  Right.  And, again, our

9    position is, to the extent that one has to give,

10   Martinez should give because it's judge-made.

11   But I think that the fundamental purpose of --

12            JUSTICE KAVANAUGH:  What's wrong --

13            MR. ROYSDEN:  -- AEDPA --

14            JUSTICE KAVANAUGH:  Sorry to

15   interrupt, but what's wrong -- I think this is

16   really the heart of it for me -- is what's wrong

17   with saying that Martinez said that you're not

18   at fault in this one specific area?  In other

19   words, the fault's not going to be attributed to

20   the client in this one very particular specific

21   area, and then that applies to the "fail to

22   develop" language here.

23            MR. ROYSDEN:  Well, this is certainly

24   not my position, but if that's what Martinez

25   meant, then I don't understand why you have to

1    show prejudice because, if there was no default

2    in the first place, then there's no reason to

3    get to cause and prejudice.  You would just move

4    right on to the ineffective assistance of trial

5    claim.

6              But I think Pinholster, to me, is

7    really a case that's critical to understanding

8    this, and in Pinholster, this Court spoke about

9    Williams, and it basically said Congress has set

10   up two independent bars to really restrict

11   habeas.  I think the Court said this was a

12   watershed change in habeas.

13             And it said you have (d)(1), which, if

14   the -- if it reached the merits, the court has

15   to defer to the state court, and if (e)(2), a

16   really high bar to evidentiary hearings.

17   Congress was very clear.  I mean, I think the --

18   the answer consistent with AEDPA is, if somebody

19   has a -- a good claim, then they need to go to

20   state court and file a second or successive

21   habeas petition.

22             Most states -- or, pardon,

23   post-conviction petition.  Most states allow

24   actual innocence as a ground.  In Arizona, we

25   allow that.  So you could go to court, you could

27

1    develop, you know, your record in state court.

2    And I think that's the answer given the

3    statutory requirements of AEDPA, which are very

4    strict in this context.

5              CHIEF JUSTICE ROBERTS:  Thank you,

6    counsel.

7              Justice Thomas?

8              Justice Breyer, anything further?

9              Justice Alito?

10             JUSTICE SOTOMAYOR:  I have one

11    question, counsel.

12             You devote just one paragraph to

13    Ramirez's waiver claim.  You admit that you did

14    not raise this -- this statutory argument that

15    you're making today until your petition for

16    rehearing.  Normally, that's waiver.

17             I don't know how you can claim that

18    you didn't know that this was at issue when

19    Mr. Ramirez, in his appellate brief -- I'm

20    quoting pages 48 -- 46 to 48 -- he specifically

21    says the equitable remedy developed in Martinez

22    would be pointless without an opportunity for

23    federal fact development.

24             Federal court is Ramirez's opportunity

25    to present the evidence that should have been

1    presented years ago but was not due to prior

2    counsel's failure.  That's a direct request to

3    say I was entitled to my hearing.  And yet you

4    don't raise this argument.

5              MR. ROYSDEN:  Well --

6              JUSTICE SOTOMAYOR:  Why shouldn't we

7    DIG?

8              MR. ROYSDEN:  -- you should not DIG

9    because, in Ramirez, it was even more egregious,

10   because even taking all the evidence from the

11   Martinez proffer, the court -- the Ninth Circuit

12   said yet -- we're going to have yet another

13   hearing on the merits, on the claim.  So

14   Martinez -- or, pardon me, Ramirez is directly

15   contrary to the language of (e)(2).  And that's

16   the issue that we raised.

17             JUSTICE SOTOMAYOR:  I -- I'm sorry,

18   counsel, that -- that just gets to the point.

19   You didn't raise this argument until your

20   petition for rehearing.

21             MR. ROYSDEN:  Our -- our position up

22   to that point was, even if you look at his

23   evidence, it's not enough to establish --

24             JUSTICE SOTOMAYOR:  That was your --

25             MR. ROYSDEN:  -- ineffectiveness.

29

1          JUSTICE SOTOMAYOR:  -- that was your

2    entire argument.  It wasn't that he wasn't

3    entitled to rely on that evidence.

4          MR. ROYSDEN:  I wouldn't say it was

5    our entire argument, but that was our position.

6    When the Ninth Circuit said you've met Martinez

7    and now we're going to have a no -- a new

8    hearing on the claim, go back and do that, and

9    we said no, that violates (e)(2).  That's what

10   we preserved.  This was an alternative basis for

11   affirmance.  I don't think we had to raise it

12   pre-petition for rehearing to preserve it.

13         JUSTICE SOTOMAYOR:  Thank you,

14   counsel.

15         MR. ROYSDEN:  Thank you.

16         CHIEF JUSTICE ROBERTS:  Justice Kagan,

17   anything further?

18         Justice Gorsuch?

19         JUSTICE KAVANAUGH:  Just one question.

20   I'm just going to ask a question that

21   Respondent's brief asked and have you answer it

22   before -- before they stand up.

23         They say on page 2, if you're not at

24   fault for failing to raise a claim, how can you

25   be at fault for failing to develop that claim?

1          So just give you a chance to answer

2     their question before they stand up.

3          MR. ROYSDEN:  My answer is you are at

4     fault.  Martinez said you have cause to excuse

5     it.  And you do -- you have to map that onto

6     (e)(2).  You've now satisfied the first part of

7     (e)(2), so now you have to satisfy (A) and (B).

8     Unfortunately for them, they cannot satisfy (A)

9     and (B).  They need to go to state court.

10          CHIEF JUSTICE ROBERTS:  Justice

11     Barrett?

12          Thank you, counsel.

13          MR. ROYSDEN:  Thank you, Your Honor.

14          CHIEF JUSTICE ROBERTS:  Mr. Loeb.

15           ORAL ARGUMENT OF ROBERT M. LOEB

16            ON BEHALF OF THE RESPONDENT

17          MR. LOEB:  Mr. Chief Justice, and may

18     it please the Court:

19          The limits imposed by section

20     2254(e)(2) only apply where, in the words of the

21     statute, "the applicant failed to develop the

22     factual basis of a claim."  And the statute

23     doesn't define "applicant failed to develop,"

24     but, in Michael Williams, this Court held that

25     the phrase requires a finding of fault.  So, in

31

1    arguing that Mr. Jones and Mr. Ramirez should be

2    held at fault here, the state relies on Michael

3    Williams' recitation of just the general rule

4    that an attorney's acts are generally to be

5    attributable to a client.

6         But this Court has long recognized

7    that attribution rule is not categorical in

8    nature.  Indeed, the state agrees that the

9    failures of counsel are not to be attributed to

10   the applicant when the attorney's

11   ineffectiveness is at the Strickland level and

12   when it occurs either at a criminal trial or on

13   the direct criminal appeal.

14        This Court in Coleman left open the

15   question of the fault -- the attribution where

16   here -- like here, the state labels the first

17   review, instead of an appeal, instead calls it

18   post-conviction review.

19        This Court nine years ago squarely

20   addressed that open question, and this Court

21   examined the very same Arizona system at issue

22   here, where the only review of -- provided for

23   ineffective counsel claims is on post-conviction

24   review.  And where that post-conviction review

25   was not collateral or civil but is, under

32

1    Arizona rule, part of the original criminal

2    action, in that specific context, this Court

3    held that the labels used by the state do not

4    matter and that the fault attribution is not to

5    the claimant for the counsel's failures, just

6    like in a direct appeal situation.

7            This Court held that the Arizona

8    post-conviction review in -- for such

9    ineffective trial counsel claims is in many ways

10   the equivalent of a direct appeal and that in

11   both contexts, the failures of counsel when it

12   meets the Strickland levels are not to be

13   attributed to the claimant.  That same fault

14   calculus applies under (e)(2) and fully supports

15   holding that (e)(2)'s restrictions do not apply

16   to Mr. Jones or Mr. Ramirez.

17           I welcome your questions.

18           JUSTICE THOMAS:  Counsel, if we --

19   well, first of all, I thought, in Martinez, we

20   said that that was strictly procedural default?

21           MR. LOEB:  It was addressing the --

22   the situation of procedural default and cause

23   and prejudice, correct, Your Honor.

24           JUSTICE THOMAS:  Yes.  And it

25   emphasized that it was a -- in effect, a first

33

 1    appeal?

 2              MR. LOEB:  Correct.  It was saying

 3    that it is the first opportunity of review, just

 4    like the situation of an appeal.

 5              JUSTICE THOMAS:  So I thought that it

 6    sort of -- the suggestion was it was sui

 7    generis, but I -- I'll let that go.

 8              If we -- if -- if -- if it's going to

 9    be the practice to use Martinez to eventually

10    require a full evidentiary hearing, why don't we

11    just apply AEDPA, 2254(e)(2) up front to the

12    Martinez hearing?

13              MR. LOEB:  Your Honor, the first

14    question under (e)(2) is whether you're at

15    fault.  And so the question is are you going to

16    be at fault under Martinez, the first stage is

17    for cause and prejudice, you defaulted your

18    claim, you didn't raise it in state court, you

19    need an inquiry as to whether you're to be held

20    at fault for failing to raise that claim.

21              So counsel here suggests that there's

22    some -- some separation between -- that because

23    cause was found, that there was no fault.  But,

24    here, there was the raised -- the claim wasn't

25    raised, and under Martinez --

34

1          JUSTICE THOMAS:  Do you -- don't you
2     think it's a bit odd, though, that you can use
3     that to basically eviscerate the restrictions of
4     AEDPA?
5          MR. LOEB:  It doesn't eviscerate the
6     restrictions of AEDPA.  What it's doing is
7     recognizing that where you're -- you're not at
8     fault for not raising a claim, you're not going
9     to be held ordinarily, just as a matter of logic
10    and precedent, aren't going to be held at fault
11    for failing to develop that same claim.
12          Indeed, Congress recognized that.
13    This Court has long recognized it.  In Keeney,
14    this Court said that those two inquiries of
15    whether you're at fault for not raising it and
16    not developing it, that there's little to be
17    said for applying different standards.
18          And in Michael Williams, at page 444,
19    this Court said a ruling on one will be
20    sufficient for the other.  And when Congress
21    adopted the Keeney standard, it understood that
22    under Keeney, there was no delta, as a matter of
23    logic and force, between those two inquiries of
24    whether you're at fault for failing to raise the
25    claim and failing to develop the claim.

1            And that's why, in Martinez and

2    Trevino, this Court clearly anticipated that

3    those -- these important substantial ineffective

4    trial counsel claims would be developed once

5    cause was -- was found and that a person was

6    found not to be at fault for failing to raise

7    it.

8            And the rationale that this Court

9    applied in Martinez for why you weren't at fault

10   for not bringing the claim in the first instance

11   applies squarely to (e)(2) as well.

12           So Martinez says the post-conviction

13   review, it provided, it said, in many ways, the

14   equivalent of a prisoner's direct appeal.  And

15   all agree that if these errors occurred in a

16   state where you could raise post -- you could

17   raise ineffectiveness of trial counsel on

18   appeal, everyone agree you would not be

19   attributing fault here to Mr. Jones and Mr.

20   Ramirez.

21           So the fact that these are -- that in

22   -- in Arizona, the way they've structured their

23   system, the fact that the post-conviction review

24   is meaningfully -- in every meaningful way

25   serving the exact same role as the appeal and

36

1    functionally the same, can't be overlooked.

2           So, in both instances, in a direct

3    appeal and here, in Arizona, the way they've

4    constructed post-conviction review, this is your

5    first and only right of review of an ineffective

6    trial counsel claim.

7           JUSTICE ALITO:  Well, this is a --

8    this is really a tough case.  You have a strong

9    argument that accepting the state's

10   interpretation of 2254(e) and Martinez would --

11   of 2254(e) would drastically reduce what a lot

12   of the lower courts have thought Martinez means.

13          And I certainly understand why the

14   courts of appeals have interpreted Martinez the

15   way they did.  But the fact remains that we have

16   to follow the federal habeas statute.  We have

17   to follow AEDPA, unless it's unconstitutional.

18          And 2254(e) was interpreted in Michael

19   Williams, the Court interpreted what it means to

20   failure -- for there to be a failure to develop

21   the facts of a claim, and it said that that

22   occurs when there is lack of diligence or some

23   greater fault attributable to the prisoner or to

24   the prisoner's counsel.  That's where things

25   stood at the time when we decided Martinez.

1          Now, you know, it's nice to attribute

2    omniscience to the Court.  The fact of the

3    matter is that this whole 2254(e) issue was not

4    briefed by anybody in Martinez, and the Court

5    didn't address it.

6          So I think what you have to explain is

7    how Martinez, which didn't purport to interpret

8    2254(e) and certainly didn't purport to overrule

9    Michael Williams, which is the case you have to

10   rely on to -- in -- in support of your

11   interpretation of failure to read -- to -- to --

12   failure to raise, how Martinez could be

13   interpreted now to have changed what that

14   statutory phrase means?

15         MR. LOEB:  Yeah, we're not arguing

16   that Martinez changed the statutory phrase, and

17   we're not arguing that Michael Williams needs to

18   be overruled.  And we're not disagreeing with

19   the general rule that ordinary counsel's

20   failures will be attributed to the client.

21         But it's always been understood and

22   there's no disagreement that in some instances,

23   in limited instances, that attorney's failures

24   are not attributed to the client.  Everyone

25   agrees that if they're -- these same errors had

38

1    occurred in a state on a direct appeal

2    situation, that they would not be -- the same

3    failures at a Strickland level would not be

4    attributed to the client.  And so Martinez --

5              JUSTICE ALITO:  That's true, but that

6    -- that's because there would be a Sixth

7    Amendment violation there.

8              MR. LOEB:  And Martinez --

9              JUSTICE ALITO:  And that's exactly

10   what the Court did not adopt in Michael

11   Williams.

12             MR. LOEB:  Didn't address.  Didn't

13   address.  It didn't -- it didn't reject it.  It

14   just said we don't need to get there.

15             JUSTICE ALITO:  Well, it didn't adopt

16   it.  So is that what you want us to do?  You

17   want us to say extend the application of the

18   Sixth Amendment?

19             MR. LOEB:  No, Your Honor.  Just like

20   Martinez, you don't need to reach the issue.

21   You just need to look at that all the attributes

22   for fault that animate for not attributing fault

23   in the situation in Coleman and for a direct

24   appeal situation equally apply here.

25             So Martinez, there's two major --

1    major elements you need to recognize.  One is

2    the equivalency, that it's just like a direct

3    appeal in this circumstance because you have a

4    sort of first right of appeal.  It's a part of

5    the criminal action.  It's not a separate civil

6    action.  It's not a collateral attack.

7              This is just like an appeal.  It walks

8    like a duck, quacks like a duck.  It's not

9    discretionary.  It is a mandatory review just

10   like an appeal.

11             That just -- because the fact that

12   Arizona has slapped a different label on it is

13   not a reason to have a different fault

14   attribution to the client from a different -- if

15   this had arose in a different state, where these

16   very same errors occurred on a direct appeal.

17             And this Court's cases involving

18   post-conviction review and habeas review saying

19   they're materially different from appeal, they

20   have no application here.

21             Look at Pennsylvania versus Finley.

22   They say, well, you don't -- post-conviction

23   review is different because it's civil, it's

24   discretionary, but, under the Arizona system, it

25   is by rule, look at Rule 32.3 of the Arizona

40

 1    Criminal Rules, it says it's part of the
 2    criminal action.  It is not a separate action.
 3    And it is not discretionary.  It's mandatory.
 4              This Court in Douglas versus
 5    California and Coleman said you should treat
 6    post-conviction review differently because
 7    you've already had your one bite at the apple.
 8    This is an additional review, layer of review.
 9    You've already had your appeal with
10    constitutionally effective counsel.
11              That's not true here.  Arizona has
12    shunted this into post-conviction review,
13    circumventing the right to appeal.
14              JUSTICE BARRETT:  So --
15              MR. LOEB:  So just like in Martinez,
16    you don't need to reach the constitutional
17    issue, but you can see, because it's the
18    substantial equivalent, you should be treating
19    them the same, and Congress would have expected
20    that.
21              And the second major element of
22    Martinez is one that Justice Kagan mentioned, is
23    one that under ordinary understanding at the
24    time of Michael Williams and at the time of
25    (e)(2), is that when there's an external force

1    that impairs or obstructs the ability of the

2    applicant to assert and to vindicate a

3    constitutional right, you don't treat that as

4    being attributed to the applicant.

5              And it's very important that Martinez

6    addressed that very same subject in this very

7    context and said that the applicant of this

8    situation is to be deemed obstructed and impeded

9    by the acts of the state.

10              And the Court -- Court explained why

11    at page 13 of the decision.  It said:  By

12    deliberately choosing to move the trial

13    ineffective counsel claims outside the direct

14    appeal process, where counsel is

15    constitutionally guaranteed, the state has

16    significantly diminished the prisoner's ability

17    to -- to file and to, of course, vindicate such

18    ineffective trial counsel claims.

19              So just nine years ago, a 7-2 majority

20    here said what the state has done in

21    constructing this system as it has impedes, in

22    the words of the Court, and obstructs the

23    vindication of these bedrock right to effective

24    trial counsel.

25              CHIEF JUSTICE ROBERTS:  Mr. Loeb, what

42

1    is -- do you have any general authority for what

2    you do when you have a situation like this,

3    where the plain language of the statute seems to

4    require one result, the result your friend

5    argues for, and the plainly logical meaning of a

6    subsequent precedent would seem to require the

7    result that you argue for?  Like, what -- do you

8    have a case that says how we're supposed to

9    reconcile those two things?

10        MR. LOEB:  Well, Your Honor, there --

11   there isn't a conflict between the text.  The --

12   the language "failed to develop" was taken from

13   Keeney and that --

14        CHIEF JUSTICE ROBERTS:  Well, I -- I

15   meant -- I'm once again asking you if you have a

16   case that talks about my hypothetical, which

17   suggests that there is a conflict between the

18   statute and be -- and between the logical

19   reading of -- of the -- of the precedent.

20        MR. LOEB:  I think you have -- I don't

21   have a case that's going to -- going to satisfy

22   you on that, Your Honor, but you have to look at

23   the statute in light of what Congress understood

24   when they enacted it, and, certainly, at the

25   time they enacted it, they understood every time

43

1    a court had found cause, there was always

2    development of the facts.

3          So Congress would have understood that

4    whatever "failed to develop" meant and how it

5    was applied, that if you were going to find

6    cause that you weren't at fault for failing to

7    raise the claim, you -- logically and as a

8    matter of logic and -- and -- and under Keeney

9    case law, which Congress was aware of, you

10    likewise would not be considered at fault for

11    failing to develop the very same claim.

12          So Martinez, in finding that there was

13    cause here and the person was at fault, Congress

14    would have anticipated that if you weren't going

15    to be held at fault for failing to bring the

16    claim, you weren't going to be held at fault for

17    failing to develop the claim.  So there really

18    isn't --

19          CHIEF JUSTICE ROBERTS:  That -- that's

20    a lot of prescience to ascribe to Congress.

21          MR. LOEB:  Well -- well --

22          CHIEF JUSTICE ROBERTS:  Instead of you

23    should -- they would have anticipated the fact

24    pattern that developed in Martinez, and that's

25    how you should therefore read the statute that

44

1     they drafted however many years before that.

2               MR. LOEB:  No, Your Honor.  I mean,

3     Coleman preceded (e)(2)'s enactment in AEDPA.

4     And at that time, Coleman left open the question

5     of this particular context, of where, instead of

6     calling it an appeal, you call it a

7     post-conviction review, and that's your first

8     opportunity to raise the constitutional claim.

9     Coleman said we don't need to address that here.

10    In Coleman, it's not the facts of this case.

11              And then this Court then squarely

12    dealt with that open issue in Martinez and held

13    you're not to be held at fault, and it's -- it's

14    going to be treated just like where the

15    attorney's ineffectiveness in raising the

16    ineffective trial counsel claim occurred on a

17    direct appeal.  So Congress --

18              JUSTICE ALITO:  Well, what did -- what

19    did Cole --

20              MR. LOEB:  -- would have been aware --

21              JUSTICE ALITO:  -- what --

22              MR. LOEB:  -- this was an open issue

23    and would have expected the courts to address

24    that open issue applying the general principles

25    of the time, and one of those principles are, if

1    there's an external force that obstructs or

2    impedes you, you're not going to -- you're not

3    going to be attributing fault to the -- to the

4    claimant.

5          And, here, we have this Court

6    expressly finding that the way Arizona set up

7    its system -- it's allowed set it up however it

8    wants, but the way it does significantly

9    diminishes the ability to vindicate this

10    important constitutional right.

11          JUSTICE ALITO:  But what does -- what

12    issue specifically do you think the Court left

13    open in Coleman?  Was it the question whether

14    the Sixth Amendment would apply in the first

15    post-conviction proceeding, or was it the

16    question whether there could be a

17    non-constitutional basis for finding that the

18    fault of the attorney is not attributable to the

19    client?

20          MR. LOEB:  It -- it's more the former,

21    Your Honor, but it's in the context of cause and

22    prejudice as to whether you're going to

23    attribute fault to the applicant in that

24    particular context for failing to raise the

25    claim.  They left that open, and it was squarely

46

1    then addressed by this Court in Martinez.

2              And the rationale -- you know, we're

3    not saying that Martinez controls the statute,

4    but the rationale behind Martinez applies with

5    full force here and in saying that fail to

6    develop likewise shouldn't be --

7              JUSTICE KAVANAUGH:  To pick up --

8              MR. LOEB:  -- attributing fault to --

9              JUSTICE KAVANAUGH:  -- to pick up on

10   the Chief Justice's question and Justice

11   Alito's, though, I think the other side says,

12   well, the way you can square Martinez with the

13   statute is to just read Martinez to do what it

14   did and only what it did, and subsequent cases

15   like Davila -- Davila support that, they say.

16   And you can then hold the statute to say what it

17   means.  It means what -- what it says in the

18   ordinary meaning, failure to develop, and you

19   can -- Martinez still stands for what it stands

20   for, without getting into the logical

21   implications of Martinez.

22              I think that's a characterization of

23   the other side, and we have to -- we can't

24   ignore the statute.  So what's your best

25   response to that?

1           MR. LOEB:  I mean, our best response

2     is we're not ignoring the statute.  We agree

3     that you need to construe the statute here and

4     that "fail to develop" here needs to be read in

5     the particular context, a context that this

6     Court said is substantially equivalent to a

7     direct appeal where you would not be attributing

8     fault.  It's a situation where this Court says

9     that because of the acts and the way that

10    Arizona's constructed its system, it's

11    significantly diminishing the ability to

12    vindicate that right.

13           You're not going to attribute the

14    fault to the applicant for failing to raise the

15    claim.  And then, as a matter of logic and

16    precedent, you would apply that very same

17    rationale at the (e)(2) in deciding whether you

18    were to be held at fault for failing to develop

19    that claim that your counsel did not raise.

20           So we're not asking to avoid the

21    statute or to -- or to -- for equitable

22    exception to the statute.  It has to be read in

23    light of this particular context.  And we're

24    fortunate enough that this Court, applying like

25    principles, has already looked at this very

1    context in Arizona and said, look, it's really

2    just like a direct appeal.  There's no reason

3    for treating fault differently in this situation

4    than it is at direct appeal, and it's looked at

5    the situation and said the way Arizona's

6    constructed its system, it's -- there's an

7    external force here that obstructs and impedes

8    the -- the vindication of this right, that

9    significantly diminishes the ability of the --

10    of the applicant, and we're not going to treat

11    him as at fault.

12           So if you -- all that rationale is

13    correct as to why they shouldn't be held at

14    fault for failing to bring the claim, and we're

15    just -- our argument is, yes, and for the very

16    same reasons, you're not at fault for failing to

17    develop it.

18           And you don't get to the other aspects

19    of -- of -- of (e)(2) because there's that

20    threshold standard, did you fail to develop it,

21    which Michael Williams says requires a finding

22    of fault.

23           JUSTICE KAVANAUGH:  What about, to

24    pick up on Justice Thomas's question, that this

25    would inevitably lead to extensive delays and

1     AEDPA was enacted to try to eliminate some of

2     those delays in some of the litigation,

3     particularly capital litigation?  You want to

4     respond to that?

5             MR. LOEB:  No, it doesn't add any

6     additional delays.  I mean, again, if these very

7     same attorney errors had happened on a direct

8     appeal, we -- and there was no additional state

9     forum to hear the ineffective trial counsel

10    claims, you would be in federal court just like

11    we are.

12            We're not asking for anything beyond

13    what is -- would be applied in the ordinary

14    context, where these very same kind of errors

15    happen on a direct appeal.  So we're not adding

16    to anything.  We're just trying to get the same

17    equivalence of what would happen in a state

18    where you can raise these things on a direct

19    appeal.

20            And, indeed -- and to avoid the

21    fortuity that -- that you -- you -- you can --

22    that would exist under the Arizona argument

23    here, that, well, if this arose in a state where

24    you can raise it on appeal, then you get to

25    proceed in federal court, but if it arose in

1    Arizona, where they've labeled the exact same

2    thing but have just labeled it post-conviction

3    review, now you don't have a forum that'll ever

4    meaningfully hear your ineffective trial counsel

5    claims?

6         There's no reason to ascribe that

7    intent to Congress here.  The language does not

8    -- does not abide by that extreme reading, that

9    just because of how the state here has labeled

10   that first right of review, as post-conviction

11   review as opposed to labeling it appeal, that --

12   that substantial claims regarding ineffective

13   trial counsel, one of the most meaningful

14   rights, a bedrock right this Court said to

15   having a fair justice system, will never be

16   heard because these claims, like you -- as -- as

17   you said in Martinez and said in Trevino,

18   inherently require factual development.

19        There's a second material misreading

20   of -- the state has of -- of (e)(2), is that

21   they're saying that the -- it bars all

22   consideration of evidence beyond the state court

23   record.  However, it only bars consideration of

24   -- of -- it bars having an evidentiary hearing

25   on the claim.

1           So, when you have evidence that's

2    already been accepted by a federal court on the

3    pause -- cause and prejudice stage, that is not

4    covered by the plain language of (e)(2).   That

5    is not an evidentiary hearing.   The claim just

6    is considering evidence that you already have in

7    your hand.

8           And Arizona's contrary argument would

9    mean that a federal court has in its hands

10   strong evidence, like you have for Mr. Jones

11   here that he did not commit the murder that he

12   was charged with.   And -- and the federal court

13   has it in its hands, and -- and the district

14   court here ordered his release, given the

15   strength of that evidence, or his retrial.   And

16   Arizona's argument is that -- that a federal

17   court should just turn a blind eye to that

18   evidence.

19          A construction of the statute that

20   would require that, as the amicus brief from the

21   former DOJ and bipartisan prosecutors says, that

22   would really taint the federal judicial system.

23   For the federal courts to have this evidence

24   that he didn't commit the crime in its hand and

25   to do nothing is really going to make them

1    complicit in a -- in a -- in a improper

2    effecting of the death penalty here.

3              JUSTICE SOTOMAYOR:  Counsel --

4              JUSTICE KAVANAUGH:  One of -- one of

5    their response --

6              JUSTICE SOTOMAYOR:  Oh, sorry.

7              JUSTICE KAVANAUGH:  Go ahead.

8              JUSTICE SOTOMAYOR:  Counsel, I guess,

9    given the predictions of the dissent in

10    Martinez, I was surprised that one of the

11    statistics I read is that there's only two cases

12    a year that present a Martinez hearing, where a

13    has court found that a prisoner's eligible for a

14    Martinez hearing.

15              MR. LOEB:  I -- I -- I think the --

16    the amicus briefs went through, like, all the

17    times Martinez has been -- has been raised in --

18    in the primary states where it's at issue, and

19    it's found in the nine years, there were

20    several -- I think two to three dozen cases over

21    nine years.  I don't think it was two or three.

22    I think one or two cases that ultimately have

23    been people vindicated and got release orders,

24    et cetera.

25              But the number of hearings we're

53

1     talking about over a nine-year period over

2     several states is -- the fact it's several dozen

3     of them just is not a substantial burden.  But,

4     of course, this is a statutory construction

5     question and not a question of -- of -- of -- of

6     whether it's an over -- you know, overly

7     burdening the courts.  But there -- this Court

8     in Martinez adopted a very narrow rule to a very

9     narrow context --

10          JUSTICE SOTOMAYOR:  Okay, counsel.

11          MR. LOEB:  -- anticipating it wouldn't

12    be a significant burden.

13          JUSTICE SOTOMAYOR:  The -- the -- you

14    have no reason to think amici was right that

15    this happens rarely?

16          MR. LOEB:  Correct, Your Honor.

17          JUSTICE SOTOMAYOR:  Okay.

18          MR. LOEB:  And -- and the record has

19    borne -- borne that out.  What this Court

20    particularly in Martinez says this would not be

21    a significant burden, but it would be an

22    important, necessary way to vindicate one of the

23    most important rights in the Constitution, and

24    that's been borne out over the last nine years.

25          JUSTICE SOTOMAYOR:  That's because

54

1    this is a completely unusual situation, as you

2    pointed out.

3            MR. LOEB:  We're talking about --

4            JUSTICE SOTOMAYOR:  No court would

5    have reviewed this evidence to see if someone

6    was guilty as charged, correct?

7            MR. LOEB:  There'd be no court which

8    could meaningfully review the ineffective trial

9    counsel claim here.

10            JUSTICE SOTOMAYOR:  That would be --

11    that was the Martinez's point, correct?

12            MR. LOEB:  And the -- and the kind of

13    evidence that was adduced from Mr. Jones showing

14    that the murder charges against him were

15    baseless, and the kind of evidence adduced as to

16    Mr. Ramirez showing that there is substantial

17    mitigation evidence that he should not be given

18    the death penalty, would have never seen the

19    light of day but for the appointment of

20    competent counsel, who then were given a chance

21    to develop the record and to present that

22    evidence to federal court.

23            JUSTICE KAVANAUGH:  One of the things

24    that your friend on the other side says in

25    response to what you just said, and I have no

1    idea whether this is sufficient, but I just want

2    you to respond to it, is they say Arizona has a

3    forum for raising actual innocence claims.

4            Can you respond to their raising of

5    that point?

6            MR. LOEB:  To say that you have a -- a

7    forum for hearing and -- and -- and one where no

8    one's ever succeeded in to raise an actual

9    innocence claim is not giving you a forum to

10   vindicate the most -- one of the most vital

11   rights, the right to effective trial counsel.

12           You know, whether you're innocent or

13   guilty, you have a right to a fair hearing.  You

14   have a right to an effective trial counsel.  And

15   that -- you have a right to have that

16   vindicated.

17           So it's -- it's like them saying, if

18   -- if you're coaching a basketball game and your

19   -- one team gets five players and one team gets

20   one player and we're going to play the game,

21   but, at the end of the game, we're going to give

22   you a shot from half court and that's going to

23   make the game fair, that does not make the game

24   fair, Your Honor.

25           There is a right to have trial counsel

1    here, and there was never a fair trial for Mr.

2    Ramirez or for Mr. Jones.  Right?  And -- and

3    the fact that they give a -- a -- a Hail Mary

4    opportunity for relief at the end of the day or

5    can give a pardon to Mr. Jones, that -- that

6    does not mean that the right to effective trial

7    counsel is being vindicated here.

8              And as Justice Sotomayor pointed out,

9    as a -- a third argument, which pertains only to

10   Mr. Ramirez, which there was no real meaningful

11   response here, because Mr. Ramirez in the appeal

12   before the panel in the Ninth Circuit clearly

13   was relying on materials beyond that which was

14   presented to the state court.

15             And that was not rejected by the state

16   before the panel.  It was not objected to.  They

17   didn't say, well, (e)(2) bars consideration of

18   that evidence.  They told the panel to consider

19   that evidence.

20             And the panel then went on to render a

21   decision based on the arguments that they made

22   without even them raising (e)(2).  And, of

23   course, then they have the -- I think, the

24   audacity in their cert position, it's like to

25   say, well, (e)(2) is not even mentioned in the

1    Ninth Circuit decision.  Well, it's not

2    mentioned because they didn't raise it.

3              So there -- it's completely sandbagged

4    the Ninth Circuit panel here by only raising

5    this in the en banc petition and then their cert

6    petition and blaming the panel for never

7    reaching the issue that they didn't raise.  They

8    made a decision not to raise (e)(2) before the

9    panel.  That's a waiver.  It was not fair to the

10    panel.  It's certainly not fair to Mr. Ramirez.

11    He would have responded to the (e)(2) argument

12    if it was raised before the panel.

13              So, for -- for Mr. Ramirez, you should

14    affirm on the additional basis that the claims

15    against him were waived.

16              CHIEF JUSTICE ROBERTS:  Justice

17    Thomas?

18              JUSTICE THOMAS:  No questions, Chief.

19              CHIEF JUSTICE ROBERTS:  Justice

20    Breyer?

21              Justice Kavanaugh?

22              Thank you, counsel.

23              Rebuttal, Mr. Roysden.

24

25

58

1          REBUTTAL ARGUMENT OF BRUNN W. ROYSDEN, III,

2                ON BEHALF OF THE PETITIONER

3          MR. ROYSDEN:  Thank you, Your Honor.

4   If I can make three brief points.

5              First, as to the question of is there

6   a case that deals with this paradox of a judge

7   -- implications of a judge-made versus statute,

8   the dissent at the Ninth Circuit, page 373 of

9   the Joint Appendix, cited Ross v. Blake.

10             Congress sets the rules and courts

11   have a role in creating exceptions only if

12   Congress wants them to, and I think that's the

13   fundamental question, here, Congress through A

14   and B by setting such a high bar for having an

15   evidentiary hearing, even actual in a sense is

16   not enough.  As made clear, it does not want the

17   Court to create additional exceptions.

18             And the building block is Williams.

19   As -- as to the agency principles, Williams

20   clearly holds at Headnote 6 that attributable to

21   the prisoner or the prisoner's counsel.  So I

22   think the -- the answer is already been decided.

23             The second point, I think there's a

24   faulty assumption that Martinez somehow

25   guarantees the right to have the claim heard in

1    federal habeas in district court.  That's wrong.

2         Even in a state where ineffective

3    assistance of trial counsel is brought in direct

4    appeal, if there's one level of post-conviction

5    review and that post-conviction review counsel

6    does not pursue those claims, then, as a matter

7    of independent and adequate state law, the

8    federal court can't hear it.

9         So I don't think Martinez was doing

10   anything more than what it purported to do,

11   which was to narrowly create an equitable basis

12   for cause following a procedural default.

13        As to the waiver on Ramirez, just to

14   be clear, the state's position up to the panel

15   hearing was, even if you look at that evidence,

16   it's not going to establish ineffective

17   assistance of trial counsel.  This is the

18   classic death penalty claim that I needed more

19   mitigation than what I got.  That's the

20   run-of-the-mill case.

21        The state won at the district court on

22   it.  It didn't present it as an alternative

23   basis for affirmance.  But, once the Ninth

24   Circuit said, no, we're going to have yet

25   another hearing on the claim, the state timely

60

1    objected through a petition for rehearing and

2    rehearing en banc.

3             With that, I respectfully ask that the

4    Court reverse both judgments of the Ninth

5    Circuit.  Thank you.

6             CHIEF JUSTICE ROBERTS:  Thank you,

7    counsel, counsel.  The case is submitted.

8             (Whereupon, at 12:53 p.m., the case

9    was submitted.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**1**

**11:59** [2] 1:17 3:2
**12:53** [1] 60:8
**13** [1] 41:11

**2**

**2** [1] 29:23
**20-1009** [1] 3:4
**2017** [1] 13:8
**2021** [1] 1:13
**2254(e** [5] 36:10,11,18 37:3,
8
**2254(e)(2** [4] 3:14 20:19
30:20 33:11

**3**

**3** [1] 2:4
**30** [1] 2:7
**32.3** [1] 39:25
**33** [1] 16:20
**373** [1] 58:8

**4**

**444** [1] 34:18
**46** [1] 27:20
**48** [2] 27:20,20

**5**

**58** [1] 2:10

**6**

**6** [1] 58:20

**7**

**7-2** [1] 41:19

**8**

**8** [1] 1:13

**A**

**a.m** [2] 1:17 3:2
**abandon** [2] 16:10,11
**abandoned** [1] 16:6
**abandonment** [1] 15:23
**abandons** [2] 14:20 16:5
**abide** [1] 50:8
**ability** [7] 8:21 17:19 41:1,
16 45:9 47:11 48:9
**able** [1] 11:11
**above-entitled** [1] 1:15
**accept** [1] 20:11
**accepted** [2] 19:15 51:2
**accepting** [1] 36:9
**accommodated** [1] 6:12
**action** [5] 32:2 39:5,6 40:2,
2
**acts** [3] 31:4 41:9 47:9
**actual** [5] 22:16 26:24 55:3,
8 58:15
**actually** [4] 11:10,20 25:2
**add** [1] 49:5
**adding** [1] 49:15
**additional** [6] 4:16 40:8 49:
6,8 57:14 58:17
**address** [3] 37:5 38:12,13
44:9,23

**addressed** [3] 31:20 41:6
46:1
**addressing** [3] 4:18 20:25
32:21
**adduced** [2] 54:13,15
**adequate** [1] 59:7
**admit** [1] 27:13
**adopt** [2] 38:10,15
**adopted** [2] 20:16 34:21
53:8
**AEDPA** [15] 3:14 4:21 9:6
11:7 14:15,17 25:13 26:
18 27:3 33:11 34:4,6 36:
17 44:3 49:1
**affirm** [1] 57:14
**affirmance** [2] 29:11 59:23
**affirmatively** [1] 4:23
**agency** [10] 3:23 13:6,12
16:1,2,7,11 17:5 24:2 58:
19
**agent** [9] 13:17,19,21 16:3
17:6,7 24:9,10,13
**ago** [2] 28:1 31:19 41:19
**agree** [3] 35:15,18 47:2
**agrees** [2] 31:8 37:25
**ahead** [1] 52:7
**ALITO** [13] 19:14 20:10,14,
22 23:3 27:9 36:7 38:5,9,
15 44:18,21 45:11
**Alito's** [1] 46:11
**allow** [4] 5:8,9 26:23,25
**allowed** [2] 5:22 45:7
**alone** [1] 24:21
**already** [9] 3:21 5:20 19:6
40:7,9 47:25 51:2,6 58:22
**alternative** [2] 29:10 59:22
**although** [1] 23:5
**Amendment** [5] 9:21 19:
17 38:7,18 45:14
**amici** [1] 53:14
**amicus** [2] 51:20 52:16
**animate** [1] 38:22
**another** [4] 28:12 59:25
**answer** [6] 6:11 10:24 21:4
26:18 27:2 29:21 30:1,3
58:22
**answered** [4] 9:12 19:4 22:
10,23
**answers** [1] 19:1
**anticipated** [3] 35:2 43:14,
23
**anticipating** [1] 53:11
**anybody** [1] 37:4
**appeal** [44] 8:20 13:10 14:
23 16:20 17:17 18:16,16,
25 19:10 20:7 24:6 31:13,
17 32:6,10 33:1,4 35:14,18,
25 36:3 38:1,24 39:3,4,7,
10,16,19 40:9,13 41:14 44:
6,17 47:7 48:2,4 49:8,15,
19,24 50:11 56:11 59:4
**appeals** [2] 34:6 36:14
**APPEARANCES** [1] 1:19
**appellate** [2] 13:19 27:19

**Appendix** [1] 58:9
**apple** [1] 40:7
**applicant** [10] 12:9 30:21,
23 31:10 41:2,4,7 45:23
47:14 48:10
**application** [2] 38:17 39:
20
**applied** [3] 35:9 43:5 49:13
**applies** [4] 25:21 32:14 35:
11 46:4
**apply** [8] 4:6 13:3 30:20 32:
15 33:11 38:24 45:14 47:
16
**applying** [3] 34:17 44:24
47:24
**appointment** [1] 54:19
**area** [2] 25:18,21
**aren't** [1] 34:10
**argue** [4] 15:1 18:4,5 42:7
**argues** [1] 42:5
**arguing** [3] 31:1 37:15,17
**argument** [23] 1:16 2:2,5,8
3:4,7 19:15 20:11 24:16
27:14 28:4,19 29:2,5 30:
15 36:9 48:15 49:22 51:8,
16 56:9 57:11 58:1
**arguments** [1] 56:21
**ARIZONA** [18] 1:3,21 18:
14 26:24 31:21 32:1,7 35:
22 36:3 39:12,24,25 40:11
45:6 48:1 49:22 50:1 55:2
**Arizona's** [4] 47:10 48:5
51:8,16
**arose** [3] 39:15 49:23,25
**around** [1] 22:18
**articulating** [1] 11:8
**ascribe** [5] 12:20,24 18:10
43:20 50:6
**ascribed** [1] 18:2
**ascription** [1] 18:4
**aside** [1] 23:23
**aspects** [1] 48:18
**assert** [2] 17:20 41:2
**assistance** [6] 6:5 8:10
10:12 12:22 13:9,9,18,20
19:9,17,20 20:2 24:20 26:
4 59:3,17
**assume** [1] 11:6
**Assuming** [1] 10:23
**assumption** [1] 58:24
**asymmetric** [1] 7:7
**attack** [1] 39:6
**attorney** [13] 3:21 14:20,21
15:21 16:19 18:16,19 19:6,
11,23 21:19 45:18 49:7
**attorney's** [5] 12:13 31:4,
10 37:23 44:15
**attributable** [1] 19:7 31:5
36:23 45:18 58:20
**attribute** [4] 25:3 37:1 45:
23 47:13
**attributed** [7] 12:13 19:12,
23 24:24 25:19 31:9 32:13
37:20,24 38:4 41:4

**attributes** [1] 38:21
**attributing** [5] 35:19 38:22
45:3 46:8 47:7
**attribution** [4] 31:7,15 32:
4 39:14
**audacity** [1] 56:24
**authority** [1] 42:1
**avoid** [2] 47:20 49:20
**aware** [2] 43:9 44:20

**B**

**back** [3] 21:16 24:18 29:8
**banc** [3] 7:21 57:5 60:2
**bar** [5] 3:15 4:14 11:17 26:
16 58:14
**Barrett** [2] 30:11 40:14
**bars** [5] 26:10 50:21,23,24
56:17
**based** [2] 3:23 56:21
**baseless** [1] 54:11
**basic** [1] 6:18
**basically** [2] 26:9 34:3
**basis** [5] 5:11 9:1 12:10 29:
10 30:22 45:17 57:14 59:
11,23
**basketball** [1] 55:18
**becomes** [1] 24:25
**bedrock** [2] 41:23 50:14
**beginning** [1] 6:9
**behalf** [8] 1:21,22 2:4,7,10
3:8 30:16 58:2
**behind** [1] 46:4
**best** [2] 46:24 47:1
**between** [6] 7:3 33:22 34:
23 42:11,17,18
**beyond** [4] 4:16 49:12 50:
22 56:13
**bipartisan** [1] 51:21
**bit** [1] 34:2
**bite** [1] 40:7
**Blake** [1] 57:8
**blame** [1] 18:1
**blaming** [1] 57:6
**blind** [1] 51:17
**block** [1] 58:18
**borne** [3] 53:19,19,24
**both** [4] 15:20 32:11 36:2
60:4
**bother** [1] 18:20
**breaks** [1] 8:10
**Breyer** [2] 27:8 57:20
**brief** [4] 27:19 29:21 51:20
58:4
**briefed** [1] 37:4
**briefs** [1] 52:16
**bring** [3] 16:24 43:15 48:14
**bringing** [1] 35:10
**brought** [3] 9:17 10:2 59:3
**BRUNN** [5] 1:20 2:3,9 3:7
58:1
**building** [1] 58:18
**bunch** [1] 17:12
**burden** [3] 53:3,12,21
**burdening** [1] 53:7

**C**

**calculus** [1] 32:14
**California** [1] 40:5
**call** [1] 44:6
**calling** [1] 44:6
**calls** [1] 31:17
**came** [2] 1:15 9:9
**cannot** [5] 5:2 10:18 13:10,
13 16:5 30:8
**capital** [1] 49:3
**carefully** [1] 10:10
**Case** [21] 3:4,11 5:22,24 6:
9 7:22 13:12 14:5 24:17
26:7 36:8 37:9 42:8,16,21
43:9 44:10 58:6 59:20 60:
7,8
**cases** [11] 5:19 10:8,14 12:
11 17:2 22:2 39:17 46:14
52:11,20,22
**categorical** [1] 31:7
**cause** [24] 4:1,3,18,18,24
11:2 15:10,16 17:23 21:3,
9,13 26:3 30:4 32:22 33:
17,23 35:5 43:1,6,13 45:21
51:3 59:12
**central** [1] 8:21
**cert** [2] 56:24 57:5
**certainly** [6] 8:12 25:23 36:
13 37:8 42:24 57:10
**cetera** [1] 52:24
**chain** [1] 7:3
**chance** [3] 9:15 30:1 54:20
**change** [1] 26:12
**changed** [2] 20:15 37:13,
16
**characterization** [1] 46:
22
**charged** [2] 51:12 54:6
**charges** [1] 54:14
**CHIEF** [27] 3:3,9 6:17 7:12,
17,23 8:11,14 9:3,7 10:6
21:16,24 27:5 29:16 30:10,
14,17 41:25 42:14 43:19,
22 46:10 57:16,18,19 60:6
**choice** [2] 17:16,18
**choosing** [1] 41:12
**chose** [1] 18:24
**Circuit** [8] 28:11 29:6 56:
12 57:1,14 58:8 59:24 60:5
**circumstance** [2] 21:4 39:
3
**circumstances** [1] 4:23
**circumventing** [1] 40:13
**cited** [1] 58:9
**civil** [3] 31:25 39:5,23
**claim** [63] 5:10,11,23 6:16,
19,22,24 8:17,22 9:16,23
10:12 12:10,22 14:17 20:1,
2 22:16 23:2,13,15,17,20,
24 24:13,21,21 26:5,19 30:
17,18 32:13 29:8,24,25 30:
23 33:18,20,24 34:8,11,25,
25 35:10 36:6,21 43:7,11,

16,17 44:8,16 45:25 47:15,
19 48:14 50:25 51:5 54:9
55:9 58:25 59:18,25
**claimant** [3] 32:5,13 45:4
**claims** [15] 3:16 17:17,20
31:23 32:9 35:4 41:13,18
49:10 50:5,12,16 55:3 57:
14 59:6
**classic** [1] 59:18
**clear** [3] 26:17 58:16 59:14
**clearly** [4] 4:5 12:5 17:25
35:2 56:12 58:20
**clerk** [1] 16:4
**client** [10] 12:13 16:11 24:
24 25:20 31:5 37:20,24 38:
4 39:14 45:19
**close** [1] 24:17
**coaching** [1] 55:18
**codified** [1] 3:17
**codify** [2] 4:20,23
**Cole** [1] 44:19
**Coleman** [10] 13:1 16:18
31:14 38:23 40:5 44:3,4,9,
10 45:13
**Coleman's** [1] 4:1
**collateral** [2] 31:25 39:6
**collaterally** [1] 8:20
**Collins** [1] 7:6
**Collins's** [1] 7:21
**commit** [2] 51:11,24
**compared** [1] 14:2
**competent** [1] 54:20
**completely** [2] 54:1 57:3
**complicit** [1] 52:1
**conclude** [1] 15:4
**conflict** [2] 42:11,17
**Congress** [30] 3:13,25 4:5,
20,22 7:8 8:24,25 9:8,18
12:4 19:4 22:9,19,22 26:9,
17 34:12,20 40:19 42:23
43:3,9,13,20 44:17 50:7
58:10,12,13
**Congress's** [5] 5:3 11:16
12:2 22:11,19
**consider** [2] 5:13 56:18
**consideration** [3] 50:22,
23 56:17
**considered** [2] 10:12 43:
10
**considering** [1] 51:6
**consistent** [1] 26:18
**constitutes** [1] 14:11
**Constitution** [1] 53:23
**constitutional** [15] 4:10 8:
9 9:13 11:24 12:22 19:16
20:11 23:2,6,13,19 40:16
41:3 44:8 45:10
**constitutionally** [2] 40:10
41:15
**constructed** [3] 36:4 47:
10 48:6
**constructing** [1] 41:21
**construction** [2] 51:19 53:
4

**construe** [1] 47:3
**contemplate** [2] 24:19 25:
1
**contendere** [1] 17:1
**context** [12] 27:4 32:2 41:7
44:5 45:21,24 47:5,5,23
48:1 49:14 53:9
**contexts** [2] 18:6 32:11
**contrary** [2] 28:15 51:8
**contrast** [1] 4:22
**controls** [1] 46:3
**convictions** [1] 3:16
**Correct** [14] 8:23 14:11,12
15:12 20:13,21 22:6 23:14
32:23 33:2 48:13 53:16 54:
6,11
**CORRECTIONS** [1] 1:4
**Counsel** [68] 5:6 6:5,20 9:
1,14,16 13:17,19,21 14:7
16:9,17,24 17:6 18:15 19:
9,18,20 20:3 21:3,12 22:4
24:5,7,8,12,21 27:6,11 28:
18 29:14 30:12 31:9,23 32:
9,11,18 33:21 35:4,17 36:6,
24 40:10 41:13,14,18,24
44:16 47:1 49:9 50:4,13
52:3,8 53:10 54:9,20 55:
11,14,25 56:7 57:22 58:21
59:3,5,17 60:7,7
**counsel's** [3] 28:2 32:5 37:
19
**counts** [1] 3:22
**course** [3] 41:17 53:4 56:
23
**COURT** [98] 1:1,16 3:10,20
5:5,20,25 6:1,3,8,13,15 7:
3,4 8:8 9:18 10:3,10 11:7,
14 13:16 17:9,15,21 19:6,
17 20:8,10,16,20 21:17,18
22:17 23:25 25:3,4 26:8,
11,14,15,20,25 27:1,24 28:
11 30:9,18,24 31:6,14,19,
20 32:2,7 33:18 34:13,14,
19 35:2,8 36:19 37:2,4 38:
10 40:4 41:10,10,22 43:1
44:11 45:5,12 46:1 47:6,8,
24 49:10,25 50:14,22 51:2,
9,12,14,17 52:13 53:7,19
54:4,7,22 55:22 56:14 58:
17 59:1,8,21 60:4
**Court's** [2] 13:7 39:17
**courts** [8] 9:19,20 36:12,14
44:23 51:23 53:7 58:10
**courts'** [1] 4:6
**covered** [1] 51:4
**crafted** [1] 10:10
**create** [4] 4:15 13:24 58:17
59:11
**created** [1] 3:14
**creating** [1] 58:11
**crime** [1] 51:24
**criminal** [4] 31:12,13 32:1
39:5 40:1,2
**critical** [1] 26:7

**cut** [1] 6:8

## D

**d)(1** [1] 26:13
**D.C** [2] 1:12,22
**DAVID** [2] 1:3,8
**Davila** [9] 13:7,16 18:13,21
24:3,4,19 46:15,15
**day** [3] 10:19 54:19 56:4
**days** [1] 16:20
**dealing** [1] 18:13
**deals** [1] 58:6
**dealt** [1] 44:12
**death** [3] 52:2 54:18 59:18
**December** [1] 1:13
**decide** [1] 22:23
**decided** [3] 9:9 36:25 58:
22
**deciding** [1] 47:17
**decision** [7] 7:13,18 13:7
41:11 56:21 57:1,8
**deduce** [2] 20:23,24
**deemed** [1] 41:8
**default** [19] 4:19,20 5:8,18
10:22 11:3 13:25 15:8,15,
17 17:24 21:2,8,14 23:25
26:1 32:20,22 59:12
**defaulted** [3] 18:21 24:23
33:17
**defendant** [1] 18:11
**defer** [1] 26:15
**define** [2] 14:8 30:23
**defined** [1] 14:11
**definition** [1] 14:10
**delays** [3] 48:25 49:2,6
**deliberate** [1] 17:16
**deliberately** [1] 41:12
**delta** [1] 34:22
**denial** [1] 7:21
**DEPARTMENT** [1] 1:4
**develop** [3] 3:19,22,24 5:
1,10,23 12:9 14:10,23 22:5
24:11 25:22 27:1 29:25 30:
21,23 34:11,25 36:20 42:
12 43:4,11,17 46:6,18 47:4,
18 48:17,20 54:21
**developed** [4] 11:25 27:21
35:4 43:24
**developing** [3] 14:16 21:
19 34:16
**development** [4] 22:9 27:
23 43:2 50:18
**devote** [1] 27:12
**different** [15] 15:23,24 17:
13 20:4 34:17 39:12,13,14,
15,19,23
**differently** [2] 40:6 48:3
**DIG** [2] 28:7,8
**diligence** [4] 4:13 11:25
36:22
**diminished** [2] 17:19 41:
16
**diminishes** [2] 45:9 48:9
**diminishing** [1] 47:11

**direct** [31] 6:25 8:19 13:9,
18,19 17:17 18:15,16,25
19:10 20:7 24:6 28:2 31:
13 32:6,10 35:14 36:2 38:
1,23 39:2,16 41:13 44:17
47:7 48:2,4 49:7,15,18 59:
9
**directed** [1] 12:18
**directly** [1] 28:14
**DIRECTOR** [1] 1:3
**disagreeing** [1] 37:18
**disagreement** [1] 37:22
**discovered** [1] 4:12
**discretionary** [3] 39:9,24
40:3
**discussion** [1] 18:24
**dissent** [4] 7:6,21 52:9 58:
8
**distinction** [2] 16:12,13
**distinguish** [1] 24:3
**district** [8] 6:1,12 9:17,18,
19 51:13 59:1,21
**doing** [3] 22:5 34:6 59:9
**DOJ** [1] 51:21
**done** [1] 41:20
**Douglas** [1] 40:4
**down** [1] 6:13
**dozen** [2] 52:20 53:2
**drafted** [1] 44:1
**drastically** [1] 36:11
**duck** [2] 39:8,8
**due** [2] 4:12 28:1

## E

**e)(2** [31] 3:18,23 4:3,16 5:1
7:9,25 10:19 12:8 13:2 15:
7 19:3 22:10 26:15 28:15
29:9 30:6,7 32:14 33:14
35:11 40:25 47:17 48:19
50:20 51:4 56:17,22,25 57:
8,11
**e)(2)'s** [2] 32:15 44:3
**e)(2)(A** [1] 4:9
**e)(2)(B** [2] 11:20 12:5
**echoing** [2] 3:19 15:7
**effect** [1] 32:25
**effecting** [1] 52:2
**effective** [7] 9:14 19:17 40:
10 41:23 55:11,14 56:6
**efficient** [1] 7:1
**egregious** [1] 28:9
**either** [4] 4:9 6:10 11:23 31:
12
**element** [2] 15:15 40:21
**elements** [1] 39:1
**eligible** [1] 52:13
**eliminate** [1] 49:1
**emphasized** [1] 32:25
**en** [3] 7:21 57:5 60:2
**enacted** [4] 3:13 42:24,25
49:1
**enactment** [1] 44:3
**end** [5] 5:18,22 10:19 55:21
56:4

**enough** [4] 4:8 6:3 11:21
12:6 22:12 28:23 47:24 58:
16
**entire** [3] 22:24 29:2,5
**entitled** [2] 28:3 29:3
**envision** [1] 11:14
**envisioned** [2] 8:24 9:8
**equally** [1] 38:24
**equitable** [6] 10:21 13:25
21:11 27:21 47:21 59:11
**equivalence** [1] 49:17
**equivalency** [1] 39:2
**equivalent** [4] 32:10 35:14
40:18 47:6
**error** [4] 12:24 13:2 15:21
19:7
**errors** [5] 35:15 37:25 39:
16 49:7,14
**errs** [1] 14:21
**ESQ** [2] 2:3,6,9
**ESQUIRE** [1] 1:22
**essentially** [4] 12:15,25 18:
7 21:23
**establish** [4] 6:4,15 28:23
59:16
**established** [1] 4:24
**et** [1] 52:24
**even** [9] 9:12 11:25 16:5,
18 18:19 22:11 24:22 28:9,
10,22 56:22,25 58:15 59:2,
15
**eventually** [1] 33:9
**everybody** [1] 22:1
**everyone** [2] 35:18 37:24
**evidence** [33] 5:10,20 6:4,
10,15,21 8:3,6,18 11:24 16:
25 21:19 22:5,9 27:25 28:
10,23 29:3 50:22 51:1,6,10,
15,18,23 54:5,13,15,17,22
56:18,19 59:15
**evidentiary** [14] 3:15 4:25
5:11 7:1 11:17 19:2 21:22
22:2 23:17 26:16 33:10 50:
24 51:5 58:15
**eviscerate** [2] 34:3,5
**exact** [2] 35:25 50:1
**exactly** [3] 14:22 22:4 38:9
**examined** [1] 31:21
**example** [1] 22:15
**except** [2] 17:10 23:21
**exception** [4] 4:16 10:21
13:10,25 14:1,3 47:22
**exceptions** [2] 58:11,17
**excuse** [5] 5:8,18 11:2 15:
10,15,17 21:9,13 30:4
**excuses** [1] 4:21
**excusing** [4] 4:1,19 10:21
**exercise** [2] 4:12 6:6
**exist** [1] 49:22
**existing** [1] 21:13
**expected** [2] 40:19 44:23
**explain** [1] 37:6
**explained** [1] 41:10
**explanation** [2] 7:25 10:15

explicitly [1] 17:11
expressly [4] 8:25 11:1 21:
10 45:6
extend [1] 38:17
extensive [1] 48:25
extent [2] 10:17 25:9
external [3] 40:25 45:1 48:
7
extreme [1] 50:8
eye [1] 51:17

**F**

fact [10] 23:21 27:23 35:21,
23 36:15 37:2 39:11 43:23
53:2 56:3
fact-finder [1] 4:7
facts [4] 14:17 36:21 43:2
44:10
factual [5] 4:11 8:18 12:10
30:22 50:18
factually [1] 24:11
fail [5] 14:10 25:21 46:5 47:
4 48:20
failed [6] 12:9 16:24 30:21,
23 42:12 43:4
failing [17] 14:22 29:24,25
33:20 34:11,24,25 35:6 43:
6,11,15,17 45:24 47:14,18
48:14,16
fails [1] 4:17
failure [2] 13:2 19:22,24 5:1
12:20 20:18 28:2 36:20,20
37:11,12 46:18
failures [6] 31:9 32:5,11 37:
20,23 38:3
fair [7] 50:15 55:13,23,24
56:1 57:9,10
fault [63] 12:8,13,23 14:9,
11,16,20,25 15:3,5,13 16:
23 17:3 18:5,10 19:22 20:
15,17 22:24,25 23:11 25:
18 29:24,25 30:4,25 31:2,
15 32:4,13 33:15,16,20,23
34:8,10,15,24 35:6,9,19 36:
23 38:22,22 39:13 43:6,10,
13,15,16 44:13 45:3,18,23
46:8 47:8,14,18 48:3,11,14,
16,22
fault's [1] 25:19
faulty [2] 7:11 58:24
federal [21] 3:15 9:17 18:
22 19:1,13 20:5 24:22 27:
23,24 36:16 49:10,25 51:2,
9,12,16,22,23 54:22 59:1,8
figure [2] 25:5,7
file [2] 26:20 41:17
filed [1] 16:19
find [1] 43:5
finding [5] 30:25 43:12 45:
6,17 48:21
Finley [1] 39:21
first [27] 3:17 6:5,19 9:15
15:7,8,14 16:2 19:4,18,20
23:17 26:2 30:6 31:16 32:

19,25 33:3,13,16 35:10 36:
5 39:4 44:7 45:14 50:10
58:5
five [1] 21:20 55:19
flaw [1] 7:6
focused [1] 15:16
follow [4] 19:22 20:1 36:16,
17
following [4] 4:25 59:12
force [5] 34:23 40:25 45:1
46:5 48:7
forceful [1] 24:16
forces [1] 15:4
former [4] 45:20 51:21
forth [1] 24:1
fortuity [1] 49:21
fortunate [1] 47:24
forum [1] 49:9 50:3 55:3,7,
9
found [7] 4:7 33:23 35:5,6
43:1 52:13,19
four [1] 21:20
Fourth [1] 9:20
framework [1] 17:22
friend [2] 42:4 54:24
front [1] 33:11
fruitless [1] 6:6
full [3] 33:10 46:5
fully [1] 32:14
functionally [1] 36:1
fundamental [4] 12:1 16:
13 25:11 58:13
fundamentally [1] 3:12
further [2] 27:8 29:17

**G**

game [5] 55:18,20,21,23,23
gave [3] 8:1,2,6
General [12] 1:20 13:6,12
15:25 16:1,2,7 24:1 31:3
37:19 42:1 44:24
generally [1] 31:4
generis [1] 33:7
gets [5] 12:13 22:17 28:18
55:19,19
getting [1] 46:20
give [7] 10:11 25:9,10 30:1
55:21 56:3,5
given [6] 10:16 27:2 51:14
52:9 54:17,20
giving [1] 55:9
Gorsuch [1] 29:18
got [2] 52:23 59:19
grant [1] 9:20
greater [1] 36:23
ground [1] 26:24
grounds [1] 9:21
guaranteed [1] 41:15
guarantees [1] 58:25
guess [2] 10:5 52:8
guilty [3] 4:8 54:6 55:13
gut [2] 10:7,13

**H**

habeas [16] 3:15 9:2,17,20
18:22 19:2,13 20:6 24:14,
22 26:11,12,21 36:16 39:
18 59:1
Hail [1] 56:3
half [1] 55:22
halfway [1] 7:2
hand [2] 51:7,24
hands [2] 51:9,13
happen [2] 49:15,17
happened [2] 16:8 49:7
happens [2] 12:16 53:15
hard [2] 11:13 17:2
Headnote [1] 58:20
hear [4] 3:3 49:9 50:4 59:8
heard [2] 50:16 58:25
hearing [23] 4:25 6:2,14 7:
8:2 8:2 11:21 19:2 23:17
28:3,13 29:8 33:10,12 50:
24 51:5 52:12,14 55:7,13
58:15 59:15,25
hearings [4] 3:15 11:17 26:
16 52:25
heart [1] 25:16
held [14] 3:21 30:24 31:2
32:3,7 33:19 34:9,10 43:
15,16 44:12,13 47:18 48:
13
high [5] 3:14 4:14 14:3 26:
16 58:14
hold [1] 46:16
holding [1] 32:15
holds [1] 58:20
Holland [3] 3:21 15:18 19:
5
Honor [5] 5:12 20:13,21
22:7 30:13 32:23 33:13 38:
19 42:10,22 44:2 45:21 53:
16 55:24 58:3
however [3] 44:1 45:7 50:
23
huge [1] 10:8
hypothetical [1] 42:16

**I**

idea [2] 6:18 55:1
ignore [1] 46:24
ignoring [1] 47:2
Ill [5] 1:20 2:3,9 3:7 58:1
imagine [1] 18:14
imagined [1] 11:18
impairs [1] 41:1
impeded [1] 41:8
impedes [3] 41:21 45:2 48:
7
implications [2] 46:21 58:
7
implicitly [1] 8:2,5
important [10] 11:5,9 16:
14 21:18 22:7 35:3 41:5
45:10 53:22,23
imposed [1] 30:19
imposes [1] 20:19
improper [1] 52:1

imputed [2] 15:21 17:8
incompetence [4] 6:24 8:
17,22,25
incompetent [2] 6:20 16:9
incorrect [1] 8:5
Indeed [3] 31:8 34:12 49:
20
independent [2] 26:10 59:
7
ineffective [27] 6:4 8:10
10:11 12:22 13:9,18,20 16:
10 19:9,19,23 20:2 24:20
26:4 31:23 32:2 35:3 36:5
41:13,18 44:16 49:9 50:4,
12 54:8 59:2,16
ineffectiveness [16] 9:15
13:8 17:17,20,23 18:1,15
21:2,12 23:2 24:6,12 28:
25 31:11 35:17 44:15
inevitably [1] 48:25
inherently [1] 50:18
innocence [2] 12:5 22:11,
16 26:24 55:3,9
innocent [2] 11:20 55:12
inquiries [2] 34:14,23
inquiry [1] 33:19
instance [1] 35:10
instances [3] 36:2 37:22,
23
instead [4] 31:17,17 43:22
44:5
intent [2] 12:2 50:7
intentionally [1] 4:14
international [1] 16:5
interpret [2] 17:1 37:7
interpretation [4] 3:13 14:
6 36:10 37:11
interpreted [4] 36:14,18,
19 37:13
interpreter [1] 16:25
interrupt [1] 25:15
intervention [1] 7:8
invite [1] 5:5
involving [3] 16 39:17
isn't [4] 12:6,25 42:11 43:
18
issue [15] 3:11 11:5 24:12
27:18 28:16 31:21 37:3 38:
20 40:17 44:12,22,24 45:
12 52:18 57:7
itself [1] 23:12

**J**

job [2] 16:3 18:17
Joint [1] 58:9
Jones [6] 2:6 31:1 32:16
35:19 51:10 54:13 56:2,5
Judge [3] 7:5,21 58:6
judge-made [5] 5:2 14:1,2
25:10 58:7
judgments [1] 60:4
judicial [1] 51:22
jurisdiction [1] 9:19
JUSTICE [102] 3:3,9 5:6,15,

21 6:17 7:12,17,23 8:11,14
9:3,7,22,25 10:5,6,23 11:4
12:3,7 14:7,13 15:19,22
16:16 17:10,15 19:14 20:
10,14,22 21:15,16,25 22:
20,22 23:2 24:15,25 25:12,14
27:5,7,8,9,10 28:6,17,24
29:1,13,16,16,18,19 30:10,
10,14,17 32:18,24 33:5 34:
1 36:7 38:5,9,15 40:14,22
41:25 42:14 43:19,22 44:
18,21 45:11 46:7,9,10 48:
23,24 50:15 52:3,4,6,7,8
53:10,13,17,25 54:4,10,23
56:7 57:16,16,18,19,19,21
60:6
Justice's [2] 10:6 46:10

**K**

KAGAN [12] 3,7 17:10,15
21:15 22:20,22 29:16 40:
22
KAVANAUGH [16] 9:22,25
10:5,23 11:4 24:15 25:12,
14 29:19 46:7,9 48:23 52:
4,7 54:23 57:21
Keeney [11] 3:18,20,25 15:
7 16:23 19:5 34:13,21,22
42:13 43:8
Keep [1] 9:25
kept [1] 11:1
kind [4] 23:15 49:14 54:12,
15
knows [1] 22:1

**L**

label [1] 39:12
labeled [3] 50:1,2,9
labeling [1] 50:11
labels [2] 31:16 32:3
lack [1] 36:22
language [4] 4:6 6:8 7:25
17:25 20:18 24:17 25:22
28:15 42:3,12 50:7 51:4
last [2] 18:13 53:24
late [1] 16:21
law [4] 4:10 11:24 16:2,4
43:9 59:7
layer [1] 40:8
lead [1] 48:25
least [1] 10:13
left [4] 31:14 44:4 45:12,25
level [3] 31:11 38:3 59:4
levels [1] 32:12
light [2] 42:23 47:23 54:19
likewise [2] 43:10 46:6
limitations [1] 22:15
limited [1] 37:23
limiting [1] 13:15
limits [1] 30:19
litigation [2] 49:2,3
little [1] 34:16
LOEB [33] 1:22 2:6 30:14,
15,17 32:21 33:2,13 34:5

**37**:15 **38**:8,12,19 **40**:15 **41**:
25 **42**:10,20 **43**:21 **44**:2,20,
22 **45**:20 **46**:8 **47**:1 **49**:5
**52**:15 **53**:11,16,18 **54**:3,7,
12 **55**:6
**logic** [5] **7**:7 **34**:9,23 **43**:8
**47**:15
**logical** [3] **42**:5,18 **46**:20
**logically** [2] **13**:14 **43**:7
**long** [3] **14**:9 **31**:6 **34**:13
**look** [8] **8**:19 **28**:22 **38**:21
**39**:21,25 **42**:22 **48**:1 **59**:15
**looked** [2] **47**:25 **48**:4
**looking** [1] **6**:2
**lose** [1] **8**:21
**lot** [3] **10**:14 **36**:11 **43**:20
**lower** [1] **36**:12

**M**

**made** [6] **17**:22 **20**:11 **23**:
19 **56**:21 **57**:8 **58**:16
**major** [4] **7**:10 **38**:25 **39**:1
**40**:21
**majority** [3] **11**:7 **22**:2 **41**:
19
**mandatory** [2] **39**:9 **40**:3
**many** [3] **32**:9 **35**:13 **44**:1
**map** [1] **30**:5
**Maples** [2] **14**:19 **15**:25
**MARTINEZ** [104] **1**:8 **4**:15,
17 **5**:9,13,14 **6**:2,7,12,14 **7**:
13,19 **8**:1,5,7,15 **9**:4,10,12
**10**:7,9,16,18,19,20,25 **12**:
15,25 **13**:5,10,12,23,24 **14**:
21 **15**:9,13,16 **17**:11 **18**:8,
12,23 **19**:15 **20**:25 **21**:10,
17,21 **22**:3 **23**:4,7,15 **24**:1,
18,19 **25**:4,10,17,24 **27**:21
**28**:11,14 **29**:6 **30**:4 **32**:19
**33**:9,12,16,25 **35**:1,9,12 **36**:
10,12,14,25 **37**:4,14,16 **38**:4,8,20,25 **40**:15,22 **41**:5
**43**:12,24 **44**:12 **46**:1,3,4,12,
13,19,21 **50**:17 **52**:10,12,
14,17 **53**:8,20 **58**:24 **59**:9
**Martinez's** [2] **5**:2 **54**:11
**Mary** [1] **56**:3
**material** [1] **50**:19
**materially** [1] **39**:19
**materials** [1] **56**:13
**matter** [9] **1**:15 **21**:11 **32**:4
**34**:9,22 **37**:3 **43**:8 **47**:15
**59**:6
**McQuiggin** [1] **22**:17
**mean** [20] **6**:7,22 **8**:15 **10**:
20 **11**:6,13 **12**:8 **16**:21 **17**:
24 **18**:3 **21**:20 **22**:7,19 **23**:
24 **26**:17 **44**:2 **47**:1 **49**:6
**51**:9 **56**:6
**meaning** [3] **20**:15 **42**:5 **46**:
18
**meaningful** [1] **35**:24 **50**:
13 **56**:10
**meaningfully** [3] **35**:24 **50**:

4 **54**:8
**means** [7] **14**:9 **15**:3 **36**:12,
19 **37**:14 **46**:17,17
**meant** [4] **17**:1 **25**:25 **42**:15
**43**:4
**meet** [2] **11**:22 **22**:13
**meets** [1] **32**:12
**mentioned** [3] **40**:22 **56**:25
**57**:2
**merely** [1] **3**:25
**merits** [2] **26**:14 **28**:13
**met** [6] **22**:24,25 **23**:1,3,12
**29**:6
**Michael** [9] **30**:24 **31**:2 **34**:
18 **36**:18 **37**:9,17 **38**:10 **40**:
24 **48**:21
**might** [1] **23**:23
**mind** [1] **22**:19
**misperception** [1] **21**:22
**misreading** [1] **50**:19
**mitigation** [2] **54**:17 **59**:19
**Most** [6] **26**:22,23 **50**:13 **53**:
23 **55**:10,10
**move** [4] **17**:16 **21**:5 **26**:3
**41**:12
**much** [1] **6**:25
**murder** [2] **51**:11 **54**:14
**must** [1] **4**:9

**N**

**narrow** [7] **11**:1,5 **13**:24 **20**:
25 **21**:4 **53**:8,9
**narrowly** [2] **21**:11 **59**:11
**natural** [1] **7**:1
**nature** [1] **31**:8
**necessarily** [1] **23**:14
**necessary** [2] **6**:22 **53**:22
**need** [12] **10**:14,14 **26**:19
**30**:9 **33**:19 **38**:14,20,21 **39**:
1 **40**:16 **44**:9 **47**:3
**needed** [1] **59**:18
**needs** [2] **37**:17 **47**:4
**negligence** [3] **3**:22 **17**:7
**20**:19
**negligent** [3] **18**:17 **19**:11
**24**:5
**never** [5] **11**:11 **50**:15 **54**:
18 **56**:1 **57**:6
**new** [4] **4**:10 **11**:23 **29**:7
**next** [2] **3**:4 **10**:24
**nice** [1] **37**:1
**nine** [5] **31**:19 **41**:19 **52**:19,
21 **53**:24
**nine-year** [1] **53**:1
**Ninth** [8] **28**:11 **29**:6 **56**:12
**57**:1,4 **58**:8 **59**:23 **60**:4
**nolo** [1] **17**:1
**non-constitutional** [1] **45**:
17
**Normally** [1] **27**:16
**nothing** [1] **51**:25
**notice** [1] **16**:19
**number** [2] **10**:8 **52**:25

**O**

**objected** [2] **56**:16 **60**:1
**obstructed** [1] **41**:8
**obstructs** [4] **41**:1,22 **45**:1
**48**:7
**obvious** [1] **25**:6
**obviously** [2] **10**:10 **15**:15
**occurred** [6] **3**:24 **15**:17 **35**:
15 **38**:1 **39**:16 **44**:16
**occurs** [2] **31**:12 **36**:22
**odd** [3] **5**:7 **25**:3 **34**:2
**offered** [1] **10**:20
**often** [1] **22**:8
**Okay** [7] **5**:21 **14**:14,18 **17**:
14 **21**:9 **53**:10,17
**omniscience** [1] **37**:12
**once** [4] **10**:13 **35**:4 **42**:15
**59**:23
**one** [31] **13**:21 **14**:13 **21**:4
**24**:9,10 **25**:9,18,20 **27**:10,
22 **29**:19 **34**:19 **39**:1 **40**:7,
22,23 **42**:4 **44**:25 **50**:13 **52**:
4,4,10,22 **53**:22 **54**:23 **55**:7,
10,19,19,20 **59**:4
**one's** [1] **55**:8
**one-year** [1] **12**:15
**only** [13] **9**:9 **14**:23 **22**:12,
22 **30**:20 **31**:22 **36**:5 **46**:14
**50**:23 **52**:11 **56**:9 **57**:4 **58**:
11
**open** [8] **31**:14,20 **44**:4,12,
22,24 **45**:13,25
**opening** [1] **3**:18
**opinion** [1] **10**:10
**opportunity** [6] **14**:24 **27**:
22,24 **33**:3 **44**:8 **56**:4
**opposed** [1] **50**:11
**oral** [5] **1**:16 **2**:2,5 **3**:7 **30**:
15
**ordered** [1] **51**:14
**orders** [1] **52**:23
**ordinarily** [1] **34**:9
**ordinary** [4] **37**:19 **40**:23
**46**:18 **49**:13
**original** [1] **32**:1
**other** [10] **8**:16 **11**:12 **13**:22
**24**:13 **25**:18 **34**:20 **46**:11,
23 **48**:18 **54**:24
**otherwise** [1] **24**:23
**out** [10] **7**:6 **8**:10 **11**:8 **23**:3
**25**:5,7 **53**:19,24 **54**:2 **56**:8
**outside** [2] **17**:17 **41**:13
**over** [7] **21**:16,17 **52**:20 **53**:
1,1,6,24
**overcome** [1] **6**:7
**overcoming** [1] **4**:21
**overlooked** [1] **36**:1
**overly** [1] **53**:6
**overrule** [1] **37**:8
**overruled** [2] **10**:20 **37**:18
**own** [1] **14**:3
**ownership** [1] **23**:9

**P**

**p.m** [1] **60**:8
**PAGE** [5] **2**:2 **29**:23 **34**:18
**41**:11 **58**:8
**pages** [1] **27**:20
**panel** [10] **56**:12,16,18,20
**57**:4,6,9,10,12 **59**:14
**paradox** [1] **58**:6
**paragraph** [1] **27**:12
**pardon** [3] **26**:22 **28**:14 **56**:
5
**part** [9] **3**:14,17,18 **15**:7 **19**:
5 **30**:6 **32**:1 **39**:4 **40**:1
**particular** [6] **11**:18 **25**:20
**44**:5 **45**:24 **47**:5,23
**particularly** [2] **49**:3 **53**:20
**path** [1] **6**:13
**pattern** [1] **43**:24
**pause** [1] **51**:3
**penalty** [3] **52**:2 **54**:18 **59**:
11
**Pennsylvania** [1] **39**:21
**people** [1] **52**:23
**period** [1] **53**:1
**permit** [2] **4**:25 **11**:21
**person** [3] **12**:18 **35**:5 **43**:
13
**pertains** [1] **56**:9
**petition** [6] **26**:21,23 **27**:15
**28**:20 **57**:5,6 **60**:1
**Petitioner** [7] **1**:6,21 **2**:4,
10 **3**:8 **20**:12 **58**:2
**Phoenix** [1] **1**:21
**phrase** [3] **30**:25 **37**:14,16
**pick** [3] **46**:7,9 **48**:24
**picking** [1] **10**:5
**piggybacking** [1] **13**:1
**Pinholster** [2] **26**:6,8
**place** [6] **6**:5 **15**:9,14 **23**:18
**26**:2
**places** [1] **17**:13
**plain** [2] **42**:3 **51**:4
**plainly** [1] **42**:5
**play** [2] **11**:8 **55**:20
**player** [1] **55**:20
**players** [1] **55**:19
**please** [3] **3**:10 **14**:14 **30**:
18
**point** [11] **7**:24 **10**:4,9 **12**:19
**17**:5 **22**:11 **28**:18,22 **54**:11
**55**:5 **58**:23
**pointed** [4] **7**:6 **23**:3 **54**:2
**56**:8
**pointless** [1] **27**:22
**points** [1] **58**:4
**position** [8] **5**:25 **24**:4 **25**:9,
24 **28**:21 **29**:5 **56**:24 **59**:14
**post** [1] **35**:16
**post-conviction** [38] **9**:1,
14 **12**:18 **13**:17 **16**:20,24
**18**:1,18,19,25 **19**:10,11,18,
21 **20**:3,8 **21**:3,12 **24**:5,8
**26**:23 **31**:18,23,24 **32**:8 **35**:

12,23 **36**:4 **39**:18,22 **40**:6,
12 **44**:7 **45**:15 **50**:2,10 **59**:
4,5
**potentially** [2] **20**:2,15
**practice** [1] **33**:9
**pre-petition** [1] **29**:12
**preceded** [1] **44**:3
**precedent** [4] **34**:10 **42**:6,
19 **47**:16
**predicate** [2] **4**:11 **23**:16
**predictions** [1] **52**:9
**prejudice** [14] **4**:1,4,18,24
**15**:11,14 **21**:6,9 **26**:1,3 **32**:
23 **33**:17 **45**:22 **51**:3
**premise** [1] **7**:10
**prescience** [1] **43**:20
**present** [6] **8**:3,6 **27**:25 **52**:
12 **54**:21 **59**:22
**presented** [5] **3**:11 **8**:8 **9**:
13 **28**:1 **56**:14
**preserve** [1] **29**:12
**preserved** [1] **29**:10
**press** [1] **8**:21
**pretty** [2] **5**:16 **17**:11
**prevent** [1] **20**:5
**previously** [1] **4**:11
**primary** [1] **52**:18
**principle** [1] **13**:15
**principles** [12] **3**:23 **13**:6
**16**:1,2,7,11 **17**:6 **24**:2 **44**:
24,25 **47**:25 **58**:19
**prior** [1] **28**:1
**prisoner** [24] **4**:8,8 **5**:9 **11**:
19 **16**:21 **17**:3,8 **19**:7,12,24
**36**:23 **58**:21
**prisoner's** [7] **17**:19 **19**:15
**35**:14 **36**:24 **41**:16 **52**:13
**58**:21
**prisoners** [1] **8**:19
**probably** [1] **20**:6
**problem** [3] **7**:10 **9**:9 **14**:8
**procedural** [6] **4**:19,20 **5**:
18 **10**:21 **11**:3 **13**:25 **15**:8
**17**:22,24 **21**:2,8,13 **23**:24
**32**:20,22 **59**:12
**procedurally** [1] **18**:20
**proceed** [1] **49**:25
**proceeding** [4] **12**:19 **19**:
18,21 **45**:15
**proceedings** [1] **6**:25
**process** [2] **17**:18 **41**:14
**proffer** [1] **28**:11
**proper** [1] **18**:9
**properly** [1] **17**:1
**proposition** [1] **4**:17
**prosecutors** [1] **51**:21
**provide** [2] **21**:3,13
**provided** [2] **31**:22 **35**:13
**provision** [1] **11**:12
**purport** [3] **13**:13 **37**:7,8
**purported** [1] **59**:10
**purporting** [1] **24**:1
**purpose** [4] **11**:16 **24**:9,11
**25**:11

**purposes** [1] 19:13
**pursue** [2] 11:11 59:6
**pursued** [1] 25:2
**put** [3] 18:24 22:1 23:23

## Q

**quacks** [1] 39:8
**qualify** [1] 17:23
**question** [41] 3:12 5:13 8:9
9:12 10:7 11:2,5 12:17 14:
15,18 19:1,3,4 20:4 21:1,
23 22:3,10,18,23,25 23:15,
16 24:25 27:11 29:19,20
30:2 31:15,20 33:14,15 44:
4 45:13,16 46:10 48:24 53:
5,5 58:5,13
**questions** [5] 5:3,5 22:7
32:17 57:18
**quote** [1] 17:12
**quoting** [1] 27:20

## R

**raise** [37] 6:19,24 8:19,20 9:
15 10:11 11:9 18:14,20 19:
9,19 20:6,18 24:11 27:14
28:4,19 29:11,24 33:18,20
34:24 35:6,16,17 37:12 43:
7 44:8 45:24 47:14,19 49:
18,24 55:8 57:2,7,8
**raised** [8] 24:14,22 25:2 28:
16 33:24,25 52:17 57:12
**raising** [1] 13:18,20 20:5
24:6 34:8,15 44:15 55:3,4
56:22 57:4
**RAMIREZ** [16] 1:8 3:5 6:9
27:19 28:9,14 31:1 32:16
35:20 54:16 56:2,10,11 57:
10,13 59:13
**Ramirez's** [2] 27:13,24
**rarely** [1] 53:15
**rather** [3] 4:2 5:7 7:2
**rationale** [6] 13:1 35:8 46:
2,4 47:17 48:12
**reach** [2] 38:20 40:16
**reached** [1] 26:14
**reaching** [1] 57:7
**read** [7] 15:12 37:11 43:25
46:13 47:4,22 52:11
**reading** [2] 42:19 50:8
**real** [1] 56:10
**realize** [1] 11:10
**really** [15] 10:7,13 11:11 18:
4,6 25:1,16 26:7,10,16 36:
8 43:17 48:1 51:22,25
**reason** [7] 6:23 24:18 26:2
39:13 48:2 50:6 53:14
**reasons** [1] 48:16
**REBUTTAL** [3] 2:8 57:23
58:1
**recitation** [1] 31:3
**recognize** [1] 39:1
**recognized** [3] 31:6 34:12,
13
**recognizing** [1] 34:7

**reconcile** [1] 42:9
**reconciled** [1] 10:18
**record** [7] 5:20 6:4 14:23
27:1 50:23 53:18 54:21
**reduce** [1] 36:11
**REENTRY** [1] 1:5
**regarding** [1] 50:12
**REHABILITATION** [1] 1:5
**rehearing** [5] 27:16 28:20
29:12 60:1,2
**reinterpreting** [1] 13:6
**reject** [1] 38:13
**rejected** [2] 17:11 56:15
**release** [2] 51:14 52:23
**relief** [1] 9:2,20 56:4
**relies** [1] 31:2
**rely** [3] 4:15 29:3 37:10
**relying** [1] 56:13
**remains** [1] 36:15
**remedy** [1] 27:21
**remember** [1] 16:14
**render** [1] 56:20
**repeat** [1] 3:25
**represent** [1] 16:6
**request** [1] 28:2
**require** [3] 22:8 33:10 42:4,
6 50:18 51:20
**required** [1] 4:4
**requirements** [1] 27:3
**requires** [2] 30:25 48:21
**respectfully** [1] 60:3
**respond** [3] 49:4 55:2,4
**responded** [1] 57:11
**Respondent** [4] 1:9,23 2:7
30:16
**Respondent's** [1] 29:21
**Respondents** [3] 4:15 14:
16 15:5
**response** [5] 46:25 47:1
52:5 54:25 56:11
**responsibility** [1] 23:8
**restrict** [1] 26:10
**restrictions** [3] 32:15 34:3,
6
**result** [3] 42:4,4,7
**retrial** [1] 51:15
**reverse** [1] 60:4
**review** [26] 31:17,18,22,24,
24 32:8 33:3 35:13,23 36:
4,5 39:9,18,18,23 40:6,8,8,
12 44:7 50:3,10,11 54:8
55:25
**reviewed** [1] 54:5
**rewrite** [1] 5:3
**rights** [3] 50:14 53:23 55:
11
**ROBERT** [3] 1:22 2:6 30:
15
**ROBERTS** [20] 3:6 6:17 7:
12,17,23 8:11,14 9:3,7 27:
5 29:16 30:10,14 42:1 43:
14 43:19,22 57:16,19 60:6
**role** [4] 4:6 21:19 35:25 58:
11

**Ross** [1] 58:9
**ROYSDEN** [52] 1:20 2:3,9
3:6,7,9 5:12,19,24 7:5,15,
20 8:4,13,23 9:5,11,23 10:
2,17,25 11:16 12:4 13:4
14:12 15:6,20,24 16:18 17:
14 18:12 19:25 20:13,21,
24 22:6,21 23:11 25:8,13,
23 28:5,8,21,25 29:4,15 30:
3,13 57:23 58:1,3
**rule** [16] 4:10 5:2 11:23 12:
12,14,16,17 14:1,2 31:3,7
32:1 37:19 39:25,25 53:8
**Rules** [2] 40:1 58:10
**ruling** [1] 34:20
**run-of-the-mill** [1] 59:20

## S

**same** [18] 12:21 31:21 32:
13 34:11 35:25 36:1 37:25
38:2 39:16 40:19 41:6 43:
11 47:16 48:16 49:7,14,16
50:1
**sandbagged** [1] 57:3
**satisfied** [1] 30:6
**satisfies** [1] 22:12
**satisfy** [4] 4:9 30:7,8 42:21
**saying** [13] 8:18 9:11 12:15
17:25 21:11,17 25:17 33:2
39:18 46:3,5 50:21 55:17
**says** [19] 10:16 11:23 12:9
14:9 17:15,21 19:19 23:21
27:21 35:12 40:1 42:8 46:
11,17 47:8 48:21 51:21 53:
20 54:24
**scenario** [1] 11:19
**second** [7] 14:14 15:9 21:5
26:20 40:21 50:19 58:23
**section** [1] 30:19
**see** [2] 40:17 54:5
**seem** [1] 42:6
**seems** [5] 5:7,16 24:20 25:
2 42:3
**seen** [1] 54:18
**sense** [4] 8:16 11:15 17:4
58:15
**separate** [2] 39:5 40:2
**separation** [1] 33:22
**serving** [1] 35:25
**set** [6] 18:9 21:3 24:1 26:9
45:6,7
**sets** [1] 58:10
**setting** [1] 58:14
**several** [3] 52:20 53:2,2
**SHINN** [2] 1:3 3:4
**short** [1] 6:11
**shot** [1] 55:22
**shouldn't** [5] 6:13,23 28:6
46:6 48:13
**show** [1] 26:1
**showing** [3] 4:9 54:13,16
**shunted** [1] 40:12
**side** [3] 46:11,23 54:24
**significant** [2] 53:12,21

**significantly** [5] 17:19 41:
16 45:8 47:11 48:9
**simply** [1] 6:8
**situation** [14] 14:22 22:14
32:6,22 33:4 38:2,23,24
41:8 42:2 47:8 48:3,5 54:1
**Sixth** [4] 19:16 38:6,18 45:
14
**slapped** [1] 39:12
**Solicitor** [1] 1:20
**somebody** [1] 26:18
**somehow** [2] 11:7 58:24
**someone** [1] 54:5
**sorry** [6] 7:15,17 10:1 25:
14 28:17 52:6
**sort** [3] 17:25 33:6 39:4
**SOTOMAYOR** [21] 14:7,13
15:19,22 16:16 27:10 28:6,
17,24 29:1,13 52:3,6,8 53:
10,13,17,25 54:4,10 56:8
**south** [1] 23:10
**specific** [6] 22:21 24:9,10
25:18,20 32:2
**specifically** [3] 11:18 27:
20 45:12
**specified** [2] 7:13,18
**specify** [1] 7:8
**specifying** [1] 4:2
**spoke** [3] 4:5 12:4 26:8
**square** [1] 46:12
**squarely** [4] 31:19 35:11
44:11 45:25
**stage** [2] 33:16 51:3
**stand** [2] 29:22 30:2
**standard** [8] 5:4 12:8 20:
19 22:24,25 23:12 34:21
48:20
**standards** [1] 34:17
**stands** [2] 46:19,19
**started** [1] 21:16
**state** [45] 3:16 5:20 6:3,3,
15 8:9 10:3 12:17,20,24
18:2,8,10,14,18,24 19:19
20:7 26:15,20 27:1 30:9
31:2,8,16 32:3 33:18 35:
16 38:1 39:15 41:9,15,20
49:8,17,23 50:9,20,22 56:
14,15 59:2,7,21,25
**state's** [6] 17:16,22 18:5
23:8 36:9 59:14
**STATES** [8] 1:1,17 6:23 21:
25 26:22,23 52:18 53:2
**statistics** [1] 52:11
**statute** [23] 14:2,4,8 15:2,4
22:15 30:21,22 36:16 42:3,
18,23 43:25 46:3,13,16,24
47:2,3,21,22 51:19 58:7
**statutory** [11] 3:12 4:6 5:3
6:8 14:6 24:16 27:3,14 37:
14,16 53:4
**step** [3] 15:9,10 21:6
**still** [3] 11:22 22:13 46:19
**stood** [1] 36:25
**stop** [1] 14:13

**strength** [1] 51:15
**Strickland** [3] 31:11 32:12
38:3
**strict** [1] 27:4
**strictly** [1] 32:20
**stripped** [1] 9:18
**strong** [2] 36:8 51:10
**structured** [1] 35:22
**subject** [1] 41:6
**submitted** [2] 60:7,9
**subsection** [3] 8:24 10:3
23:21
**subsections** [1] 4:3
**subsequent** [3] 20:9 42:6
46:14
**substantial** [5] 35:3 40:18
50:12 53:3 54:16
**substantially** [1] 47:6
**succeeded** [1] 55:8
**successive** [1] 26:20
**sufficient** [2] 34:20 55:1
**suggestion** [1] 33:6
**suggests** [2] 33:21 42:17
**sui** [1] 33:6
**supplanted** [1] 4:2
**support** [4] 6:22 23:20 37:
10 46:15
**supports** [1] 32:14
**supposed** [2] 22:5 42:8
**SUPREME** [2] 1:1,16
**surely** [1] 6:21
**surprised** [1] 52:10
**syllogism** [2] 6:18 7:11
**system** [10] 18:9 31:21 35:
23 39:24 41:21 45:7 47:10
48:6 50:15 51:22

## T

**taint** [1] 51:22
**talked** [1] 22:3
**talks** [2] 21:18 42:16
**team** [2] 55:19,19
**tension** [1] 25:6
**terms** [1] 22:7
**test** [4] 3:18 4:1,19 19:5
**text** [1] 42:11
**that'll** [1] 50:3
**theory** [3] 8:1 18:8 23:6
**There'd** [1] 54:7
**there's** [22] 6:14 7:7,11 12:
21 13:14 24:3 25:6 26:2
33:21 34:16 37:22 38:25
40:25 45:1 48:2,6,19 50:6,
19 52:11 58:23 59:4
**therefore** [2] 17:7 43:25
**they've** [3] 35:22 36:3 50:1
**thinking** [1] 11:14
**third** [2] 15:10 56:9
**THOMAS** [10] 5:6,15,21 27:
7 32:18,24 33:5 34:1 57:
17,18
**Thomas's** [2] 10:6 48:24
**though** [3] 10:7 34:2 46:11
**three** [4] 21:20 52:20,21 58:

Official

| | |
|---|---|
| **4** | **47**:12 **53**:22 **55**:10 |
| **three-step** [1] **21**:7 | **vindicated** [3] **52**:23 **55**:16 |
| **threshold** [1] **48**:20 | **56**:7 |
| **timely** [1] **59**:25 | **vindication** [2] **41**:23 **48**:8 |
| **today** [1] **27**:15 | **violates** [1] **29**:9 |
| **tough** [1] **36**:8 | **violation** [1] **38**:7 |
| **treat** [3] **40**:5 **41**:3 **48**:10 | **vital** [1] **55**:10 |
| **treated** [1] **44**:14 | **W** |
| **treating** [2] **40**:18 **48**:3 | |
| **Trevino** [2] **35**:2 **50**:17 | **waived** [1] **57**:15 |
| **trial** [32] **6**:5 **7**:3 **9**:16 **13**:20 | **waiver** [4] **27**:13,16 **57**:9 |
| **16**:9 **17**:16,20 **18**:15 **19**:9 | **59**:13 |
| **24**:12,20 **26**:4 **31**:12 **32**:9 | **walks** [1] **39**:7 |
| **35**:4,17 **36**:6 **41**:12,18,24 | **wants** [2] **45**:8 **58**:12 |
| **44**:16 **49**:9 **50**:4,13 **54**:8 | **Washington** [2] **1**:12,22 |
| **55**:11,14,25 **56**:1,6 **59**:3,17 | **watershed** [1] **26**:12 |
| **tribunal** [1] **16**:5 | **way** [16] **6**:10 **12**:21 **15**:12 |
| **true** [3] **24**:2 **38**:5 **40**:11 | **21**:25 **24**:3 **25**:3 **35**:22,24 |
| **trump** [1] **14**:4 | **36**:3,15 **45**:6,8 **46**:12 **47**:9 |
| **trumped** [1] **8**:1 | **48**:5 **53**:22 |
| **try** [1] **49**:1 | **ways** [2] **32**:9 **35**:13 |
| **trying** [3] **25**:5,7 **49**:16 | **Wednesday** [1] **1**:13 |
| **turn** [1] **51**:17 | **welcome** [1] **32**:17 |
| **two** [9] **26**:10 **34**:14,23 **38**: | **whatever** [1] **43**:4 |
| **25 42**:9 **52**:11,20,21,22 | **Whereupon** [1] **60**:8 |
| **U** | **whether** [16] **6**:3 **14**:15 **18**: |
| | **4**,24 **19**:8 **33**:14,19 **34**:15, |
| **ultimate** [1] **6**:16 | **24 45**:13,16,22 **47**:17 **53**:6 |
| **ultimately** [3] **14**:4,5 **52**:22 | **55**:1,12 |
| **unaware** [1] **11**:7 | **whole** [4] **6**:23 **23**:6 **37**:3 |
| **unconstitutional** [1] **36**: | **will** [4] **5**:8 **34**:19 **37**:20 **50**: |
| **17** | **15** |
| **under** [22] **3**:22 **4**:23 **5**:1,8 | **Williams** [16] **3**:20 **14**:14 |
| **14**:15 **16**:1,7,11 **17**:5 **18**: | **15**:18 **19**:6 **20**:16 **26**:9 **30**: |
| **21 19**:3 **21**:21 **31**:25 **32**:14 | **24 34**:18 **36**:19 **37**:9,17 **38**: |
| **33**:14,16,25 **34**:22 **39**:24 | **11 40**:24 **48**:21 **58**:18,19 |
| **40**:23 **43**:8 **49**:22 | **Williams'** [1] **31**:3 |
| **underlying** [3] **5**:10,11,23 | **without** [4] **6**:2 **27**:22 **46**: |
| **understand** [6] **5**:15 **13**:11, | **20 56**:22 |
| **15 15**:1 **25**:25 **36**:13 | **won** [1] **59**:21 |
| **understanding** [2] **26**:7 | **word** [1] **18**:13 |
| **40**:23 | **words** [5] **3**:19 **8**:17 **25**:19 |
| **understood** [6] **13**:5 **34**:21 | **30**:20 **41**:22 |
| **37**:21 **42**:23,25 **43**:3 | **work** [1] **16**:4 |
| **Unfortunately** [1] **30**:8 | **worst-case** [1] **11**:19 |
| **UNITED** [2] **1**:1,17 | **worthless** [1] **5**:16 |
| **unless** [1] **36**:17 | **Y** |
| **unlike** [1] **22**:14 | |
| **until** [4] **6**:24 **19**:20 **27**:15 | **year** [1] **52**:12 |
| **28**:19 | **years** [7] **28**:1 **31**:19 **41**:19 |
| **unusual** [1] **54**:1 | **44**:1 **52**:19,21 **53**:24 |
| **up** [15] **7**:3 **9**:9 **10**:5 **18**:9 **26**: | |
| **10 28**:21 **29**:22 **30**:2 **33**:11 | |
| **45**:6,7 **46**:7,9 **48**:24 **59**:14 | |
| **using** [1] **19**:4 | |
| **usual** [1] **12**:12 | |
| **V** | |
| **various** [1] **12**:11 | |
| **vast** [1] **22**:2 | |
| **versus** [5] **3**:4 **18**:25 **39**:21 | |
| **40**:4 **58**:7 | |
| **view** [1] **22**:11 | |
| **vindicate** [6] **41**:2,17 **45**:9 | |

Heritage Reporting Corporation