**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Frank Winfield Anderson,

Petitioner,

v.

Ryan Thornell, et al.,

Respondents.

No. CV-23-08023-PCT-GMS

**ORDER**

DEATH-PENALTY CASE

Pending before the Court is Petitioner Frank Winfield Anderson's motion to stay this habeas proceeding and hold it in abeyance while he returns to state court to exhaust claims that were not previously exhausted in state court. (Doc. 31; *see also* Doc. 48 (Notice of Supplemental Authority).) He also requests that the Court authorize his federal counsel to represent him in state court. Respondents oppose a stay and take no position on the request to authorize counsel. (Doc. 40.) For the reasons that follow, the Court denies Anderson's motion for a stay and his request to authorize his federal counsel to represent him in state court.

**I. BACKGROUND**

The following facts concerning the crimes are drawn from the Arizona Supreme Court's opinion in *Arizona v. Anderson*, 111 P.3d 369 (Ariz. 2005):

In 1996, Anderson, then forty-eight years old, and Kimberly Lane, fourteen, left their homes in California and traveled to Nevada. While they were hitchhiking a man picked them up and brought them to the residence of Leta Kagen who lived near Kingman,

Arizona. Kagen lived with her husband Elliot, her fifteen year old son, Robert Delahunt, and Roland Wear. She was known to take in boarders. Robert Poyson, then nineteen, had also been staying with the Kagens for about six months.

Anderson, Lane, and Poyson decided to kill the other residents of the Kagen home and steal Wear's pickup truck. While Elliot was away, Lane lured Delahunt to a trailer on the Kagen's property where Anderson grabbed him and slit his throat; a struggle for the knife ensued. Poyson entered the trailer and joined the struggle. Anderson eventually put the tip of the knife in Delahunt's ear and held him while Poyson pounded the knife until the tip emerged through Delahunt's nose. Poyson then beat Delahunt's head with a rock until he died.

Anderson, Lane and Poyson returned to the Kagen's home. Around midnight, Poyson and Anderson entered the bedroom where Kagen and Wear were sleeping. Poyson shot Kagen, killing her almost immediately. Poyson shot Wear in the jaw but did not kill him. Wear leapt out of bed and Poyson hit him over the head with the butt of the rifle. Anderson hit Wear with a lantern. Wear ran outside, pursued by Anderson and Poyson. Anderson handed a cinder block to Poyson, who beat Wear over the head until he was dead.

After covering up Wear's body and stealing some items from the residence, Anderson, Lane, and Poyson left in Wear's pickup. With Anderson driving, the trio headed east on Interstate 40. Several days later, Anderson was stopped and arrested in Illinois while driving alone in Wear's truck. A search of the truck revealed a purse containing identification and credit cards belonging to Kagen and Wear.

After his arrest, Anderson was interrogated three times. Each interview was preceded by *Miranda* warnings; each time Anderson waived his rights. Although Anderson initially denied any involvement in the murders, by the end of the third interview, conducted by Mohave County Sheriff's Detective Eric Cooper, he had confessed to involvement in the crimes.

In 1998, a Mohave County Superior Court jury convicted Anderson of armed robbery, conspiracy to commit first-degree murder, and three counts of first-degree murder.

In 2001, the Arizona Supreme Court overturned these convictions because the trial court failed to permit defense counsel to attempt to rehabilitate jurors with respect to answers in a written questionnaire indicating opposition to the death penalty. After remand, the jury again convicted Anderson on all counts, returning separate guilty verdicts for both felony murder and premeditated murder as to each victim.

After the jury verdicts, but before sentencing, the United States Supreme Court decided *Ring v. Arizona*, 536 U.S. 584 (2002). The Arizona legislature then amended the capital sentencing statute and assigned to juries the responsibility of finding aggravating circumstances and determining whether a sentence of life imprisonment or death should be imposed. 2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1, § 3 (codified at A.R.S. § 13–703.01 (Supp. 2003)).[1]

A new jury was impaneled for the aggravation and penalty phases of Anderson's trial. In the aggravation phase, the jury unanimously found multiple aggravating factors with respect to each of the three murders. The jury found that the murders of Delahunt and Wear were motivated by pecuniary gain, A.R.S. § 13–703(F)(5); were especially cruel, heinous or depraved, *id.* § 13–703(F)(6); and were committed during the commission of another homicide, *id.* § 13–703(F)(8). The jury also found that the murder of Kagen was motivated by pecuniary gain and committed during the commission of another homicide. During the penalty phase, the jury concluded that any mitigating factors were not sufficiently substantial to call for leniency. The superior court accordingly imposed three death sentences. The trial court imposed consecutive terms of imprisonment for the remaining counts.

The Arizona Supreme Court affirmed Anderson's death sentences on independent review. *Anderson*, 111 P.3d at 399. The trial court subsequently denied postconviction relief, and the Arizona Supreme Court summarily denied review. Anderson then timely filed a federal habeas petition with this Court on October 10, 2023, before subsequently

---

[1] Arizona has subsequently renumbered the death penalty statute to A.R.S. § 13-751, *et. seq*.

filing this motion on November 6, 2023. Briefing on the habeas petition and notice of request for evidentiary development have been stayed pending resolution of the motion. (Doc. 46.)

## II. APPLICABLE LAW

### A. Stay and Abeyance

A federal court may not "adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." *Rhines v. Weber*, 544 U.S. 269, 273 (2005) (citing *Rose v. Lundy*, 455 U.S. 509, 518–519 (1982)). A district court is authorized to stay a petition in "limited circumstances" to allow a petitioner to present unexhausted claims to the state court without losing the right to federal habeas review pursuant to the relevant one-year statute of limitations.[2] *Id.* at 273–77. Under *Rhines*, "a district court must stay a mixed petition only if: (1) the petitioner has 'good cause' for his failure to exhaust his claims in state court; (2) the unexhausted claims are potentially meritorious; and (3) there is no indication that the petitioner intentionally engaged in dilatory litigation tactics." *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008) (citing *Rhines*, 544 U.S. at 278).

The *Rhines* "good cause" standard does not require "extraordinary circumstances." *Id.* at 1024 (citing *Jackson v. Roe*, 425 F.3d 654, 661–62 (9th Cir. 2005)). However, courts "must interpret whether a petitioner has 'good cause' for a failure to exhaust in light of the Supreme Court's instruction in *Rhines* that the district court should only stay mixed petitions in 'limited circumstances.'" *Id.* (citing *Jackson*, 425 F.3d at 661). Courts must also "be mindful that AEDPA aims to encourage the finality of sentences and to encourage petitioners to exhaust their claims in state court before filing in federal court." *Id.* (citing *Rhines*, 544 U.S. at 276–77).

Because *Rhines* applies only to mixed petitions, *see King v. Ryan*, 564 F.3d 1133, 1139–40 (9th Cir. 2009), a *Rhines* stay would be inappropriate if the claims for which a

---

[2] The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year statute of limitations for the filing of habeas petitions. 28 U.S.C. § 2244(d)(1).

petitioner seeks a stay are technically exhausted through procedural default. *See e.g.*, *Armstrong v. Ryan*, No. CV-15-00358-TUC-RM, 2017 WL 1152820 (D. Ariz. March 28, 2017); *White v. Ryan*, No. CV-09-2167PHX-FJM-LOA, 2010 WL 1416054, *12 (D. Ariz. March 16, 2010) ("Because the Petition in this case contains claims that are either actually or technically exhausted, it is not a mixed Petition and *Rhines* does not apply.").

**B. Exhaustion and Procedural Default**

Federal courts may not grant a writ of habeas corpus unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement is "grounded in principles of comity" as it gives the States "the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

A claim is exhausted if (1) the petitioner has fairly presented the federal claim to the highest state court with jurisdiction to consider it or (2) no state remedy remains available for the claim. *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996). If a federal court finds there are no remedies available in state court with respect to particular claims, then the claims are "technically" exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 732; *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007); *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).

Arizona's preclusion rules "require a defendant to raise all known claims for relief in a single petition to prevent endless trial-court reviews of the same case." *State v. Anderson*, 547 P.3d 345, 350 (Ariz. 2024) ("*Larry Anderson*") (citing *State v. Diaz*, 340 P.3d 1069, 1071 (Ariz. 2014)). Rule 32 of the Arizona Rules of Criminal Procedure precludes relief for claims that do not fall within the category of claims for which a successive PCR petition is permitted. *See* Ariz. R. Crim. P. 32.1(b)–(h), 32.2(a) & (b). Rule 32 procedurally bars relief on any constitutional claim that could have been raised on appeal or in a prior PCR petition. *See* Ariz. R. Crim. P. 32.1(a); 32.2(a)(3). The Ninth Circuit has held that "Arizona Rule of Criminal Procedure 32.2(a)(3) is independent of federal law and has been regularly and consistently applied, so it is adequate to bar federal

review of a claim." *Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012).

In *Coleman*, the Supreme Court held that a state prisoner who fails to comply with state-law procedural requirements in presenting his claims is barred by the adequate and independent state ground doctrine from obtaining a writ of habeas corpus in federal court. *Coleman*, 501 U.S. at 731–32; *see Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) ("An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court.").

A default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent" or if the petitioner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To demonstrate cause, the petitioner must establish that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 488. To establish prejudice, a petitioner "must show not merely a substantial federal claim, such that 'the errors . . . at trial created a *possibility* of prejudice,' but rather that the constitutional violation 'worked to his *actual* and substantial disadvantage.'" *Shinn v. Ramirez*, 596 U.S. 366, 379–80 (2022) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

In *Martinez v. Ryan*, the Supreme Court held for the first time that ineffective assistance of PCR counsel may serve as cause to excuse the default of a claim of ineffective assistance of trial counsel. 566 U.S. 1, 17 (2012); *see also Trevino v. Thaler*, 569 U.S. 413, 423 (2013). After the decision in *Martinez*, the Ninth Circuit held that federal habeas courts could hear new evidence to determine whether a defaulted claim of ineffective assistance of trial counsel was substantial. *Dickens*, 740 F.3d at 1321.

Subsequently, however, in *Ramirez*, the Court held that in adjudicating a *Martinez* claim, "a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel" unless the petitioner satisfies the "stringent requirements" of 28 U.S.C. § 2254(e)(2). 596 U.S. at 382. Section 2254(e)(2) applies only when there has been

"a failure to develop the factual basis of a claim" due to "a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 383 (quoting *Williams v. Taylor*, 529 U.S. 420, 432 (2000)). A petitioner bears "'responsibility' for all attorney errors during [PCR] proceedings," including "counsel's negligent failure to develop the state postconviction record." *Id.* (quoting *Williams*, 529 U.S. at 432). In such a case, a federal court may order an evidentiary hearing or otherwise expand the state-court record only if the prisoner can satisfy § 2254(e)(2).[3] *Id.*

## III. DISCUSSION

Anderson moves for a stay under *Rhines* to present "each of the federal constitutional claims that he has identified in his petition as not having been previously presented to the state courts." (Doc. 31 at 6.) Specifically, he argues he has met the *Rhines* standard for a stay to exhaust claims alleging trial error, ineffective assistance of counsel, and prosecutorial misconduct—Claims 1(A) and (C), 2(D) and (E), and 3 of his habeas petition.[4] Respondents contend that Anderson's petition is not a mixed petition because these claims are technically exhausted and therefore a *Rhines* stay is unavailable. (Doc. 40 at 6) (citing *King*, 564 F.3d at 1139–40.) Respondents further argue that a *Rhines* stay is unavailable because the claims are meritless. (Doc. 40 at 13–20.)

### A. Claim 1(A)

Anderson alleges the penalty phase jury was incorrectly instructed that if they chose a life sentence the court would decide whether he should be sentenced to life with or

---

[3] Under § 2254(e)(2), if the petitioner has "failed to develop the factual basis of a claim in State court proceedings," a district court cannot hold an evidentiary hearing on the claim unless (1) the claim relies on either "a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review" or a "factual predicate that could not have been previously discovered through due diligence" and (2) "the facts underlying the claim would establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty."

[4] The Court denies any request to stay the petition on grounds other than those argued in Anderson's motion.

without parole.[5] (Doc. 21 at 6.) In Claim 1(A), Anderson asserts the verdict forms for each victim failed to afford the jury the ability to unanimously find in favor of a non-death sentencing option, in violation of his constitutional right to a jury trial under the Sixth Amendment.[6] (Doc. 21 at 16–17.) He so argues because the first blank on the verdict form was for death, and the second blank was for "life, in which case the defendant shall be sentenced to life imprisonment with or without parole." (*Id.*) (quotation omitted). Anderson contends that the disjunctive wording of the second blank on the verdict form meant the jury could only choose to unanimously agree that Anderson should be sentenced to life with or without parole, "which is not a unanimous verdict even if every juror agreed to check the life box." (Doc. 31 at 11–12.)

Anderson concedes Claim 1(A) was not presented to the state courts, (Doc. 21 at 18), but argues he would not be precluded from raising the claim in state court now because the right to a jury trial is a personal right that only he can waive. (Doc. 31 at 12). The Sixth Amendment right to a jury trial, as incorporated against the States by way of the Fourteenth Amendment, encompasses the right to a unanimous jury verdict. *See Ramos v. Louisiana*, 590 U.S. 83, 92 (2020). The right to a jury trial falls within the limited framework of claims requiring a knowing, voluntary, and intelligent waiver before the application of a preclusion finding. *See* Ariz. Rule Crim. Proc. 32.2(a)(3) cmt. (West 2004) (noting that most claims of trial error do not require a personal waiver); *Stewart v. Smith*, 46 P.3d 1067, 1070 (Ariz. 2002) (identifying the right to counsel, right to a jury trial, and right to a 12-person jury under the Arizona Constitution as the type of claims that require personal waiver). Therefore, it is not evident that this claim would be precluded if Anderson were

---

[5] The Court assumes, for purposes of this motion, that this allegation is factually and legally correct. *See Cruz v. Arizona*, 598 U.S. 17 (2023).

[6] Anderson also alleges the submission of invalid jury instructions and verdict forms violated his right to due process and his Eighth Amendment right to a reliable sentencing determination. (Doc. 21 at 16–17.) Anderson concedes this portion of Claim 1(A) has been exhausted. (*See id.* at 18) (citing ROA PCR 294 (Supp. PCR Pet.) at 1–11). Therefore, this portion of Claim 1(A) is not at issue in this motion to stay.

now to present it to the state court. A *Rhines* stay, however, is inappropriate because the claim is plainly meritless.[7]

First, the Supreme Court has held that the jury unanimity rule, established as applicable to the states in *Ramos*, does not apply retroactively on federal collateral review. *Edwards v. Vannoy*, 593 U.S. 255, 259 (2021). Second, Anderson's allegations do not suffice to demonstrate that the jury verdict posed a risk of a non-unanimous verdict. Anderson was entitled only to a unanimous determination by the jury "whether death is the appropriate sentence." *See* A.R.S. § 13-703.01(H). The trial court properly instructed the jury, under Arizona law, that it was tasked with determining whether the proffered mitigation was sufficiently substantial to call for leniency. (RT 11/12/02 at 11–12.) If the jury unanimously determined that it was not, then Arizona law required the imposition of a death sentence. *See* A.R.S. § 13-703(E). Having unanimously determined that the mitigation was not sufficiently substantial to call for leniency, the jury had no occasion to consider other potential sentences or whether the court would impose a sentence of life with the possibility of parole. Accordingly, Claim 1(A) is meritless and as such does not meet the requirements for a *Rhines* stay.

**B. Claim 3**

Anderson contends that, before his second trial, the State disclosed two reports of misconduct from Detective Cooper's personnel file. He also claims the prosecutor led the court to believe that the incidents were only investigated internally by the Mohave County Sherriff's Office (MCSO) and that the two reports constituted the entirety of the file. He now asserts the prosecutor failed to provide a much more detailed and extensive report from the Kingman Police Department (KPD), discovered by Anderson's habeas counsel in July 2023, that revealed that Cooper was criminally investigated by the KPD. In Claim 3,

---

[7] Because the Court finds the claim meritless, it need not, as Anderson argues in his Notice of Supplemental Authority, (*see* Doc. 48), address whether the Arizona Supreme Court's recent decision in *Larry Anderson* establishes a newly-created exception to preclusion applicable to this claim. *See Wooten*, 540 F.3d at 1023 (*Rhines* stay available only for potentially meritorious claims).

Anderson alleges the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose the information about the KPD's criminal investigation into Cooper's sexual misconduct and the subsequent decision not to prosecute Cooper. (Doc. 21 at 142–151.) Anderson alleges that the issue of Cooper's credibility was "of central importance" because his testimony laid the foundation for the admission of Anderson's statements. (*Id.* at 145.) The State "did not present substantial forensic evidence" at the trial because "Anderson's confessions and Lane's statement rendered such evidence unnecessary." *Anderson II*, 210 Ariz. at 341.

Because Anderson concedes Claim 3 has not previously been raised in state court, it is the role of the district court to determine if he presently has a remedy available in state court. *See Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (finding it is district court's role to assess availability of state court remedy) *overruled on other grounds as recognized by Apelt v. Ryan*, 878 F.3d 800, 827–28 (9th Cir. 2017). In making that decision, the court is required to "assess the likelihood that a state court will accord the habeas petitioner a hearing on the merits of his claim." *Phillips v. Woodford*, 267 F.3d 966, 974 (9th Cir. 2001) (citing *Harris v. Reed*, 489 U.S. 255, 268 (1989) (O' Connor, J., concurring)).

Claim 3 is a constitutional claim that could be raised on direct appeal. It is cognizable under Rule 32.1(a) in state court and therefore subject to preclusion under Rule 32.2(a)(3). Anderson's *Brady* claim is cognizable in state court under Rule 32.1(a). *See Brady*, 373 U.S. at 87 (suppression of "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment"). As such, the claim would be precluded in a successive proceeding. *See* Ariz. R. Crim. P. 32.2(a)(3).

Anderson argues that his claim represents an exception to the preclusive effect of Rule 32.2(a) because it relies on newly discovered evidence. Under Rule 32.1(e), a claim is not precluded where "[n]ewly discovered material facts probably exist and such facts probably would have changed the verdict or sentence." Ariz. R. Crim. P. 32.1(e). Although such claims are not necessarily precluded under Rule 32.2.(a), when raised they "must set

forth the substance of the specific exception and the reasons for not raising the claim . . . in a timely manner." Ariz. R. Crim. P. 32.2(b); *see also* Ariz. R. Crim. P. 32.1(e). "If . . . meritorious reasons do not appear substantiating the claim and indicating why the claim was not stated . . . in a timely manner, the notice shall be summarily dismissed." Ariz. R. Crim. P. 32.2(b).

Nevertheless, Rule 32.1(e) requires a showing that the newly discovered facts "*probably* would have changed the judgment." Ariz. R. Crim. P. 32.1(e) (emphasis added). This standard requires a greater showing than the standard governing *Brady* claims; that is, a "reasonable probability" of a different result, or, stated differently, a "probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Accordingly, the state courts would not afford Anderson a hearing on his unexhausted constitutional *Brady* claim. *See e.g., State v. Ergonis*, No. 2 CA-CR 2022-0042-PR, 2022 WL 2047585, at *2 (Ariz. Ct. App. June 7, 2022) (unpublished) ("Ergonis nevertheless attempts to characterize his claim as one of newly discovered material facts under Rule 32.1(e). But in support of that assertion, Ergonis maintains, 'In essence, his claim is one under *Brady*.' A *Brady* claim is a constitutional claim that cannot be raised in an untimely proceeding and is subject to preclusion when the issue has been adjudicated in a previous post-conviction proceeding. *See* Ariz. R. Crim. P. 32.1(a), 32.2(a), 32.4(b)(3)(A)."); *State v. Symonette*, No. 2 CA-CR 2017-0193-PR, 2017 WL 4231066, at *1 (Ariz. Ct. App. Sept. 22, 2017) (unpublished) ("[A] *Brady* claim is subject to preclusion pursuant to Rule 32.2(a) and cannot be raised in an untimely proceeding like this one. Ariz. R. Crim. P. 32.4(a). Like the trial court, we therefore address Symonette's claim only in the context of Rule 32.1(e), a non-precluded claim. His *Brady* claim is time-barred."); *State v. Finck*, No. 2 CA-CR 2018-0334-PR, 2019 WL 1387790, at *2 (Ariz. Ct. App. Mar. 26, 2019) (unpublished) ("A claim under *Brady* that the state violated its disclosure obligations is a constitutional claim and therefore is cognizable under Rule 32.1(a)."). As such, a *Brady* claim is subject to preclusion pursuant to Rule 32.2(a) and cannot be raised in an untimely proceeding like this one. *See* Ariz. R. Crim. P. 32.4(a)(2)(A)."); *State v. Madison*, No. 2

CA-CR 2022-0185-PR, 2023 WL 468998, at *2 (Ariz. Ct. App. Jan. 26, 2023) (unpublished) ("[D]espite Madison's attempt to characterize his claims as falling under Rule 32.1(e) and (h), they are nonetheless Rule 32.1(a) claims, and are thus precluded under Rule 32.2(a)(3)."). Thus, traditional concerns of comity and federalism would not be furthered by staying this proceeding. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982) ("[I]t would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.").

Even if Anderson could exhaust his *Brady* claim by presenting it in state court under Rule 32.1(e), *see Henry v. Ryan*, 720 F.3d 1073 (9th Cir. 2013) (applying Rule 32.1(e) criteria to determine if an avenue for relief existed for purposes of exhausting Henry's new evidence supporting his *Brady* claim), he fails to demonstrate he can meet the requisite criteria for raising a new evidence claim in a successive PCR.

To establish a claim of newly discovered material facts under Rule 32.1(e), five requirements must be met:

> (1) the motion must show that the evidence relied on is, in fact, newly discovered; (2) the motion must allege facts from which the court can infer due diligence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) the evidence must be material to the issue involved; and (5) it must be evidence which, if introduced, would probably change the verdict if a new trial were ordered.

*State v. Acuna Valenzuela*, 426 P.3d 1176, 1193 (Ariz. 2018) (quoting *State v. Serna*, 807 P.2d 1109, 1110 (Ariz. 1991)). "[R]equests for a new trial based on newly discovered evidence are disfavored and should be granted cautiously." *State v. Saenz*, 4 P.3d 1030, 1033 (Ariz. App. 2000).

Respondents argue Anderson may not avail himself of Rule 32.1(e) because the new evidence in Claim 3 would serve only to impeach Cooper and "to obtain post-conviction relief in Arizona based on newly discovered evidence, the new evidence may not be 'cumulative or impeaching.'" (Doc. 40 at 8) (quoting *State v. Bilke*, 781 P.3d 28, 29–30) (Ariz. 1989)) (citing *State v. Amaral*, 368 P.3d 925, 927 (Ariz. 2016) (reaffirming that

under Rule 32.1(e), "the evidence must not simply be cumulative or impeaching")).

After *Bilke,* however, Rule 32.1(e) was amended to permit a new evidence claim on the grounds of new impeaching evidence if "the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence." Ariz. R. Crim. P. 32.1(e); *see also* Comment to Rule 32.1(E) [1992 Amendment] ("[W]here newly-discovered impeachment evidence substantially undermines testimony which was of critical significance at trial, the court should evaluate whether relief should be granted on the grounds that the evidence probably would have changed the result. . . . Dicta in cases . . . suggesting that a defendant will always be barred from relief if newly-discovered evidence is solely for impeachment, have never been incorporated into the Arizona Rules of Criminal Procedure and should not preclude relief deemed necessary in the court's discretion to avoid a miscarriage of justice.").

Thus, Anderson is not precluded from raising a new impeachment evidence claim in state court if he can demonstrate that the evidence "substantially undermines testimony which was of critical significance at trial. . . and that the evidence probably would have changed the result." Ariz. R. Crim. P. 32.1(e).

Under Rule 32.1(e), however, Anderson is also required to demonstrate that he "exercised due diligence in discovering" the new evidence. The sexual assault allegations and criminal investigation into Cooper's conduct took place before Anderson's second trial (*see* Doc. 25-5–6, Ex. 30), and therefore Anderson did not diligently discover these records and develop the factual basis for his claim. *See* Ariz. R. Crim. P. 32.1(e); *see also Amaral*, 368 P.3d at 927; *Bilke,* 781 P.3d at 29–30. The prosecutor stated, in summarizing the *Brady* disclosure before the second trial, that he was disclosing two packets of information from Cooper's personnel file, the first regarding two allegations of misconduct against Cooper from 1998, "both involving sexual relations with women who have been crime victims of one sort or another." (RT 7/10/01 at 6.) The first misconduct allegation involved sexual contact with a victim, J.F., however, "[n]o crime other than that. The misconduct was that

he was supposedly doing it on duty, through an official contact with a victim." (*Id.*)

The second packet of disclosure involved a sexual assault accusation by C.G.[8] The prosecutor explained that C.G. had reported that Cooper had sexually assaulted her and the "entire investigation was referred out by the County Attorney's office, which declined prosecution." (RT 07/10/01 at 7.) The prosecutor summarized the contents of the file:

> During that investigation, essentially Detective Cooper lied continually throughout the case that he had any sexual relationship with [C.G.]. He lied to the original investigating officers. He submitted to a polygraph. He lied during the polygraph, and eventually admitted having sexual contact with her. He never says he never knew that she was claiming sexual assault, he was just denying there was any sexual relationship. He said it was voluntary and didn't know she was claiming it was involuntary, but eventually admitted that he did have voluntary sexual relations with her and resigned from the Sheriff's Office.

(RT 7/10/01 at 7–8.) The prosecutor described the file as consisting of a five- or six-page synopsis by a detective and the rest of it consisted of transcripts of tapes that were taken during the investigation. (*Id.* at 10–11.)

Anderson now claims that the KPD investigation was "far more expansive than a mere internal investigation":

> The KPD conducted a full-blown criminal investigation of Cooper which included DNA extraction and testing, polygraph testing, evidence collection, photographs, and witness interviews. [Doc. 21 (Anderson's Habeas Petition)] at 144. The KPD report revealed that Cooper had a long history of sexually assaulting and coercing women he investigated into sex. These illegal tactics often influenced the outcome of Cooper's investigations, for instance, when he offered to "take care of" a suspect's pending investigation in exchange for sex. *Id.* at 107, 144. Cooper's coercive tactics were well documented in the KPD report. Cooper withdrew his firearm from its holster in order to coerce [C.G.] into having sex with him and preyed upon multiple women with diminished mental capacity. *Id.* at 146. The State also failed to disclose the non-prosecution benefit Cooper received in order to testify at Anderson's second trial. ECF No. 21 at 150. The KPD referred Cooper's investigation to neighboring Yavapai County. Yavapai County decided not to prosecute because there was supposedly insufficient evidence, despite the

---

[8] C.G. is also referred to as K.G. in some records.

wide-ranging KPD investigation. *Id.* at 150.

(Doc. 31 at 17.)

Although defense counsel's copy of the *Brady* disclosure file was partially destroyed following Anderson's second direct appeal, (*see* Doc. 21 at 144 n.31), the crux of the information Anderson now claims as new evidence was either explicitly contained in the remainder of the disclosed information that was not destroyed or its existence is reasonably suggested therefrom.

Apparently, only one page of the five- or six-page synopsis survived. (*See id.*) This single page, however, suggests (1) there was a court order to take hair and blood samples from Cooper; (2) there were reports of two additional possible victims (the allegations of one victim, L.H., the prosecutor had also described in court); (3) another law enforcement agency, the Pima County Sheriff's Office, was reported to have additional information regarding Cooper; and (4) Cooper had solicited sex from a suspect during an arson investigation in Pima County in 1991, and then told her he "would take care of it" in an attempt to cover up both her crime and the sex. (Doc. 25, Ex. 25 at 2; *see also* RT 7/10/01 at 6–7 (summarizing disclosure).) Additionally, the defense file contains a letter from the Yavapai County Attorney's office, a copy of which was sent to the Mohave County Attorney prosecuting Anderson's case, declining prosecution of Cooper, and explaining that after reviewing the materials provided by the KPD that the Deputy County Attorney had concluded there was insufficient evidence to proceed with criminal charges against Cooper. (*Id.* at 3.) Finally, the file contained a notice of claim filed by C.G. notifying Mohave County, the Mohave County Sheriff's Office, and Cooper, of her claims against them for the violation of her civil rights based on her allegations of sexual assault by Cooper. (*Id.* at 4) C.G. claimed that she was vulnerable as a result of her reduced mental capacity and childhood rape and was intimidated by Cooper's position and his display of a firearm. (*Id.*)

Anderson offers no persuasive reason why his state court attorneys could not have, as federal habeas counsel here accomplished, discovered the record comprising the KPD's

criminal investigation into C.G.'s allegations. Assuming for purposes of this motion that the prosecutor's full disclosure consisted of only the portion of the disclosure which was not destroyed, it sufficiently put Anderson on notice of all of the facts he alleges here: the KPD's criminal investigation into C.G.'s allegations; Cooper's history of sexual misconduct with both victims and suspects that he investigated, including exchanging sex in return for "taking care of" a pending investigation; the use of a displayed firearm in order to coerce victim C.G. into having sex; and the possibility that Cooper received a non-prosecution benefit in order to testify at Anderson's second trial. That the prosecutor later referred to Cooper's conduct as comprising only "an affair," (*see* ROA 225, State's Motion in Limine to Preclude Impeachment of Detective Cooper, Sept. 14, 2001), does not excuse state counsel's failure to follow up on the information contained in the disclosure.

Contrary to Anderson's allegation that the "paraphrased and highly edited synopsis misled trial counsel and the trial court as to the extent of Cooper's criminal activity, the breadth of the KPD investigation, and the available *Brady* material," (Doc. 47 at 14), both the disclosure and the prosecutor's description of the file and the prosecutor's description of the investigation being "referred out" to another County Attorney for prosecution put Anderson on notice of the criminal investigation and the decision not to prosecute that he now asserts would have further impeached Cooper's credibility. More than twenty years passed between Anderson's second trial and the filing of his habeas petition; in that time, Anderson never raised a *Brady* claim. Because Anderson fails to explain what reasonably diligent steps he has taken to pursue these matters over the past two decades and to bring them to the Court's attention, he fails to state a claim for Rule 32.1(e) relief.

Consequently, Anderson fails to state a claim for Rule 32.1(e) relief. Anderson offers no persuasive reason why his attorneys could not have requested these records prior to his trial. (*See* Doc. 24-5, Ex. 20, Declaration of Mason Roush-Wallace, Investigator) (affirming the KPD produced the requested records within ten days of the investigator's request in 2023).

Additionally, for the reasons stated above, Anderson's evidence is not "newly discovered." "Simply because defendant presents the court with evidence for the first time does not mean that such evidence is 'newly discovered.'" *State v. Mata*, 916 P.2d 1035, 1049 (Ariz. 1996) (citing with approval *State v. Dogan*, 724 P.2d 1264, 1269 (Ariz. App. 1986) ("Newly-discovered material facts alleged as grounds for post-conviction relief are facts which come to light after the trial and which could not have been discovered and produced at trial through reasonable diligence.")). Anderson's new evidence could have been known at the time of trial through the exercise of due diligence.

Trial counsel was on notice, from the prosecutor's statements in court and the contents of the *Brady* disclosure, that Cooper had been criminally investigated and that the Yavapai County Attorney had declined prosecution. Anderson could have "through the exercise of minimal diligence" discovered the facts averred here, and thus they are not "newly discovered" under Rule 32.1(e). *See Runningeagle v. Ryan*, 686 F.3d 758, 771 n.5 (9th Cir. 2012) (noting that the government has an independent obligation to provide *Brady* material if it exists, but determining state court could have found evidence of a potential cooperating witness that was not disclosed by the prosecution not "newly discovered" under Rule 32.1(e) because defense counsel failed to investigate the potential witness despite being put on notice of the witness's existence through a motion for determination of counsel filed by Runningeagle's co-defendant).

Anderson "does not contend that the State's alleged misconduct" with respect to the criminal investigation of Cooper "could not have been discovered if it had been investigated at some point during the state court proceedings." *Henry v. Ryan*, No. CV 02-656-PHX-SRB, 2009 WL 692356, at *1 (D. Ariz. Mar. 17, 2009), *aff'd*, 720 F.3d 1073 (9th Cir. 2013). As discussed above, the "facts" regarding this *Brady* claim were "known" to Anderson and the report of the KPD's criminal investigation could have been discovered at the time of trial. *See Saenz*, 4 P.3d at 1033 ("Evidence is not newly discovered unless it was unknown to the trial court, the defendant, or counsel at the time of trial and neither the defendant nor counsel could have known about its existence by the exercise of due

diligence."). Based upon these considerations, Anderson would not be entitled to raise this claim in state court pursuant to Rule 32.1(e).

Because there is no remaining state court remedy with respect to Anderson's *Brady* allegations, Claim 3 is technically exhausted but procedurally defaulted.

**C. Claims 1(C), 2(D) and (E)**

In Claim 1(C), Anderson alleges trial counsel's failure to object to the invalid verdict forms and to request correct instructions constitutes ineffective assistance of counsel.[9] (Doc. 21 at 27–28.) In Claim 2(D), comprised of subclaims (1) through (7), Anderson alleges both trial counsel and state PCR counsel were ineffective for failing to investigate and present reasonably available mitigation evidence. (Doc. 21 at 77–104.) In Claim 2(E), comprised of subclaims (1) and (2), Anderson alleges trial counsel were ineffective for failing to impeach Cooper's assertions that Anderson's statement was voluntary. (Doc. 21 at 104–112.) Anderson concedes all these claims were not raised in state court. (*See* Doc. 31 at 13; Doc. 21 at 104, 112.)

If Anderson were to return to state court to attempt to exhaust these ineffective assistance of counsel ("IAC") claims, the claims would be found precluded under Rule 32.2(a) because IAC claims do not fall within Arizona's exceptions to preclusion. *See* Ariz. R. Crim. P. 32.2(b); 32.1(b)-(h); *see also State v. Spreitz*, 39 P.3d 525, 526 (Ariz. 2002) ("Our basic rule is that where ineffective assistance of counsel claims are raised, or could have been raised, in a Rule 32 post-conviction relief proceeding, subsequent claims of ineffective assistance will be deemed waived and precluded.") (emphasis omitted). Additionally, if different IAC allegations are raised in successive petitions, the claim in the later petition will be precluded without a review of the constitutional magnitude of the claim. *See Smith*, 46 P.3d at 1071. Anderson raised other IAC allegations in his first PCR petition; therefore, successive claims of IAC are necessarily precluded.

---

[9] Anderson seeks a stay for only the unexhausted portion of Claim 1(C) related to the unexhausted portion of Claim 1(A), which alleges a violation of his Sixth Amendment right to a unanimous verdict. (*See* Doc. 51 at2, n1.)

Contrary to Anderson's arguments, Arizona has not "historically tailored" its rules of preclusion to mirror the federal courts procedural default jurisprudence. *See State v. Evans*, 506 P.3d 819, 826 (App. 2022) ("*Martinez* pertains to federal habeas actions. It does not entitle Evans to raise precluded state claims."); *see e.g.*, *Arizona v. Pandeli*, CR 1993-008116 (Feb. 5, 2024) (Maricopa County Superior Court Order Dismissing Rule 32 Proceeding) ("[U]nder Arizona law, *Ramirez* does not revive Defendant's precluded and/or non-cognizable claims."). *Smith* and *Alverado* do not hold otherwise.

Anderson asserts, citing *Reed v. Ross*, 468 U.S. 1, 14–15 (1984), that he can argue to the state courts that impediments external to the defense and the novelty of his procedural arguments allow the courts to review his claims. (Doc. 47 at 4.) But the Supreme Court did not address this issue in *Reed*; rather, the Court considered whether the federal cause requirement might be satisfied "under certain circumstances when a procedural failure is not attributable to an intentional decision by counsel" to forego a constitutional argument in state court but instead was an issue "reasonably unknown" to counsel. 468 U.S. at 14. While *Reed* may constitute grounds to argue cause and prejudice to excuse the procedural default of a federal claim, it is irrelevant to Arizona's application of its rules of preclusion. *See State v. Holder*, 155 P.2d 141, 144 (1987) (questioning appropriateness of lower appellate court's application of *Reed* because in *Reed* "the Court was considering a federal habeas corpus standing issue").

Recently, Anderson continues, "the Arizona Supreme Court has applied equitable principles to hold a petitioner is not precluded under Rule 32.2 from raising an IAC claim in a third state PCR petition." (*Id.* at 4.) Anderson cites *State v. Diaz*, 340 P.3d 1069 (Ariz. 2014), in support of this assertion. But *Diaz* is distinguishable.

In *Diaz*, the Arizona Supreme Court determined that a defendant whose counsel had failed to file a petition in two previous Rule 32 proceedings was entitled to raise an IAC claim in a third proceeding. *Diaz*, 340 P.3d at 1071. The court declined to find Diaz's IAC claim waived pursuant to Rule 32.2(a)(3) because Diaz timely filed a notice of PCR seeking to assert an IAC claim, and he was blameless regarding his former attorneys' failures to

file an initial PCR petition. *Id.* The court explained that its holding would not frustrate Rule 32's preclusion provisions because permitting Diaz to file his first petition to assert an IAC claim would not result in repeated review of the IAC claim; it would result in its first review. *Id.*

Because Anderson has obtained adjudication of at least one Rule 32 petition, the holding in *Diaz* has no application here. *See Diaz*, 340 P.3d at 1071 ("Once the petition is adjudicated, and assuming that Diaz does not obtain relief, this *and all other claims that Diaz might have brought* will be precluded and Diaz will not be able to raise them in a successive petition." (emphasis added)) (citing *Smith*, 46 P.3d at 1071 ("If the merits were to be examined on each petition, Rule 32.2 would have little preclusive effect and its purpose would be defeated.")).

Anderson's reliance on *State v. Pruett*, 912 P.2d 1357 (Ariz. App. 1995) and *Spreitz*, 39 P.3d at 526–27, is also misplaced. Neither case supports his position that it "is likely the state would recognize a cause and prejudice exception to Rule 32.2 given authority allowing petitioners to overcome preclusion in specific equitable circumstances, even if the claim is normally classified under Rule 32.1(a)." (Doc. 47 at 4.) In *Pruett*, the court considered successive PCR notices alleging ineffective assistance of Rule 32 counsel filed by a defendant who had pled guilty. *Pruett*, 912 P.2d at 1359. Noting that a pleading defendant's first Rule 32 petition is the equivalent of a direct appeal, the court found that Pruett's second PCR notice was timely and that the trial court erred in dismissing the third PCR notice, thereby preventing Pruett from alleging an exception to the Rule 32.4(a) time bar. *Id.* at 1360–61. In *Spreitz*, the court noted that the "basic rule is that where ineffective assistance of counsel claims are raised, or could have been raised, in a Rule 32 post-conviction relief proceeding, subsequent claims of ineffective assistance will be deemed waived and precluded." 39 P.3d at 526 (emphasis omitted). The state court did not apply a cause and prejudice exception to Rule 32.2 in either case or suggest it is "likely" they would do so.

Anderson is also not aided by the Supreme Court's decision in *Ramirez*. "*Ramirez*

did not concern a *Rhines* stay and does not bear on the issue here." *Shanklin v. Raybon*, No. 6:20-CV-2020-LSC, 2023 WL 2356037, at *4 (N.D. Ala. Mar. 3, 2023); *Ellison v. Thornell*, No. CV-16-08303-PCT-DWL, 2023 WL 4847599, at *6 (D. Ariz. July 28, 2023) ("*Ramirez* had no effect on state post-conviction proceedings or preclusion rules, nor did it render any of Ellison's claims unexhausted rather than technically exhausted."); *Shockley v. Crews*, No. 4:19-CV-02520-SRC, 2023 WL 8433163, at *4 (E.D. Mo. Dec. 5, 2023) ("[T]he change in law wrought by [*Ramirez*] did nothing to change whether Shockley's claims were exhausted."). *Ramirez* addressed only the issue of "whether the equitable rule announced in *Martinez* permits a federal court to dispense with § 2254(e)(2)'s narrow limits because a prisoner's state postconviction counsel negligently failed to develop the state-court record." 596 U.S. at 371. The Court held that it does not. *Id.* at 381.

Anderson argues that during the *Ramirez* oral argument before the United States Supreme Court, Respondents "represented that if the petitioner had a 'good claim' then he could seek a *Rhines* stay to go back to state court to raise it in a second state PCR petition." (Doc. 31 at 10.) Anderson asserts Respondents should now be barred, under the doctrine of judicial estoppel, from arguing that he is barred from seeking a stay under *Rhines*. (*Id.* at 10–11) (citing Ex. 42, *Shinn v. Ramirez* Oral Arg. of Arizona Solicitor General Brunn W. Roysden III, 2021 WL 9526559, RT at 26.) Anderson's arguments are unpersuasive.

The emphasis of the doctrine of judicial estoppel is "on prevention of 'intentional self-contradiction . . . as a means of obtaining unfair advantage." *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1215 (9th Cir. 1984). As discussed above, a *Rhines* stay was not at issue in *Ramirez* and the Solicitor General's remarks were not addressed to the availability of a stay for petitioners in Anderson's position. Thus, Roysden's remarks do not contradict the position taken by Respondents in asserting Anderson's claims are technically exhausted but procedurally defaulted. Moreover, taken in context, the Solicitor General illuminated the quoted statement above by immediately explaining that "[m]ost states," including Arizona, "allow actual innocence as a ground" for going to state court and developing the record. (Ex. 42, *Ramirez*, Oral Arg. of Arizona Solicitor General Brunn

W. Roysden III, 2021 WL 9526559, RT at 26.) Since federal courts have not recognized actual innocence as a freestanding claim, *see Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."), this explanation makes clear the Solicitor General was not referring to staying federal habeas petitions in order to return to state court to raise technically exhausted claims under *Rhines*.

Finally, Anderson suggests that the Arizona Supreme Court's recent holding in *Larry Anderson* created an exception for filing successive PCR petitions raising IAC claims due to the systemic misunderstanding regarding parole eligibility in Arizona, and that Claims 1(A) and (C) "fit squarely within the exception." (Doc. 48 at 3.) However, claim 1(A), as previously discussed, is meritless. Additionally, as explained below, there is no available remedy for Claim 1(C) because the claim would be found precluded if Anderson attempted to raise it in state court. Alternatively, Claim 1(C) is meritless.

In *Larry Anderson*, the Arizona Supreme Court considered whether the petitioner's third PCR petition raising an IAC claim was precluded or untimely under Arizona Rules of Criminal Procedure. *Larry Anderson*, 547 P.3d at 348. In 2000 and 2003, Larry Anderson filed PCR petitions based on unrelated claims of IAC. *Id.* In 2022, he brought his third IAC claim, alleging his trial counsel erroneously advised him that if he rejected the plea offered and was found guilty at trial, parole would be available after he served twenty-five years. *Id.* Such advice, if given, was incorrect. Larry Anderson, like Frank Anderson, was not parole eligible because he committed a felony after 1993. *See id.* (citing A.R.S. § 41-1604.09(I)).

The *Larry Anderson* court first reaffirmed that Arizona's rules of preclusion are applicable to successive IAC claims:

> "The ground of ineffective assistance of counsel cannot be raised repeatedly." *Stewart v. Smith*, 202 Ariz. 446, 450 ¶ 12, 46 P.3d 1067, 1071 (2002). Generally, "where ineffective assistance of counsel claims are raised, or could have been raised, in a Rule 32 post-conviction relief proceeding, subsequent claims of ineffective assistance will be deemed waived and

> precluded." *State v. Spreitz*, 202 Ariz. 1, 2 ¶ 4, 39 P.3d 525, 526 (2002) (emphasis omitted). This Court has rejected an approach to Rule 32 proceedings that would create "a never-ending tunnel" in which "defendants could endlessly litigate effectiveness of counsel by claiming that their latest version . . . was not presented on earlier petitions due to counsel's inadequate representation." *State v. Mata*, 185 Ariz. 319, 334, 916 P.2d 1035, 1050 (1996).

*Id.* at 351.

The Arizona Supreme Court, however, found review of Larry Anderson's successive IAC claim was warranted due to the "extremely rare set of circumstances in the context of the pervasive confusion [in Arizona] about parole and the extraordinary remedies [the court] and the legislature fashioned to deal with it." *Id.* at 351–52, 353 n.1. Excusing the untimeliness of the claim, the court determined the delay in filing was not due to the petitioner's "mere failure to recognize a valid claim might exist," but rather was attributable to the widespread confusion about parole availability. *Id.* at 350; *see also id.* at 348 (explaining that there was "pervasive confusion by both bench and bar about parole availability after it was abolished in Arizona").

The court also found the successive IAC claim was not precluded in view of the court's "duty to 'construe [rules of criminal procedure] to secure . . . fairness in administration . . . and to protect the fundamental rights of the individual while preserving the public welfare.'" *Id.* at 352 (quoting Ariz. R. Crim. P. 1.2.). The court determined it was appropriate to exercise this equitable exception because, at the time Larry Anderson filed his previous PCR petitions, his claim would not have been "cognizable" as a "known" claim:

> This case presents unusual . . . circumstances. Anderson filed previous petitions for PCR in 2000 and 2003. At that time, defendants, attorneys, and courts did not know of or recognize the error due to the confusion regarding the abolition of parole. Counsel's error here was less an issue of individual IAC as it was a systemic failure to recognize the effect of the change in the law regarding parole. As a result of those unusual circumstances, Anderson's 2022 notice of IAC claim was the first time he could have reasonably raised

> the issue of erroneous advice about the availability of parole.[10] Indeed, as amicus MCAO concedes, "it would be inequitable to apply Rule 32.2(a)(3)'s preclusion bar to Anderson's parole-misadvice IAC claim where the late discovery of the claim's basis would have been excused." For the same reasons Anderson's claim is not untimely, it was not cognizable as a "known" claim.

*Id.* at 351. The court explained that trial courts had been using the words "parole" and "release" interchangeably in non-natural life sentences since 1994, and prison policies were unclear about parole eligibility until as recently as 2021. *Id.* at 350. Additionally, the court explained, any research conducted by the petitioner's previous PCR counsel would have been tainted as a result of the confusion. *Id.* at 353, n.1.

The question for this Court then, is whether, after *Larry Anderson*, it is "clear that the Arizona courts would hold [Claim 1(C)] barred . . . ." *Cassett v. Stewart*, 406 F.3d 614, 623 (9th Cir. 2005). The Court finds the "unique circumstances" and systemic failure surrounding parole ineligibility that served to excuse the delay and preclusion of Larry Anderson's plea-related IAC claim, were dispelled well before Anderson sought federal habeas review of his claims.

The Arizona Supreme Court addressed the parole ineligibility provision of A.R.S. § 14-1604.09(I) in a published decision in 2012. In *State v. Cota*, 272 P.3d 1027, 1042 (Ariz. March 22, 2012), the court rejected Cota's argument that the trial court erred by instructing the jury that a life sentence might allow for release after twenty-five years because Cota was not eligible for parole under A.R.S. § 41-1604.09(I). *Id.* Without commenting directly on Cota's parole eligibility, the court explained Cota's argument conflated the terms "parole" and "release," and found the instructions were not in error because Cota was eligible for other forms of release besides parole. *Id.*

In 2013, the Arizona Supreme Court acknowledged that the legislature had amended § 13-751 to eliminate a capital defendant's eligibility for a sentence of life

[10] Larry Anderson did not discover his parole ineligibility until he attempted to enroll in an educational program through the Arizona Department of Corrections, Rehabilitation, and Reentry prior to filing his third PCR.

imprisonment with the possibility of release. *State v. Benson*, 307 P.3d 19, 32 (citing 2012 Ariz. Sess. Laws, ch. 207, § 2 (2d Reg. Sess.)). The court, however, despite a plethora of lower court decisions acknowledging parole was no longer available for felons convicted after 1994 under A.R.S. § 41-1604.09(I),[11] continued to indicate parole was available for those sentenced before the 2012 amendments. *Id., abrogated by Cruz v. Arizona*, 598 U.S. 17, 20 (2023).

Finally, in 2015, the Arizona Supreme Court directly and explicitly acknowledged, in *State v. Lynch ("Lynch I")*, that "parole is available only to individuals who committed a felony before January 1, 1994, and juveniles." 357 P.3d 119, 138 (2015) (citing A.R.S. § 41-1604.09(I)).

Even if the Arizona Supreme Court's mistaken belief "that Arizona's sentencing and parole scheme did not trigger application of *Simmons*" continued to create confusion surrounding the availability of parole, this confusion was put to rest in *Lynch v. Arizona*, 578 U.S. 613 (2016) (per curiam) ("*Lynch II*"). *Cruz*, 598 U.S. at 20. *Lynch II*—rejecting

---

[11] *See e.g.*, *State v. Rosario*, 987 P.2d 226, 230 (Ariz. Ct. App. 1999) (The Arizona legislature enacted law effective January 1, 1994, eliminating the possibility of parole for crimes committed after that date. See A.R.S. § 41-1604.09(I)."); *State v. Sperberg*, No. 2 CA-CR 2010-0156-PR, 2010 WL 4286203, at *1 (Ariz. Ct. App. Oct. 27, 2010) (same); *State v. Norzagaray*, No. 2 CA-CR 2011-0266, 2013 WL 1316745, at *3 (Ariz. Ct. App. Apr. 1, 2013) ("Norzagaray was 'on parole' although that term to describe early release was abandoned for offenses committed after December 31, 1993. *See* A.R.S. § 41-1604.09(I)."); *State v. Melcher*, No. 2 CA-CR 2012-0158, 2013 WL 2378573, at *1 (Ariz. Ct. App. May 29, 2013) ("[P]arole has been unavailable since 1994, A.R.S. 41-1604.09(I)."); *State v. Godinez*, No. 2 CA-CR 2013-0114-PR, 2013 WL 3788427, at *3 (Ariz. Ct. App. July 17, 2013) ("[P]arole eligibility classification and certification 'applies only to person who commit felony offenses before January 1, 1994'") (quoting A.R.S. § 41-1604.09(I)); *State v. Taylor*, No. 2 CA-CR 2013-0302-PR, 2013 WL 5516199, at *2 (Ariz. Ct. App. Oct. 2, 2013) "[P]arole is only available . . . to defendants who committed their offenses before January 1, 1994, A.R.S. § 41-1604.09(I)."); *State v. Healer*, No. 2 CA-CR 2013-0372-PR, 2014 WL 310533, at *2 (Ariz. Ct. App. Jan 28, 2014) ("Arizona . . . has eliminated parole for those convicted of felony offenses after 1993. *See* A.R.S. § 41-1604.09(I).").

the Arizona Supreme Court's reasoning that the possibility of clemency or future legislative reform could justify refusal to give a parole-ineligibility instruction—was decided on May 31, 2016, over six years before the PCR court denied Anderson's PCR petition in September 2020, and an additional two years before the Arizona Supreme Court summarily denied Anderson's petition for review on November 1, 2022.

Unlike Larry Anderson, who discovered his parole ineligibility when he applied for an education program in prison, Anderson was continuously represented in state court by multiple, capital-authorized counsel. PCR counsel reviewing the relevant sentencing and parole statutes, in addition to the Arizona and Supreme Court cases discussing the unavailability of parole after 1994 and how *Simmons* applies to Arizona's sentencing scheme, would have been on notice, by 2015 or 2016 at the latest, that Anderson's sentencing jury was incorrectly instructed that, if it rejected a death sentence, the court could sentence Anderson to either natural life or life with the possibility of release after twenty-five years.

In fact, regardless of the statewide confusion about parole eligibility, Anderson argued, in his 2010 Supplemental Petition for Postconviction Relief, that he was entitled to a *Simmons* instruction. (*See* Doc. 21 at 25.) Unlike Larry Anderson, then, Anderson's failure to exhaust claim 1(C) was a "mere failure to recognize a valid claim might exist," and not due to the systemic confusion about parole availability. *See Larry Anderson*, 547 P.3d at 350. Moreover, such a claim would have been clearly "cognizable" in state court after the *Lynch I* decision in 2015 and, at latest, after the *Lynch II* decision in 2016. The equitable exception applied in *Larry Anderson* therefore is not available for Anderson's parole-eligibility-related IAC claim because the claim was known and recognized well before Anderson's PCR proceedings were concluded in state court.

In sum, Claim 1(C) is technically exhausted because, if Anderson were to return to state court and raise the claim in a successive PCR, it would be subject to summary dismissal under Rule 32.2(a)(3).

Moreover, even if the claim is not precluded, it is meritless. As discussed in Claim 1(A) above, because the jury unanimously determined that the mitigation was not sufficiently substantial to call for leniency, the jury had no occasion to consider other potential sentences or whether the court would impose a sentence of life with the possibility of parole.

Because Anderson is precluded from raising Claims 1(C), 2(D), and (E) in state court, these claims are technically exhausted.

**D. Request for Authorization to Represent Anderson in State Court**

Anderson asks the Court to authorize the Federal Public Defender's ("FPD") office to represent him in state court. (Doc. 31 at 21.) The Criminal Justice Act provides for appointed counsel to represent their client in "other appropriate motions and procedures." 18 U.S.C. § 3599(e). The Supreme Court interpreted § 3599 in *Harbison v. Bell*, 556 U.S. 180 (2009), holding that the statute "authorizes federally appointed counsel to represent their clients in state clemency proceedings and entitles them to compensation for that representation." *Id.* at 194. The Court explained that "subsection (a)(2) triggers the appointment of counsel for habeas petitioners, and subsection (e) governs the scope of appointed counsel's duties." *Id.* at 185. The Court noted, however, that appointed counsel is not expected to provide each of the services enumerated in section (e) for every client. Rather, "counsel's representation includes only those judicial proceedings transpiring 'subsequent' to her appointment." *Id.* at 188.

*Harbison* addressed the concern that under the Court's interpretation of § 3599, federally appointed counsel would be required to represent their clients in state retrial or state habeas proceedings that occur after counsel's appointment because such proceedings are also "available post-conviction process." *Id.* The Court explained that § 3599(e) does not apply to those proceedings because they are not "properly understood as a 'subsequent stage' of judicial proceedings but rather as the commencement of new judicial proceedings." *Id.* at 189.

As to state post-conviction proceedings, the Court noted: "State habeas is not a stage 'subsequent' to federal habeas. . . . That state postconviction litigation sometimes follows the initiation of federal habeas because a petitioner has failed to exhaust does not change the order of proceedings contemplated by the statute." *Id.* at 189–90; *see Irick v. Bell*, 636 F.3d 289, 292 (6th Cir. 2011); *Lugo v. Sec'y, Fla. Dep't of Corr.*, 750 F.3d 1198, 1213 (11th Cir. 2014) (explaining "a state prisoner is not entitled, as a matter of statutory right, to have federally paid counsel assist him in the pursuit and exhaustion of his state postconviction remedies, including the filings of motions for state collateral relief. . . ." ) *cert. denied sub nom. Lugo v. Jones*, 574 U.S. 1125 (2015).

Nevertheless, the Court has discretion to appoint federal counsel to represent Anderson in state court. In *Harbison*, the Supreme Court noted that "a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation." 556 U.S. at 190 n.7.

Here, however, Anderson is not entitled to a stay. Based on that determination, together with *Harbison*'s discussion of the parameters of § 3599(e), the Court concludes it is not appropriate to authorize the FPD to represent Anderson in state court.

**E. Conclusion**

Because the claims Anderson seeks to raise in state court are either meritless or technically exhausted, he has not satisfied the criteria for a *Rhines* stay.

Accordingly,

**IT IS HEREBY ORDERED denying** Anderson's motion to stay this case and hold in abeyance the federal proceedings pending the presentation of his new claims and facts to the state courts (Doc. 31).

**IT IS FURTHER ORDERED denying** Anderson's request for federal habeas counsel to represent him in state court (Doc. 31).

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** the parties must submit a joint proposed briefing schedule for the remainder of the briefing deadlines within 10 days of the filing date of the order. (*See* Doc. 46.)

Dated this 20th day of June, 2024.

G. Murray Snow
Chief United States District Judge